# EXHIBIT C

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

IN WITNESS WHEREOF, the Parties have executed this SPA by their duly authorized representatives and hereby acknowledge and agree that:

- a. This SPA consists of these terms and conditions, Exhibit A, and the Service Provider Reference Guide ("SPRG"), all of which are incorporated herein;
- b. Each Party has fully read, understands, and agrees to all terms contained in this SPA;
- c. Service Provider has fully read, understands, and will comply with The Home Depot's Mold, Asbestos and Lead Paint policies as contained in the SPRG; and
- d. The person executing this SPA on behalf of each Party is fully authorized to sign for and bind their respective Party to this SPA.

**Service Provider**

Bryan's Home Improvement Corp.
Company Name

By: Owner
Service Provider Authorized Representative

Jesus A Loja
Printed Name

Title: President

Date: 08/21/2015
The Effective Date

**Home Depot U.S.A., Inc.**

By: _____

_____
Printed Name

Title: _____

Date: _____

**Service Provider Co-Signer (if Applicable)[1]**

By: _____

_____
Printed Name

Date: _____

---

[1] If Service Provider is a privately or closely held corporation, sole proprietorship, general or limited partnership, limited liability corporation, professional corporation, cooperative, or similar entity, or otherwise, The Home Depot may, at its sole discretion, require any natural person who is a principal or authorized representative of such entity, and whose signature appears on this signature page as "Service Provider Co-Signer," to be deemed a principal of Service Provider under this SPA. Any person signing as Service Provider Co-Signer shall act as a guarantor with respect to Service Provider's obligations under the SPA. The Home Depot shall be afforded the same rights and remedies and enjoy the same limitations of liability with respect to any Service Provider Co-Signer as with respect to the Service Provider under this SPA.

The Home Depot Master Service Provider Agreement
5/2015.1

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

18.13    Survival. Upon termination or expiration of this SPA, all provisions continue in effect as to disputed matters until fully resolved, as well as all provisions that by their nature continue and survive termination or expiration of this SPA, including without limitation, Service Provider's indemnity and warranty obligations under this SPA and the following Sections: 1.4, 1.5, 2.2, 3.1, 3.2, 4.1, 4.2, 4.3, 4.4, 4.5, 4.6, 4.7, 4.8, 4.9, 4.10, 4.11, 4.12, 4.16, 5.4, 5.5, 6.1, 7.1, 7.2, 7.3, 7.5, 7.6, 7.7, 8, 9, 10, 11.1, 11.2, 11.4, 11.5, 11.6, 12, 13.1, 13.2, 13.3, 13.4, 14.2, 14.4, 15.3, 15.4, 15.5, 16, 17, 18.5, 18.7, 18.9, 18.12, 18.13, and 18.7.

18.14    Force Majeure. No Party will be in breach of this SPA if performance of its obligations or attempts to cure any breach or end an Event of Default are delayed or prevented by reason of any act of nature, fire, natural disaster, failure of electrical power systems, or any other act or condition beyond the reasonable control of the Party affected ("Event of Force Majeure"), provided that the affected Party makes commercially reasonable efforts to avoid or eliminate the causes of its nonperformance and continues performance immediately after such causes are eliminated. Notwithstanding this Section, any delay that exceeds sixty (60) calendar days will entitle the Party whose performance is not affected by the relevant Event of Force Majeure to terminate this SPA upon not less than thirty (30) calendar days advance written notice to the other Party.

18.15    Entire Agreement. This SPA, which also includes Exhibit A, the SPRG, and any contemporaneously and subsequently executed amendments, constitutes the entire agreement and understanding between the Parties and merges and supersedes any and all prior oral or written discussions, negotiations, agreements, and understandings related hereto. Any previous negotiations, agreements, or representations that have been made or relied upon that are not expressly set forth will have no force or effect. Notwithstanding the foregoing, the parties' most recent Exhibit A/pricing agreement, current store and/or market assignments, and service level agreement shall survive execution of this SPA.

18.16    Counterparts. This SPA may be executed in one or more counterparts and by facsimile, electronic mail, or by electronic means, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

18.17    Choice of Law. This SPA shall be governed and interpreted in accordance with the laws of the State of Georgia, which shall govern any disputes arising out of or relating to the SPA. The Parties acknowledge that this SPA evidences a transaction involving interstate commerce. Thus, notwithstanding the foregoing choice of law provision, the Parties agree that the Federal Arbitration Act will govern the interpretation and enforcement of the arbitration provisions of this SPA and any forum selection clauses relating thereto.

18.18    Other Provisions. Except where the context requires otherwise, whenever used, the singular includes the plural, the plural includes the singular, the word "or" means "and/or," and the term "including" or "includes" means "including without limitation," and without limiting the generality of any description preceding that term. When this SPA refers to a number of days, unless otherwise specified as business days, that reference is to calendar days. The wording of this SPA shall be deemed wording mutually chosen by the parties, and no rule of strict construction shall be applied against either Party.

(Signatures on following page)

18

### THE HOME DEPOT
### MASTER SERVICE PROVIDER AGREEMENT

writing by The Home Depot's counsel, is executed by all Parties. Any Tasks or Purchase Orders issued may be amended only in accordance with Section 1.4.

18.7     Penalties. Service Provider acknowledges that The Home Depot may enforce and pay any penalties charged or assessed against Service Provider by any licensing board, or any other governmental or quasi-governmental agency, in connection with the Services provided by Service Provider. Further, The Home Depot has the right to enforce and deduct from any funds due or that become due Service Provider the sum of any penalties imposed for violations of Service Provider's obligations under this SPA, as specified in more detail in the SPRG. The Home Depot may withhold payments owed or issue a chargeback to Service Provider to collect reimbursement.

18.8     Further Assurances. Each Party will provide such further documents or instruments required by the other Party as may be reasonably necessary, appropriate, or desirable to give effect to this SPA and to carry out its provisions.

18.9     Severability. The invalidity or unenforceability of any provision or any portion of any provision of this SPA does not impair the validity or enforceability of any other provision or the remaining portions of any such provision. Section headings are for reference purposes only and do not affect in any way the meaning or interpretation of this SPA.

18.10     Books and Records; Audits. Service Provider must maintain its books and records in accordance with commercially reasonable business standards. The Home Depot or its designated agent(s) may during the Term and for a period of three (3) years following the termination or expiration of this SPA, audit during normal business hours with our without advance notice all books and records of Service Provider that are of direct relevance to Service Provider's fulfillment of its obligations under this SPA. Service Provider's authorized representative(s) or designated agent(s) may be present during such audit.

18.11     Cumulative Remedies. Except as otherwise expressly limited or provided herein, all rights, privileges, and remedies conferred under this SPA upon the Parties will be cumulative and are in addition to any rights, powers, privileges, and remedies available to the Parties by statute or otherwise at law or in equity.

18.12     Notices. Unless specified otherwise herein, any notices or other communication required to be in writing under this SPA must be (1) personally delivered; (2) sent by certified mail, postage prepaid; or (3) delivered by overnight courier, to the other Party unless otherwise provided herein. Notices are deemed to be served and given upon receipt. Notice to Service Provider shall be provided via email pursuant to Sections 13 and 14 above or at the address listed on the first page of this SPA, unless such address is changed in writing through an executed amendment. Notice to The Home Depot shall be provided as follows:

If to Home Depot U.S.A., Inc.:

> Home Depot U.S.A., Inc.
> Attn: Services Operations – Compliance Manager
> 2690 Cumberland Parkway, 3rd Floor
> Atlanta, GA 30339

If to THD At-Home Services, Inc.:

> THD At-Home Services, Inc.
> Attn: Services Operations – Compliance Manager
> 2690 Cumberland Parkway, 3rd Floor
> Atlanta, GA 30339

If to U.S. Remodelers, Inc.:

> U.S. Remodelers, Inc.
> Attn: Services Operations – Compliance Manager
> 2690 Cumberland Parkway, 3rd Floor
> Atlanta, GA 30339

In each instance with a copy to:

> Home Depot U.S.A., Inc.
> Attn: Assistant General Counsel - Services
> 2455 Paces Ferry Road NW, C-20
> Atlanta, GA 30339

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

rendered by the arbitrator(s) is final, and judgment may be entered upon it in accordance with Applicable Law in any court of competent jurisdiction. The Parties will share equally the costs of any arbitration.

17.3    If either Service Provider or The Home Depot fails to comply with the other's election of arbitration in lieu of litigation, the non-compliant Party shall be liable to the electing party for all expenses incurred as a result of such failure, including, but not limited to, attorneys' fees incurred preparing and filing responsive pleading(s), responding to discovery, and obtaining an order compelling compliance with the election.

17.4    Third Party Actions. Sections 17.1, 17.2, and 17.3 shall not apply if either Party asserts a claim for contribution or indemnification against the other in relation to a litigation or arbitration brought by a third party, who neither consents to nor has an obligation to consent to either mediate or arbitrate such litigation, or to consolidate such mediation or arbitration with a mediation or arbitration between The Home Depot and Service Provider.

17.5    Attorneys' Fees. If a Party prevails in any legal or equitable action against the other Party, the other Party will pay the prevailing Party's costs and expenses, including reasonable attorneys' fees. The prevailing Party shall be the Party whose last written offer of settlement is closest to the actual judgment reached by the arbitrator or the court after a decision is made on the underlying action.

17.6    WAIVER OF CLASS, COLLECTIVE, AND REPRESENTATIVE ACTIONS. SERVICE PROVIDER AND THE HOME DEPOT HEREBY WAIVE ANY RIGHT FOR ANY DISPUTE ARISING OUT OF, OR RELATING TO THIS SPA OR ITS BREACH, INCLUDING ANY AND ALL STATUTORY CLAIMS AND CLAIMS REGARDING THE RELATIONSHIP BETWEEN SERVICE PROVIDER AND THE HOME DEPOT, TO BE BROUGHT, DECIDED, OR ARBITRATED AS A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION. THE ARBITRATOR IS WITHOUT AUTHORITY OR JURISDICTION TO ARBITRATE ANY SUCH DISPUTE AS A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION OR TO COMBINE MORE THAN ONE INDIVIDUAL'S CLAIM OR CLAIMS INTO A SINGLE CASE. SERVICE PROVIDER AND THE HOME DEPOT FURTHER WAIVE ANY RIGHT TO PARTICIPATE IN OR RECEIVE MONEY OR ANY OTHER RELIEF FROM ANY CLASS, COLLECTIVE, OR REPRESENTATIVE PROCEEDING PERTAINING TO, ARISING OUT OF, OR RELATING TO THIS SPA.

18  Miscellaneous.
18.1    The Home Depot Affiliates. All rights and obligations granted under this SPA to The Home Depot will extend to The Home Depot's affiliates, which currently exist or are later acquired that (i) control, (ii) are controlled by, or (iii) are under common control with The Home Depot ("Affiliates"). An entity will be deemed to control another entity if it has the power to direct or cause the direction of the management or policies of such entity, whether through the ownership or voting securities, by contract, or otherwise.

18.2    Pro Xtra Program Enrollment. Service Provider acknowledges and agrees that this SPA includes automatic enrollment in The Home Depot's Pro Xtra Program, which provides potential rewards and recognition to Service Provider as a professional customer of The Home Depot. Service Provider agrees to the Pro Xtra Program rules, which The Home Depot may modify from time to time, in its own discretion without prior notice, and are available at www.homedepot.com/proloyalty. The Pro Xtra Program rules govern Service Provider's participation in the Pro Xtra Program and are not incorporated herein and do not affect any of the terms of this SPA. The terms of this SPA likewise do not alter the Pro Xtra Program rules.

18.3    Promotions. The Home Depot may desire and shall have the right to implement storewide or targeted promotions or purchase incentives relating to the Services at it sole and absolute discretion.

18.4    Assignment; Change of Ownership or Control. Service Provider may not assign, subcontract, transfer, pledge, sublicense, or encumber this SPA or any interest under this SPA without The Home Depot's prior written consent, which shall be provided at The Home Depot's sole discretion. Any assignment by Service Provider without the prior written consent of The Home Depot will be null and void. The Home Depot may assign or transfer this SPA to a parent, subsidiary, or affiliate of The Home Depot upon ten (10) business days' notice to Service Provider. Any permitted assignment will be binding upon and inure to the benefit of the Parties and their permitted successors and assigns.

18.5    Waiver. No provision of this SPA may be waived unless in writing, signed by the waiving Party. The failure of a Party to exercise any of its rights, remedies, or options under this SPA, or the failure of a Party to insist upon another Party's compliance with any provision of this SPA, will not constitute a waiver of any Party's right to demand compliance. No action or course of dealing of the Parties at variance with the terms and conditions of this SPA will constitute any waiver of a Party's right to demand exact compliance with the terms of this SPA.

18.6    Amendments. With the exception of modifications to the SPRG, which Service Provider expressly agrees may be updated by The Home Depot pursuant to Section 3.7, This SPA may be amended, modified, or supplemented only if The Home Depot's SPA Amendment form, or an amendment form approved in

16

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

    (b)    Immediately cancel or terminate all applicable Subcontractor agreements at Service Provider's cost, unless The Home Depot, in its sole discretion, provides for additional time to complete Purchase Orders, in which case all such agreements shall be canceled at Service Provider's cost upon completion of the applicable Purchase Orders.

    (c)    Pay to The Home Depot all sums then due within thirty (30) calendar days after termination or expiration of the SPA;

    (d)    Pay to The Home Depot any sum that becomes due after termination or expiration of the SPA within thirty (30) calendar days after the date it accrues;

    (e)    Return to The Home Depot any and all property of The Home Depot, including without limitation any The Home Depot Confidential Information, issued badges, and/or Customer Information in Service Provider's possession, control or custody within thirty (30) calendar days after termination or expiration of the SPA;

    (f)    Stop making any representations of any nature that Service Provider is, or at any time was, in a business relationship with The Home Depot, except as reasonably necessary to fulfill any surviving obligations under this SPA;

    (g)    Retain business records pertaining to Service Provider's compliance with Applicable Laws for a period of at least six (6) years following the conclusion of this SPA, or the amount of time required by the applicable statutes of limitations and repose for Claims relating to compliance with Applicable Laws that arise following the conclusion this SPA;

    (h)    Timely satisfy all obligations under this SPA still in effect.

15.4    The Home Depot's Obligations upon Termination. Upon termination or expiration of this SPA for any reason, The Home Depot must:

    (a)    Pay all undisputed sums due Service Provider that are not otherwise subject to any offset rights provided in this SPA;

    (b)    Return to Service Provider any and all property of Service Provider in The Home Depot's possession or control within thirty (30) calendar days after termination or expiration of the SPA.

15.5    Retainage. Notwithstanding the obligations set forth herein, The Home Depot may withhold any payments due Service Provider for ninety (90) calendar days after termination to offset any amounts which are due or may become due from Service Provider to The Home Depot.

**16  Title and Risk of Loss.**

    Service Provider warrants that title to any materials, services, goods, equipment or other items that comprise any part of the Services (the "Materials") shall pass from Service Provider to Customer free and clear of any lien, claim or encumbrance upon the earlier of (1) The Home Depot's partial or full payment to Service Provider for such Materials; or (2) delivery of the Materials to Customer's location. Notwithstanding the foregoing, risk of loss shall not pass from Service Provider to Customer until such Materials are delivered and accepted by Customer. Shipment shall be F.O.B. Service Provider's delivery location, unless otherwise noted in the Order. Risk of loss shall revert back to Service Provider upon Customer's rejection of defective or non-conforming Materials, even if stored at Customer's designated delivery location.

**17  Dispute Resolution.**

17.1    Non-Binding Mediation. All disputes arising out of or relating to this SPA shall be initially subject to non-binding mediation to be administered by a mediation agency selected by mutual agreement of the parties, unless such condition is waived in writing by The Home Depot. The Parties will have ten (10) calendar days in which to agree mutually upon a professional mediator. If the Party that receives the request for mediation is not agreeable to pursuing mediation as a means of resolving the dispute, or if the Parties cannot agree upon a professional mediator, or if mediation fails to result in a resolution of the dispute, then any Party may elect to proceed with litigation or arbitration as provided in Section 17.2 below. The mediation will, unless otherwise agreed in writing by the Parties, be held in Atlanta, Georgia, and it will be conducted over a period of time not to exceed two (2) business days. The Parties will share equally the costs of any such mediation.

17.2    Litigation or Arbitration. If disputes are not resolved by mediation, they shall be decided by litigation in either the Superior Court of Cobb County, Georgia, or the United States District Court for the Northern District of Georgia, Atlanta Division. Service Provider hereby consents to the exclusive jurisdiction of these courts. In lieu of litigation, either Service Provider or The Home Depot may elect to have the dispute resolved through binding arbitration to be administered by the American Arbitration Association ("AAA") in accordance with the AAA's Rules applicable to the resolution of commercial disputes then in effect. The locale for the arbitration will be Atlanta, Georgia. The arbitrator(s) shall decide each dispute based upon the evidence presented and the Applicable Laws. The arbitrator(s) shall issue a written decision, setting out each specific finding of fact and conclusion of law relevant to their decision on each dispute. The award

15

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

taking advantage by Service Provider of any debtor relief proceedings, whereby the liabilities or obligations of Service Provider are or are proposed to be reduced or payment thereof deferred.

**14  Remedies for Breach or Events of Default.**

14.1   Opportunity to Cure. If Service Provider commits an Event of Default, The Home Depot will provide written notice of such and an opportunity to cure. Notice under Sections 13 and 14 may be provided by The Home Depot via email or pursuant to Section 18.12 below. The time period for cure of an Event of Default under any provision of Section 13 shall be the time period specified by The Home Depot in its sole discretion. In the event that The Home Depot does not specify a time period for cure of a breach or Event of Default, Service Provider must cure the breach or Event of Default within thirty (30) calendar days of the date of receipt of written notice from The Home Depot. In the event that a Customer refuses to allow Service Provider an opportunity to cure Services, including without limitation, (a) rejected, defective, or nonconforming workmanship, or (b) defective or nonconforming products or materials, Service Provider waives any opportunity to cure, and The Home Depot may proceed with remedies under Section 14.2.

14.2   Failure to Cure. If Service Provider fails to cure within the applicable cure time period, The Home Depot may exercise one or more of the following remedies without any liability to Service Provider:

(a)   Reject, in whole or in part, Service Provider's submission for payment with respect to a Task or Purchase Order under this SPA, or nullify in whole or in part a previously approved submission for payment and receive reimbursement of payments relating to Services that were not cured;

(b)   Withhold from any sums due or that thereafter become due Service Provider the amount deemed necessary by The Home Depot to protect The Home Depot from actual or reasonably foreseeable damages resulting from the breach or Event of Default;

(c)   Remove Service Provider from any or all Programs, stores, districts, regions, markets, territories, and/or areas until Service Provider is no longer in breach of this SPA or the Event of Default is cured;

(d)   Retain a third party to cure the breach or end the Event of Default at Service Provider's sole expense, which expense The Home Depot may offset against any sums due or that thereafter become due Service Provider or otherwise recover from Service Provider; or

(e)   Terminate this SPA immediately upon written notice to Service Provider.

14.3   Cure of Remedies. Service Provider's cure of any breach or Event of Default under this SPA must be done in a manner satisfactory to both The Home Depot and the impacted Customer(s).

14.4   Event of Default after Expiration of Term. If an Event of Default occurs after termination or expiration of the Term, The Home Depot is under no obligation to provide an opportunity to cure to Service Provider, and The Home Depot may proceed immediately with one or more of the applicable remedies in Section 14.2 and/or pursue any remedies available at law or equity.

**15  Termination.**

15.1   Breach or Default. This SPA may be terminated for cause (i.e., for breach or for the occurrence of an Event of Default) by The Home Depot immediately upon expiration of the applicable cure time period, if any. If Service Provider commits the same or a substantially similar breach of this SPA, or if there is an occurrence of the same or a substantially similar Event of Default within six (6) months following the date that Service Provider's cures a previous breach or Event of Default, The Home Depot will have the right to immediately terminate this SPA.

15.2   For Convenience. The Home Depot may terminate all or a portion of this SPA at any time for its own convenience and without cause upon giving written notice to Service Provider. The Home Depot's provision of notice shall state the time period after which the termination becomes effective, and Service Provider agrees to effect termination in accordance with the terms of such notice. If the notice fails to identify a specific time for termination, then termination shall be effective ninety (90) days from the date of giving notice.

15.3   Service Provider's Obligations upon Termination. Upon receipt of The Home Depot's written notice to terminate for convenience or the expiration of the Term of this SPA, Service Provider must:

(a)   Complete all or any portion of the Services in accordance with the time frame provided in the notice given by The Home Depot or within ninety (90) days of notice in the event that the notice fails to state a time for completion of the specified Services, unless The Home Depot, in its sole discretion, directs the Service Provider to stop all Services and remove from the Customer's property all Service Provider employees, Subcontractors, tools, and equipment;

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

Customer, the risk of loss shall not pass to Customer until the Services have been delivered and accepted by Customer. Risk of loss shall revert back to Service Provider upon Customer's rejection of defective or non-conforming Services, even if stored at property owned by Customer.

**12  Limitations of Liability.**

12.1    LIABILITY FOR ACTUAL DAMAGES ONLY. EXCEPT IN CONNECTION WITH SERVICE PROVIDER'S BREACH OF CONFIDENTIALITY, FRAUD, GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ANY INDEMNIFICATION OBLIGATION OWED HEREIN BY SERVICE PROVIDER, EACH PARTY HEREBY WAIVES ANY RIGHT TO CLAIM AGAINST THE OTHER PARTY FOR INCIDENTAL, INDIRECT, EXEMPLARY, PUNITIVE, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST OPPORTUNITIES, LOST PROFITS FROM THIS TRANSACTION OR ANY OTHER TRANSACTION NOT DIRECTLY RELATED TO SPA, OR LOST SAVINGS, ARISING OUT OF OR RELATING TO ACTS OR OMISSIONS UNDER THIS SPA, REGARDLESS OF THE FORM OF ACTION, AND EVEN IF REASONABLY FORESEEABLE OR IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

12.2    THE HOME DEPOT'S MAXIMUM LIABILITY. THE HOME DEPOT'S MAXIMUM LIABILITY TO SERVICE PROVIDER UNDER THIS SPA (REGARDLESS OF CAUSE OR FORM OF ACTION, WHETHER IN CONTRACT, TORT, OR OTHERWISE) WILL BE LIMITED TO THE TOTAL UNDISPUTED AMOUNT OWED SERVICE PROVIDER BY THE HOME DEPOT IN PAYMENT FOR SERVICE PROVIDER'S FULFILLMENT OF ITS OBLIGATIONS UNDER THIS SPA. THE HOME DEPOT'S LIABILITY UNDER THIS SPA SHALL TERMINATE ONE (1) YEAR FROM THE OCCURRENCE OF THE EVENT GIVING RISE TO A CLAIM, AND SERVICE PROVIDER AGREES TO BRING ANY TYPE OF CLAIM AGAINST THE HOME DEPOT WITHIN THAT ONE (1) YEAR TIME PERIOD. THE SERVICE PROVIDER HEREBY WAIVES ANY RIGHT UNDER ANY STATUTE OF LIMITATIONS TO BRING ANY CLAIM AFTER SUCH ONE (1) YEAR TIME PERIOD.

12.3    CLAIMS AGAINST THE HOME DEPOT ONLY. SERVICE PROVIDER AGREES THAT ITS SOLE RECOURSE FOR CLAIMS ARISING FROM OR RELATING TO THIS SPA AND/OR ANY TASKS OR PURCHASE ORDERS WILL BE AGAINST ONLY THE HOME DEPOT OR THE HOME DEPOT'S SUCCESSORS AND ASSIGNS. IN NO EVENT WILL THE SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, OR CUSTOMERS OF THE HOME DEPOT AND ITS AFFILIATES BE PERSONALLY LIABLE OR BE NAMED AS PARTIES IN ANY ACTION BY SERVICE PROVIDER. SERVICE PROVIDER FURTHER AGREES THAT IT WILL STIPULATE TO A DISMISSAL WITH PREJUDICE OF ANY CLAIMS BROUGHT CONTRARY TO THIS SECTION.

12.4    Third Party Liabilities. Nothing in this Section 12 will be construed to limit a Party's right to recover any damages that such Party is obligated to pay to any third party.

**13  Events of Default.** The occurrence of any of the following will be deemed an "Event of Default":

13.1    Compliance. The failure of Service Provider to: (i) comply with any material term or condition of this SPA; (ii) make payment or reimbursement of funds owed The Home Depot; (iii) cease conduct that The Home Depot deems harmful to its general business interests or public image, even if unrelated to Service Provider's obligations under the SPA; or (iv) complete a Task or Purchase Order, which failure continues in effect or has otherwise not been remedied to The Home Depot's satisfaction within a reasonable time period specified by The Home Depot in its sole discretion.

13.2    Corrections. The failure of Service Provider to (i) correct rejected, defective, or nonconforming workmanship, or (ii) repair or replace defective or nonconforming products or materials sourced, furnished, manufactured, or fabricated by Service Provider, within the time period specified by The Home Depot in its sole discretion.

13.3    Payment to Others. The failure of Service Provider to pay any of its Subcontractors which failure results in the actual or threatened placement of an Encumbrance on or against any property or account of The Home Depot or any Customer.

13.4    Liens. The failure of Service Provider to satisfy, discharge, or release any Encumbrance filed and/or recorded in connection with the Services performed by Service Provider or its employees, agents, or subcontractors, on or against any property of The Home Depot or any Customer within five (5) business days of the date that Service Provider was first made aware of such.

13.5    Creditors and Bankruptcy. (i) The making by Service Provider of an assignment for the benefit of creditors; (ii) the institution of a judicial proceeding for the reorganization, liquidation, or involuntary dissolution of Service Provider or for its adjudication as bankrupt or insolvent; (iii) the appointment of a receiver, trustee, or liquidator of or for the property of Service Provider whereupon the receiver, trustee, or liquidator is not removed within thirty (30) calendar days of The Home Depot's written request; or (iv) the

13

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

(b)    Inform the Indemnitees in writing of the date of any mediation, arbitration, trial, or settlement conference relating to a third party claim as soon as possible after it receives such information;

(c)    Choose defense counsel that is reasonably satisfactory to the Indemnitees;

(d)    Provide Indemnitees with copies of all discovery requests within five (5) days of Service Provider's receipt of same;

(e)    Provide the Indemnitees with copies of all pleadings, discovery responses, settlement proposals and/or any other material documents relating to the third party claim before finalizing or filing to allow the Indemnitees the opportunity to provide comments; and

(f)    Inform the Indemnitees of the outcome of any mediation, arbitration, motion, trial, settlement, or any other matter from which appeal rights could arise.

10.8    No Settlement Without Consent. Service Provider will not enter into any settlement or compromise of a claim without first obtaining the Indemnitees' prior written consent.

10.9    Indemnification In Addition to Insurance. The presence or absence and/or applicability or non-applicability of Service Provider's insurance coverage does not in any way limit Service Provider's obligation to indemnify, defend, and hold the Indemnitees harmless pursuant to the terms of this Section 10.

10.10    Conflicts of Interest. If counsel retained by the Service Provider has a conflict of interest or such conflict of interest arises in connection with a third party claim, Indemnitees shall be entitled to retain separate counsel, at Service Provider's expense, to defend Indemnitees. Service Provider shall not seek to disqualify counsel due to an alleged conflict of interest where a single counsel represents multiple Indemnitees in connection with a third party claim, and Service Provider hereby waives any alleged conflict of interest allegations relating to same.

11  Insurance.

11.1    Insurance Coverage. Service Provider will procure and maintain at all times (1) commercial general liability, (2) automobile liability, and (3) workers' compensation insurance with coverage amounts on an occurrence basis containing limits of no less than the amounts specified for the Services in the Insurance Requirements Section of the applicable SPRG. This insurance will not include any exceptions and/or exclusions that limit or minimize the coverages for the Services. Products-completed operations endorsements are required. Workers' compensation insurance is required in every state in which Service Provider performs Services. Service Provider shall cause its Subcontractors to provide, pay for, and maintain at all times commercial general liability, automobile liability, and workers compensation insurance with commercially reasonable limits and coverages for their respective scope of Services.

11.2    Additional Insureds, Certificate Holders, and Certificate of Insurance. All insurance furnished by or through Service Provider, except workers' compensation insurance, shall provide defense coverage and additional insured status (through an endorsement to the insured's policy) to Home Depot U.S.A., Inc., THD At-Home Services, Inc., and U.S. Remodelers, Inc., and any other person or entity identified by The Home Depot (the "Additional Insureds") and must contain the following language exactly as provided: "Home Depot U.S.A., Inc., and its parents, affiliates, and subsidiaries are added as additional insureds." Any insurance held by an Additional Insured that applies or may apply to any loss covered by any general liability insurance furnished by or through Service Provider shall be deemed excess or contingent coverage, and not be a basis to reduce any coverage requirements under the SPA to the fullest extent permitted by Service Provider's insurance. Insurance certificates and policy endorsements shall list "Home Depot U.S.A., Inc." as the certificate holder. The certificate of insurance shall indicate the nature and amount of any self-insured retentions or deductibles that may apply to coverage. The Home Depot's receipt of any certificate of insurance, or any failure to confirm or object to any coverage or limits therein, shall not waive, excuse, modify or otherwise accept Service Provider's compliance with the insurance requirements of the SPA.

11.3    Service Provider does not rely upon and The Home Depot does not represent, warrant, or guarantee that the minimum limits or coverages required by the SPA are adequate to protect the Service Provider or its Subcontractors from any or all insurable risks or losses that may occur in connection with the Services.

11.4    Service Provider shall not violate or permit any violations of any conditions or terms of any insurance policy provided by Service Provider.

11.5    Service Provider shall furnish The Home Depot and Customer with copies of all available insurance policies, endorsements, and supplements within ten (10) days of The Home Depot's request therefore.

11.6    Risk of Loss. As of the Effective Date and continuing throughout the Term, each Party to this SPA will be responsible for risk of physical or actual loss of and damage to any property, equipment, merchandise, or any other items or information in its possession or under its control. As between the Service Provider and

12

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

(f) INFRINGEMENT OF THE INTELLECTUAL PROPERTY, PROPRIETARY, OR OTHER RIGHTS OF ANY THIRD PARTY BY SERVICE PROVIDER, ITS EMPLOYEES, AGENTS, REPRESENTATIVES AND/OR ANY OF ITS SUBCONTRACTORS;

(g) THE FAILURE OF SERVICE PROVIDER TO PERFORM INSPECTIONS OR OBTAIN AND MAINTAIN LICENSES OR PERMITS REQUIRED BY APPLICABLE LAWS;

(h) THE SUPPLY OF FALSE OR INACCURATE BACKGROUND INFORMATION OR THE GATHERING AND/OR USE OF BACKGROUND INVESTIGATION INFORMATION;

(i) TAXES ASSERTED OR LEVIED AGAINST THE HOME DEPOT RESULTING FROM SERVICES THAT ARE THE RESPONSIBILITY OF THE SERVICE PROVIDER, ITS EMPLOYEES, AGENTS, REPRESENTATIVES OR ITS SUBCONTRACTORS;

(j) THE FAILURE OF SERVICE PROVIDER TO COMPLY WITH APPLICABLE LAWS RELATING TO IMMIGRATION;

(k) THE UNAUTHORIZED DISCLOSURE OF CONFIDENTIAL INFORMATION BY SERVICE PROVIDER, ITS EMPLOYEES, AGENTS, REPRESENTATIVES AND/OR ANY OF ITS SUBCONTRACTORS;

(l) ANY PROPERTY ENCUMBRANCE RESULTING FROM ANY ALLEGED FAILURE OF SERVICE PROVIDER, ITS EMPLOYEES, AGENTS, REPRESENTATIVES OR ANY OF ITS SUBCONTRACTORS, TO PAY FOR ANY PORTION OF THE SERVICES, WHETHER VALID OR NOT;

(m) ANY MATERIAL BREACH OF THE SPA OR A PURCHASE ORDER; OR

(n) COMPENSATION OR BENEFITS OF ANY KIND, INCLUDING BASE WAGES, BONUSES, HEALTH AND WELFARE BENEFITS (BY AGREEMENT, PLAN, STATUTE OR OTHERWISE), PENSION BENEFITS, OR SEVERANCE OR TERMINATION PAY, BY OR ON BEHALF OF SERVICE PROVIDER OR ANY OWNER, OFFICER, SHAREHOLDER, PARTNER, MEMBER, PARENT, EMPLOYEE OR SUBCONTRACTOR, CLAIMING AN EMPLOYMENT OR OTHER RELATIONSHIP WITH SERVICE PROVIDER, ITS EMPLOYEES, AGENTS, REPRESENTATIVES AND/OR THE HOME DEPOT.

10.3   The Service Provider hereby agrees that a sum of not less than Ten Dollars and No/Cents ($10.00) of the cost of the first Purchase Order agreed to by the Parties (if any Purchase Orders result from this SPA) shall constitute separate consideration for Service Provider's indemnity obligations. Such amount shall be deemed paid out of the first payment paid by The Home Depot hereunder.

10.4   It is agreed that with respect to any legal limitations resulting from Applicable Laws now or hereafter in effect and affecting the validity and enforceability of the indemnification obligation under Section 10.1 and/or Section 10.2, such legal limitations are made a part of the indemnification obligation to the minimum extent necessary to bring Section 10.1 and/or Section 10.2 into conformity with the requirements of such limitations, and as so modified, the indemnification obligation shall continue in full force and effect.

10.5   The Service Provider's obligations under Sections 10.1 and 10.2 shall not be limited, waived, or excused by the payment of any damages, benefits, expenses, or compensation under any employee death or disability statute, including worker's compensation, employer's liability, employee benefit, or other such act.

10.6   Right to Assume Defense. With respect to any third party claims for which Indemnitees are entitled to indemnification from Service Provider, Indemnitees reserve the absolute right to assume the defense of any such third party claim, and Indemnitors shall reimburse any and all costs and expenses (including attorney, expert, and consultant fees and legal expenses) incurred thereafter by the Indemnitees. Indemnitees shall have the right to use any funds due Service Provider to pay for the obligations of Service Provider under Section 10.

10.7   Defense of Claims. Service Provider's duty to defend arises immediately upon the presentation of a third party claim to Service Provider. With respect to any third party claim for which indemnification is sought under this Section 10, Indemnitees shall provide prompt written notice of the third party claim to Service Provider; and Service Provider shall provide control of the defense of such third party claim if demanded by Indemnitees and cooperate with the Indemnitees in the defense of such third party claim. Indemnitees have the right, but not the obligation, to participate as they deem necessary in the handling, adjustment, or defense of any third party claim. Service Provider expressly agrees to do the following in connection with the conduct of the defense of any third party claim:

(a) Inform the Indemnitees in writing about all material information pertaining to a third party claim;

11

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

(c)     Neither Service Provider, nor any Co-Signer, is a party to any contract, agreement, mortgage, note, deed, lease or similar understanding with any third party that would have an adverse effect on the ability of Service Provider to fulfill its obligations under this SPA;

(d)     To Service Provider's knowledge, no non-public fact or circumstance exists that could result in an adverse effect on Service Provider or The Home Depot's public image, the public's perception of Service Provider or The Home Depot, or The Home Depot's brands or marks;

(e)     Service Provider is financially solvent, has the ability to perform its obligations hereunder, and will perform its obligations in a manner that complies with Applicable Laws and its business, activities, facilities, and the provision of Services hereunder, including laws of any country or jurisdiction from which or through which Service Provider provides the Services or obtains resources or personnel to do so; and

(f)     Service Provider and its Subcontractors shall comply with all Applicable Laws regarding the security and protection of the privacy and personal information of Customers, as more fully provided in the SPRG.

9.5     Service Provider's warranties contained in this Section 9 are in addition to any other warranties provided by Service Provider or required by Applicable Laws or this SPA. Service Provider's warranty obligations shall survive termination or expiration of this SPA.

10  Indemnification.

10.1    TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAWS, SERVICE PROVIDER SHALL DEFEND, INDEMNIFY, AND HOLD THE HOME DEPOT AND THE CUSTOMER, AND ANY OF THEIR RESPECTIVE PAST AND PRESENT OWNERS, OFFICERS, SHAREHOLDERS, AFFILIATES, PARENTS, SUBSIDIARIES, ASSOCIATES, DIRECTORS, EMPLOYEES, SUBCONTRACTORS, AND AGENTS (COLLECTIVELY "INDEMNITEES") HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, ALLEGATIONS, LOSSES, LIABILITIES, CAUSES OF ACTION, LAWSUITS, PROCEEDINGS, JUDGMENTS, FINES, PENALTIES, DAMAGES, COSTS, AND EXPENSES, INCLUDING ATTORNEY, EXPERT, AND CONSULTANT FEES AND LEGAL EXPENSES FOR PERSONAL INJURY (INCLUDING DEATH) AND PROPERTY DAMAGE RELATING TO OR ARISING OUT OF ANY SERVICES PROVIDED BY SERVICE PROVIDER OR ANY OF ITS SUBCONTRACTORS, EMPLOYEES, OFFICERS, AGENTS, OR REPRESENTATIVES (THE "INDEMNITORS"); PROVIDED, HOWEVER, THE INDEMNITORS SHALL HAVE NO OBLIGATION TO INDEMNIFY, DEFEND OR HOLD HARMLESS THE INDEMNITEES IN THE EVENT THAT SUCH CLAIMS, DAMAGES, LOSSES, AND EXPENSES ARE CAUSED BY THE SOLE, ACTIVE NEGLIGENCE OF AN INDEMNITEE.

10.2    BY WAY OF EXAMPLE AND NOT LIMITATION, SERVICE PROVIDER SHALL DEFEND, INDEMNIFY, AND HOLD THE INDEMNITEES HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, ALLEGATIONS, LOSSES, LIABILITIES, CAUSES OF ACTION, LAWSUITS, PROCEEDINGS, JUDGMENTS, CIVIL PENALTIES, FINES, PENALTIES, DAMAGES, COSTS, AND EXPENSES, INCLUDING ATTORNEY, EXPERT, AND CONSULTANT FEES AND LEGAL EXPENSES, TO THE EXTENT ARISING OUT OF OR RELATING TO THE FOLLOWING:

(a)     THE INACCURACY, UNTRUTHFULNESS, OR BREACH OF ANY REPRESENTATION, COVENANT, WARRANTY, OR ANY OTHER AGREEMENT SET FORTH IN THIS SPA BY SERVICE PROVIDER, ITS EMPLOYEES, AGENTS, REPRESENTATIVES AND/OR ANY OF ITS SUBCONTRACTORS;

(b)     PERSONAL INJURY (INCLUDING WITHOUT LIMITATION, DEATH AND EMOTIONAL DISTRESS OR INJURY) ARISING OUT OF OR RELATING TO ACTS OR OMISSIONS OF SERVICE PROVIDER, ITS EMPLOYEES, AGENTS, REPRESENTATIVES AND/OR ANY OF ITS SUBCONTRACTORS;

(c)     PROPERTY LOSS OR DAMAGE ARISING OUT OF OR RELATING TO ACTS OR OMISSIONS OF SERVICE PROVIDER, ITS EMPLOYEES, AGENTS, REPRESENTATIVES AND/OR ANY OF ITS SUBCONTRACTORS;

(d)     NONCOMPLIANCE BY SERVICE PROVIDER, OR ANY OWNER, OFFICER, SHAREHOLDER, PARENT, AFFILIATE, SUBSIDIARY, ASSOCIATE, DIRECTOR, EMPLOYEE, SUBCONTRACTOR, AGENT, REPRESENTATIVE, AND/OR EMPLOYEES THEREOF, WITH ANY APPLICABLE LAWS;

(e)     ANY HAZARDOUS MATERIAL (AS THAT TERM IS DEFINED BY APPLICABLE LAWS) BROUGHT TO THE CUSTOMER'S PROPERTY OR RELEASED BY THE NEGLIGENCE OF SERVICE PROVIDER, ITS EMPLOYEES, AGENTS, REPRESENTATIVES OR ITS SUBCONTRACTORS;

10

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

right to provide all Service Provider Information to The Home Depot, has obtained any and all necessary consents from third parties, and that such information does not violate the rights of any third party. The Home Depot reserves the absolute right and discretion to utilize or discard any Service Provider Information.

**9    Representations and Warranties.**

9.1    Warranty. The Home Depot will warrant to the Customer the workmanship of the Services pursuant to a Customer Contract. Service Provider will warrant its workmanship to The Home Depot in accordance with this Section 9. Service Provider warrants to The Home Depot that Services will be completed in a timely, good and workmanlike manner by an adequate number of qualified employees with suitable training, experience, and skill, and all materials supplied in connection with the Services will be of good quality and new unless otherwise required or permitted by a Purchase Order, that the Services will be free from defects not inherent in the quality required or permitted, and that the Services will conform to the requirements of the Purchase Order and this SPA. Services not conforming to those requirements, including substitutions not properly approved and authorized, shall be considered defective ("Defect") and a breach of Service Provider's warranty obligations.

9.2    Correction Period. In addition to Service Provider's obligations under Section 9.1, if any of Service Provider's Services are found to contain a Defect, meaning Services not in accordance with the requirements of a Purchase Order, this SPA, standards of good workmanship, inferior materials, equipment or goods or unsatisfactory work, services or materials as determined by The Home Depot in its sole and absolute discretion, Service Provider shall correct such Services promptly after receipt of written notice from The Home Depot. Notice under this Section may be provided by The Home Depot to Service provider via email or pursuant to Section 18.12. Service Provider's correction period shall extend to the longer of: (a) one (1) year (five (5) years for roofing) from the date of the Purchase Order completion or the signed Customer Approval, whichever is later; (b) the applicable period specified in the Customer Contract or any warranty supplemental to such Customer Contract; or (c) such period as may be required under Applicable Laws (the "Correction Period"). Service Provider shall correct the Defect without cost to The Home Depot or Customer. If Service Provider fails to remedy said Defect within the time period specified by The Home Depot in its sole discretion or if Customer refuses to allow Service Provider to correct the Defect, The Home Depot shall have the right to correct the Defect at Service Provider's expense. In the event that the Defect arises after termination of this SPA, The Home Depot may elect in its sole discretion to remedy the Defect instead of allowing Service Provider to do so, and Service Provider agrees to reimburse The Home Depot for all associated costs and expenses. The Home Depot shall further have the right to withhold payment to Service Provider and set off any costs or expenses incurred by The Home Depot arising from or related to any Defect. To the extent no further payments are due Service Provider, The Home Depot will invoice Service Provider for such expenses, and Service Provider agrees to pay such invoice within thirty (30) days of the invoice date. The Correction Period established by this Section relates only to the specific obligation of Service Provider to correct the Services, and has no relationship to the time within which the obligation to comply with this SPA or a Purchase Order may be sought to be enforced, nor the time within which proceedings may be commenced to establish Service Provider's liability with respect to the Service Provider's obligations other than specifically to correct the Services.

9.3    Mutual Representations and Warranties. Each Party represents and warrants that as of the Effective Date:

(a)    It is a corporation duly incorporated (or is any other form of legally recognized entity), validly existing, and in good standing under the laws of the jurisdiction in which it is incorporated or otherwise formed; and it is duly qualified and in good standing in each other jurisdiction where the failure to be so qualified and in good standing would have an adverse effect on its ability to perform its obligations under this SPA in accordance with the terms and conditions hereof; and

(b)    Each Party has all necessary corporate power to enter into this SPA and to perform its obligations hereunder; and the execution, delivery, and performance of this SPA by each Party has been duly authorized by all necessary corporate action on the part of each Party.

9.4    Service Provider Representations and Warranties. As of the Effective Date, continuing throughout the Term, and after termination during its continuing, surviving obligations pursuant to this SPA, Service Provider further represents and warrants to The Home Depot the following:

(a)    Service Provider is duly licensed, authorized, and qualified to do business in each jurisdiction in which a license, authorization, or qualification is required for the transaction of business in fulfillment of Service Provider's obligations under this SPA;

(b)    Service Provider is not a party to any outstanding litigation, arbitration, claim, or other dispute that, if decided unfavorably to it, would reasonably be expected to have a material adverse effect on Service Provider's ability to fulfill its obligations under this SPA;

9

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

(a)   Internal business information (including information relating to strategic and staffing plans and practices, marketing, promotional sales plans, practices and programs, training practices and programs, costs, rate and pricing structures, and accounting and business methods);

(b)   identities of, individual requirements of, specific contractual arrangements with, and information about, The Home Depot's service providers, suppliers, distributors, and Customers and their confidential, proprietary, or personal information;

(c)   compilations of data and analyses, processes, methods, techniques, systems, formulae, research, records, reports, Customer lists, manuals, documentation, models, data, and data bases relating thereto;

(d)   computer software and technology (including operating systems, application software, interfaces, utilities, modifications, macros, and their overall organization and interaction), program listing, documentation, data and databases, and any user IDs and passwords The Home Depot provides Service Provider for access to The Home Depot's internal systems; and

(e)   trade secrets, trade dress, ideas, inventions, designs, developments, devices, methods, processes, and systems (whether patentable or copyrighted, and whether reduced to practice or fixed in a tangible medium).

8.2   Required Disclosures. If Service Provider receives a subpoena or other validly issued administrative or judicial process demanding information about this SPA and/or Confidential Information, Service Provider must immediately notify in writing and tender the process for defense to The Home Depot. Unless it has been timely limited, quashed, or extended, Service Provider will thereafter be entitled to comply with such process to the extent required by law. If requested, Service Provider will cooperate in the response to such process or any demand related thereto.

8.3   Publicity. Service Provider will not issue any press release or other statement or otherwise disclose (in whole or in part) the contents or substance of this SPA or the Parties' activities under this SPA without first obtaining the express prior written consent of The Home Depot. Any such consent must be requested at least thirty (30) calendar days before the intended date of the release or communication. Service Provider will immediately inform The Home Depot if it believes that the issuance of any press or other media release is required by operation of Applicable Laws.

8.4   Ownership of Works. Except as otherwise agreed by the Parties in writing, The Home Depot or its assignee own and have all right, title, and interest in all ideas, concepts, plans, processes (including, without limitation, sales and marketing processes), creations, trademarks, logos, intellectual property, displays (whether such displays are used on an in-store or in-home basis), and other work product (collectively, the "Works") produced by The Home Depot, at The Home Depot's request, or by Service Provider or any Subcontractors for The Home Depot in furtherance of the Parties' obligations under this SPA. Service Provider will cooperate fully with The Home Depot and execute documentation as The Home Depot may request in order to establish, secure, maintain, or protect The Home Depot's rights with respect to the Works.

8.5   Third Party Beneficiaries. The Home Depot's service providers, suppliers, distributors, vendors, and/or agents who provide Confidential Information that is disclosed to Service Provider and/or Subcontractors shall be third party beneficiaries of only the provisions set forth in Section 8.1, but shall not be deemed third party beneficiaries of this SPA for any other purpose.

8.6   Service Provider Information and Profile. As part of entering this SPA and operating as a Service Provider, Service Provider understands and agrees that Service Provider and its personnel may be required to provide information to The Home Depot. Such information may include, without limitation, business names; addresses; telephone, facsimile, and email information; Service Provider principal or owner information; onboarding dates; state and local licensing and registration information; personnel names, background check approvals, badge numbers and photographs, and personnel photographs; service program types and capabilities; business descriptions; insurance information; project and work photographs; project, Task, and Purchase Order details; consumer reviews; and business and personnel testimonials (collectively, "Service Provider Information"). All Service Provider information may be used by The Home Depot for its business purposes, including without limitation, the creation of a Service Provider profile on The Home Depot and/or its affiliates' website(s). Service Provider expressly agrees that The Home Depot may provide Service Provider information to customers; may use Service Provider information in any way necessary to facilitate actual or potential Services, Customer Contracts, Tasks, and/or Purchase Orders; and may share Service Provider information with any of its affiliated companies, post such information on affiliate websites, and otherwise make such information publicly available. Service Provider warrants that all Service Provider information provided to The Home Depot by Service Provider and/or its personnel is accurate, up to date, and in compliance with all applicable laws. Service Provider warrants that it has the

8

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

review, or unless the Service Provider is credentialed by the third party agency. Periodic additional background investigations may be performed or required by The Home Depot.

6.2     Prerequisite to Provision of Services. Until the requirements of this Section 6 are fully satisfied, under no circumstances will Service Provider's employees or its Subcontractors' employees provide any Services, have contact with any Customers, or have access to Confidential Information, including Customer Information.

7    Service Provider's Exclusive Obligations to its Employees and Subcontractors.

7.1     None of the terms stated in this SPA are intended to create an employer-employee relationship between The Home Depot and any of the Subcontractors or employees of Service Provider. The Home Depot has no responsibility or obligation whatsoever for providing and furnishing any type or form of employee benefit or compensation to the Subcontractors or employees of Service Provider, including without limitation, wages, salary, benefit plans, savings or retirement plans (including contributions thereto), insurance, pension, stock, bonus, or like benefits or distributions.

7.2     Tax and Reporting Requirements. Service Provider is exclusively liable for all tax withholding, deposit, premium, and reporting requirements under federal or state income, social security, FICA, withholding, old age benefit, Medicare, unemployment insurance, disability insurance, or workers' compensation acts that is due or may become due to any taxing authority or any government body of any jurisdiction or any agency or department thereof with respect to services provided by it, its employees or its Subcontractors. Service Provider represents and warrants that it will comply, at its expense, with the Fair Labor Standards Act, and all other Applicable Laws to it, including all workers' compensation, benefits, and employment laws. The Home Depot has the right to inspect or audit such records upon request.

7.3     Compliance with the Immigration Reform and Control Act. Service Provider is solely responsible for ensuring that all of its employees and its Subcontractors' employees comply with the Immigration Reform and Control Act of 1986 ("IRCA") and applicable State Immigration laws. Service Provider will perform employment eligibility verifications and maintain I-9 forms for its employees and its Subcontractors' employees. Service Provider will comply fully with the record-keeping requirements of IRCA and State Immigration laws and certify its compliance to The Home Depot upon request. Service Provider will use only workers for whom it has confirmed legal eligibility to perform services as employees in the United States and for whom all required record keeping under IRCA and State Immigration laws has been performed and maintained.

7.4     No Sponsorship. The Home Depot is not responsible for sponsorship of, and will not sponsor, any intending immigrant workers used in fulfillment of Service Provider's obligations under this SPA.

7.5     Labor Disputes. Service Provider agrees to notify immediately The Home Depot in writing of any threatened, impending, or actual labor dispute involving Service Provider or Subcontractors.

7.6     Compliance with this SPA. Service Provider will ensure that its employees comply with the terms of this SPA, and any breach of any term of this SPA by Service Provider's employees or its Subcontractors' employees is a breach by Service Provider for liability, indemnification, and other purposes.

8    Confidentiality; Publicity; Ownership of Works.

8.1     Confidential Information. Service Provider acknowledges that performance under this SPA will give Service Provider and its Subcontractors access to confidential, proprietary, and trade secret information of The Home Depot and/or its service providers, suppliers, distributors, vendors, and/or agents, as well as Customer Information (collectively "Confidential Information"). Service Provider agrees that it will maintain all Confidential Information in strict confidence and not disclose or use Confidential Information other than as necessary to fulfill its obligations to The Home Depot under this SPA. Service Provider will inform its Subcontractors about the confidential and proprietary nature of the Confidential Information to which they may be exposed and will ensure that Subcontractors (i) keep Confidential Information strictly confidential, (ii) are bound by obligations of nondisclosure and limited use at least as stringent as those contained herein, and (iii) comply with all terms of this Section 8. "Confidential Information" shall include, without limitation, information disclosed to, made available to, or obtained by Service Provider in connection with this SPA, and all material and reports prepared for The Home Depot hereunder, including all information (whether or not specifically labeled or identified as confidential), in any form or medium, that is disclosed to or learned by Service Provider in the performance of Services related to this SPA and that relates to the business, products, services, research, or development of The Home Depot or its service providers, suppliers, distributors, agents, representatives, or Customers. Confidential Information further includes without limitation the following:

7

**THE HOME DEPOT**
**MASTER SERVICE PROVIDER AGREEMENT**

immediately notify The Home Depot if Service Provider or its Subcontractors encounter any Hazardous Materials during performance of the Services at any time.

**5    Payment and Chargebacks.**

5.1    Submission of Invoice or Application for Payment. Payment processing will begin after Service Provider's completion of the Services specified in a Purchase Order. Within thirty (30) days of completion of the Services, Service Provider must submit to The Home Depot a customer approval form ("Customer Approval") (or other such form provided by The Home Depot) signed by the Customer as a condition of payment processing. For any additional payment beyond the original Purchase Order amount, Service Provider must submit a Customer approved Change Order supporting such payment request before or within thirty (30) days of completion of the Services. The Services shall be deemed unacceptable and payment shall not become due if The Home Depot or Customer rejects the Services for any reason or if Service Provider's performance of the Services does not conform to industry standards or the requirements of the SPA ("Unacceptable Services"). The payment procedures and adjustments are described in further detail in the SPRG.

5.2    Payment. Upon Service Provider's completion of the Services and correction of any Unacceptable Services to the satisfaction of The Home Depot and the Customer, and within forty-five (45) days of The Home Depot's receipt of the signed Customer Approval, The Home Depot will process and make full payment to the Service Provider for the undisputed portions of the amount due under a Purchase Order. Service Provider must contest in a written notice to The Home Depot any alleged payment shortage, miscalculation or error within thirty (30) days of receipt of payment for a Purchase Order. The failure to contest in a written notice any such alleged errors within such time period shall constitute a full and final release and waiver of all claims related to the applicable Purchase Order(s). The Home Depot shall have thirty (30) days in which to respond to such contest, if one is asserted. All decisions of The Home Depot are final. The Home Depot reserves the right to reject any payment claim that is not submitted for review within the stated thirty (30) day period. Service Provider acknowledges and agrees that Service Provider's receipt of payment constitutes valuable consideration and a full and unconditional waiver and release of any and all legal claims, demands, and Encumbrances that have or could have been asserted as of the date of payment by The Home Depot. Service Provider further agrees that payment to Service Provider does not constitute or imply acceptance of any portion of Service Provider's Services by The Home Depot.

5.3    Cost Adjustments. An undisputed error in the payment made to Service Provider will be corrected as follows: (i) if the cost adjustment results in a credit to the Service Provider, the amount will be included in the next scheduled payment cycle; or (ii) if the cost adjustment results in a debit to the Service Provider, the Service Provider's account will show a balance due. In the case of a debit, The Home Depot will deduct the amount due from any future payments owed to the Service Provider. To the extent that no further payments are due, The Home Depot will invoice Service Provider for such expenses, and Service Provider agrees to pay such invoice within thirty (30) days of the invoice date. The Home Depot's rights under this Section will survive the expiration or termination of this SPA.

5.4    Chargeback. If The Home Depot incurs any costs or expenses (i) to satisfy a Customer who is not completely satisfied because of actual or alleged substandard or faulty workmanship of the Service Provider, (ii) to repair damages actually or allegedly arising from or relating to Service Provider's Services, (iii) to pay any costs or expenses, including without limitation reasonable attorneys' fees, arising from or relating to Service Provider or its Subcontractors, and/or (iv) if the Service Provider has violated any of the requirements of the SPA that are, or may be deemed in the future, violations that provide a penalty to be imposed against the Service Provider, such expenses, regardless of the manner incurred, will be deducted as a "chargeback" from payments otherwise due the Service Provider from The Home Depot. To the extent that no further payments are due, The Home Depot will invoice Service Provider for such expenses, and Service Provider agrees to pay such invoice within thirty (30) days of the invoice date. The Home Depot's rights under this Section will survive the expiration or termination of this SPA. Additional information with regard to chargebacks is provided in the applicable SPRG.

5.5    The Home Depot shall have the right at any time to set-off any amounts due to Service Provider (or any of its associated or affiliated companies) against any amounts owed by Service Provider with respect to a Purchase Order, the Services, or any other contractual agreement between the Parties hereto, unless such set-off violates the Applicable Laws.

**6    Background Investigations.**

6.1    General. Service Provider employees and Subcontractor employees must pass background investigations to The Home Depot's satisfaction before providing any Services under this SPA. These investigations will be conducted by a third party agency or agencies designated by The Home Depot as set forth in the SPRG. Service Provider will be notified of the results but will not receive access to or review the report, except to the extent The Home Depot is required under Applicable Laws to allow such access or

6

The Home Depot Master Service Provider Agreement
5/2016.1

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

at least six (6) years following the conclusion of this SPA, or the amount of time required by the applicable statutes of limitations and repose for claims relating to this Section that arise following the conclusion of this SPA, whichever is greater.

4.11    Taxes. Service Provider is solely responsible for all taxes related to the Services and/or fulfillment of its obligations to The Home Depot under this SPA. Service Provider will pay, accrue, and remit all sales, use, ad valorem, transportation tariffs, franchise, income, license, occupation, and any other taxes, duties, imposts and excises of every nature or description whatsoever, presently or hereinafter imposed by Applicable Laws upon the operation of Service Provider's business in relation to its fulfillment of its obligations to The Home Depot. Service Provider will file all reports, make all returns, and secure all licenses and permits with respect to such taxes or imposts. The Home Depot will issue a resale certificate to Service Provider only if Service Provider is authorized to request such a certificate under Applicable Laws. With respect to the (i) Furnish and Install Program and (ii) Sell, Furnish, and Install Program, Service Provider understands and agrees as follows: (a) Service Provider is providing lump sum pricing of labor and products, materials, and/or merchandise; (b) title to the products, materials, and/or merchandise passes from Service Provider to the Customer upon installation as part of a Customer Contract; and (c) Service Provider is responsible for and shall pay any sales tax or accrue any use tax applicable to the products, materials, and/or merchandise that Service Provider provides as part of the Services. The Home Depot will collect all applicable retail sales taxes from Customers as required by Applicable Laws and will remit such taxes to and file all required reports with the appropriate governmental authorities.

4.12    Property Losses. Service Provider is solely responsible for the care of, and for all losses that may occur with respect to any actual or alleged physical damage to or loss of, the Customer's real and/or personal property arising from or relating to Service Provider's Services. Any Customer property will not be removed or replaced by the Service Provider unless such is provided for in the Customer Contract or requested in writing by the Customer. Service Provider is further responsible for the care of, and for all losses that may occur with respect to any actual or alleged physical damage or loss of, merchandise, monies, funds, negotiable instruments (including, without limitation, checks), valuables, or other property of The Home Depot or any Customer while in Service Provider's custody or control.

4.13    Quality. Service Provider shall at all times provide new materials (unless otherwise specified in a Purchase Order). After receiving written notice from The Home Depot, Service Provider shall, within the reasonable time period specified by The Home Depot in its sole discretion, proceed to take down or otherwise remove all portions of the Services which The Home Depot shall have determined are unsound, improper, or in any way failing to conform to a Purchase Order or this SPA and shall replace same with new, conforming and quality Services in a manner deemed satisfactory by Customer and The Home Depot. Notice under this Section may be provided by The Home Depot to Service provider via email or pursuant to Section 18.12.

4.14    Equipment. Service Provider will, at its own expense, provide all transportation and provide and maintain all equipment, supplies, tools, uniforms, up-to-date maps and directional aids, and other resources (collectively, "Equipment") necessary to fulfill its obligations under this SPA. Service Provider will keep Equipment in good repair and safe operating condition, maintain Equipment according to the manufacturers' recommendations, and use only Equipment fit for its intended purpose. Service Provider's vehicular Equipment will be maintained consistent with Applicable Laws, including the Federal Motor Carrier Safety Regulations ("FMCSR") at all times.

4.15    Clean Up. Service Provider shall, at its own expense: (a) keep the Customer's premises free from waste materials, packaging and other debris accumulated in connection with Service Provider's Services by collecting and removing such debris on a daily or other basis requested by The Home Depot; (b) at the completion of the Services, sweep and otherwise make the Service area and its immediate vicinity "broom clean"; and (c) remove all of its tools, equipment, and surplus materials as directed by Customer or The Home Depot at the completion of Service Provider's Services. Service Provider agrees to provide all cleaning and cleanup required under a Purchase Order pertaining to the Services to the extent such requirements are in excess of this Section. If Service Provider fails to commence clean-up duties within twenty-four hours after receipt from The Home Depot or Customer of notice of noncompliance, The Home Depot may implement cleanup measures as necessary or prudent without further notice to the Service Provider, the cost of which shall be reimbursed to The Home Depot by the Service Provider.

4.16    Environmental Protection. Service Provider shall be responsible for compliance with all applicable federal, state, and local natural resource and environmental protection requirements, codes and regulations, including without limitation, all Applicable Laws pertaining to hazardous wastes and substances (hereinafter "Hazardous Materials"). In addition, Service Provider shall not provide or allow any of its Subcontractors to supply or deliver any Hazardous Materials to a Customer's property, and in the event such occurs, Service Provider shall remove such Hazardous Materials at its sole expense. Further, Service Provider shall

5

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

("Encumbrances"). Service Provider shall, at all times, keep the property of Customer and Home Depot free from Encumbrances filed or recorded by Subcontractors or others claiming to be in the chain of privity with Service Provider in connection with the Services. The Service Provider shall cause the release, dissolution, cancelation or removal of any Encumbrance relating in any way to the Services within five (5) business days of the date that Service Provider was made aware of such Encumbrance, irrespective of the validity. Further, The Home Depot shall have the right, but not the obligation, to take any and all steps necessary to promptly release such Encumbrances, and Service Provider shall pay to The Home Depot or its Customer(s) by reason thereof, the expenses, including legal fees, plus interest at the maximum rate permitted by applicable law, incurred by The Home Depot or its Customer(s) as a result of such Encumbrances. Service Provider agrees that The Home Depot is entitled to deduct such costs, expenses and legal fees from any sum then due or thereafter becoming due to Service Provider. This paragraph shall survive the termination of this SPA.

4.5      Partial Lien Waiver, Affidavits, and Other Documents. As a condition precedent to payment, The Home Depot may require Service Provider to provide, in a form satisfactory to The Home Depot, (1) partial or final waivers of Encumbrances and releases of claims relating to the Services and (2) affidavits swearing Service Provider has paid in full its Subcontractors. Service Provider shall, as often as required by The Home Depot, provide an affidavit identifying all Subcontractors or any other entities or individuals that may be in the chain of privity of contract with the Service Provider, that are or will furnish labor, material, services or equipment, including their address, telephone and facsimile numbers, and the amount due or to become due.

4.6      Non-Exclusivity. This SPA is non-exclusive, and The Home Depot, without notice, may use other providers to perform the same or similar services described in this SPA. Similarly, Service Provider may perform like services for others, so long as the performance of such other services does not impair Service Provider's ability to fulfill its obligations under this SPA, cause Service Provider to breach this SPA, or result in an Event of Default as defined in Section 13 of this SPA.

4.7      No Customer Solicitation. Service Provider and its Subcontractors will not offer, solicit, or provide any services, or recommend a third party for the performance of any services, to a Customer, other than providing the Services specifically identified in a Purchase Order. Service Provider and its Subcontractors will not use Confidential Information, information about Customers obtained as a result of Service Provider's activities under this SPA, or any other information obtained as a consequence of Service Provider's fulfillment of its obligations under this SPA, for any purpose other than as necessary to perform Services under this SPA. Service Provider and its Subcontractors are expressly prohibited from using Confidential Information to solicit, directly or indirectly, any business from a Customer or prospective Customer. Service Provider and its Subcontractors will not use Confidential Information for the purpose of providing products or services that are the same as, similar to, and/or competitive with, Services or other products and services that are sold or provided by The Home Depot. Service Provider acknowledges and agrees that the restrictions contained in this Section are fair, reasonable, and necessary to protect The Home Depot's legitimate business interests, and that Service Provider accepts a duty to know and remain aware of the Services or other products and services that are sold or provided by The Home Depot. The non-solicitation restrictions set forth in this Section will survive for three (3) years upon termination or expiration of this SPA, provided that protections applicable to The Home Depot's Confidential Information will continue for as long as permitted by Applicable Laws. Service Provider agrees that immediate, irreparable harm could result to The Home Depot and its business if Service Provider or its Subcontractors breach their obligations in this Section. Therefore, Service Provider agrees that The Home Depot will be entitled to a restraining order, injunction or other equitable relief if Service Provider or its Subcontractors breach their obligations under this Section, in addition to any other remedies available at law or equity.

4.8      No The Home Depot Employee Solicitation. During the Term of this Agreement and for a period of one hundred and eighty (180) days thereafter, Service Provider agrees that it will not solicit for employment or engagement as a consultant any employees of The Home Depot without the express written consent of The Home Depot. The restrictions in this paragraph do not limit Service Provider's ability to publicly post or publish general employment opportunities and hire a person who responds to general job postings or advertisements.

4.9      Bills of Lading or Other Shipping Documents. The terms of this SPA shall not be modified in any manner by the terms of any bills of lading or any other shipping documents that may be issued by Service Provider to The Home Depot in connection with any Services.

4.10     Licenses and Permits. Service Provider must have and maintain all required licenses and obtain all required building and construction permits and inspections necessary to perform and/or complete the Services as required by Applicable Laws. Service Provider shall not request or require Customers to obtain permits unless permissible under Applicable Laws and authorized to do so in writing by The Home Depot. Service Provider shall maintain records documenting its compliance with the requirements of this Section for

4

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

with all Applicable Laws (defined in Section 4.2 below), including business and professional licensing requirements, building and zoning codes, and facilities and conditions standards.

3.7     Service Provider Reference Guide. Service Provider acknowledges and agrees that additional terms and conditions applicable to these Services will be set forth by The Home Depot in its Service Provider Reference Guides ("SPRG"), which constitute an integral, material part of this SPA and are incorporated herein by reference. Service Provider will be bound to the SPRG generated by the entity from which it receives a Purchase Order, whether it is Home Depot U.S.A., Inc., U.S. Remodelers, Inc., THD At-Home Services, or some other Affiliate. If Affiliate does not publish its own SPRG, then the SPRG of Home Depot U.S.A., Inc. shall apply.

With respect to Tasks received from Home Depot U.S.A., Inc. or U.S. Remodelers, Inc., Service Provider acknowledges and agrees to all terms and conditions contained in the SPRG located online at the following website: https://hdconnect.homedepot.com/Resources/ReferenceLibrary/Pages/default.aspx

With respect to Tasks received from THD At-Home Services, Inc., Service Provider acknowledges and agrees to all terms and conditions contained in the SPRG located online at the following website: www.hdserviceproviders.com/rsw (User ID: installer; Password: homedepot).

In the event of an irreconcilable conflict between the applicable terms and conditions contained in the SPRG and this SPA, the terms and conditions contained in this SPA shall control. The Home Depot reserves the absolute right to modify, without prior notice and in its own discretion, each SPRG, The Home Depot's corresponding website, and/or the location of the SPRG from time to time. Certain sections of the SPRG may apply specifically to a particular Program, and Service Provider is responsible for following the guidelines in the SPRG specific to Service Provider's Program(s), Tasks, and Purchase Orders in addition to following such SPRG's general guidelines. Notwithstanding any other provision herein to the contrary, any revisions made to the SPRGs, a change in the website on which the SPRG are contained, or the addition of a new SPRG applicable to Service Provider's Services shall immediately be effective and binding upon Service Provider at the time of The Home Depot's posting of such revisions or additions or statement of a new website location. Service Provider's agreement to the modification or change to the SPRGs or the website location of the same extends to The Home Depot's development of a single SPRG for use with all of its Affiliates.

4     General Obligations of Service Provider.

4.1     Time for Performance of Services. Time is of the essence. Service Provider shall commence the Services (1) immediately upon the receipt of a Purchase Order or (2) at a time dictated by The Home Depot and fully complete the Services by the date stated in the Purchase Order, and if the Purchase Order does not designate a date for final completion, then the Services shall be finally completed as directed by The Home Depot. The Service Provider acknowledges that its failure to complete finally the Services in a timely manner may result in The Home Depot sustaining direct, indirect, special and consequential damages. Service Provider will coordinate and perform the Services, and its parts, diligently and promptly; and furnish at all times sufficient, qualified and competent labor, and adequate, conforming and usable materials, equipment, tools and other necessary things to achieve timely progress of the Services. Service Provider shall utilize, maintain and/or implement appropriate technology to interface with systems utilized by The Home Depot to coordinate Tasks, Purchase Orders, payments by Customers, and communication of project and Customer information between the Parties.

4.2     Compliance with Laws. Service Provider and its Subcontractors shall comply with all applicable federal, state, county, and local laws, statutes, orders, ordinances, regulations, rules, codes (including building codes), permits, any requirements of the governing authority with jurisdiction, and any court orders (the "Applicable Laws") pertaining to a Task, Purchase Order, Customer Contract, or the performance of Services.

4.3     Safety. Service Provider will act at all times with the safety of The Home Depot's Customers, The Home Depot's associates and personnel, and its Subcontractors foremost in mind and will follow all applicable safety guidelines conforming to (i) those required or recommended by federal, state, and local governmental or quasi-governmental authorities with jurisdiction over the activities of Service Provider under this SPA, including all applicable guidelines and regulations issued by the federal Occupational Safety and Health Administration; and (ii) the requirements of this SPA, including the SPRG, and any other safety notices or communications sent to Service Provider by The Home Depot. All waste that is generated by the Services or residual chemicals that are otherwise used by Service Provider must be properly managed, stored, transported, and disposed of in accordance with Applicable Laws.

4.4     Encumbrances. To the extent permissible under Applicable Laws, Service Provider waives any and all right to file or record a lien, claim of lien, stop payment notice, stop notice, security interest, and any other encumbrance against The Home Depot, a Customer, and the property of a Customer or the Home Depot

3

## THE HOME DEPOT
## MASTER SERVICE PROVIDER AGREEMENT

implied), or make any representations on behalf of The Home Depot except as expressly authorized in The Home Depot's Sell, Furnish, and Install Program.

1.6     Subcontracting. Service Provider shall at all times have competent, experienced and skilled Subcontractors engaged for the performance of the Services. Further, The Home Depot, the Service Provider and all Subcontractors shall at all times have skilled, experienced and competent employees perform the Services. The Home Depot shall have the right to remove from a Task any employees or Subcontractors of Service Provider that do not demonstrate the requisite skill, experience, or competence to perform the Services, or that are otherwise unacceptable to The Home Depot. With respect to Purchase Orders received from THD At-Home Services, Inc., Service Provider acknowledges and agrees that it shall not subcontract the Services to any third party without the express, written approval of THD At-Home Services, Inc. for each instance of subcontracting.

## 2   Term.

2.1     Renewals. The initial term of this SPA is one (1) year, commencing on the Effective Date (the "Term"). The Term of this SPA shall automatically extend and renew for further one-year periods under the same terms and conditions contained herein without further notice, unless terminated earlier in accordance with Section 15.

2.2     In the event of termination of this SPA, the SPA, and all of its terms and conditions, remains in full force and effect for all Purchase Orders executed before the termination date until the applicable statute of repose has expired for the Services that are the subject of the Purchase Order(s).

## 3   Services; Programs; Changes; Service Provider Reference Guide.

3.1     Scope of Services. Service Provider shall perform and furnish all Services necessary to prosecute and complete the scope of work identified, described in, or reasonably inferred from a Purchase Order.

3.2     Programs.   The Home Depot may order the following types of Services from Service Provider under this SPA as may be agreed by the Parties and identified in a Purchase Order ("Program(s)"): (i) "Service Only" - where Service Provider shall provide Services to the Customer pursuant to a Customer Contract between The Home Depot and its Customer; (ii) "Install Only" - where Service Provider will install merchandise at the Customer's service location pursuant to a Customer Contract between The Home Depot and its Customer; (iii) "Furnish and Install" - where Service Provider will furnish from its Inventory and install the merchandise at the Customer's service location pursuant to a Customer Contract between The Home Depot and its Customer; (iv) "Sell, Furnish, and Install" - where Service Provider will sell, furnish from its Inventory, and install merchandise at the Customer's service location pursuant to a Customer Contract between The Home Depot and its Customer; (v) "Furnish and Deliver" - where Service Provider will furnish from its Inventory and deliver the merchandise to the Customer pursuant to a Customer Contract between The Home Depot and its Customer; and (vi) "Deliver" – where Service Provider delivers merchandise to the Customer on behalf of The Home Depot pursuant to a Customer Contract between The Home Depot and its Customer. Pursuant to a written amendment, the Parties may agree to modify the types of Services provided by Service Provider.

3.3     Pricing of Services. The prices that Service Provider charges The Home Depot for the Services will be set forth in a separate document signed by the Parties and known as an "Exhibit A" which is hereby incorporated in and made as part of the SPA. Unless otherwise provided herein, the prices at which Services are sold to Customer shall be solely determined by The Home Depot irrespective of the prices set forth in Exhibit A.

3.4     Changes. A Purchase Order may be amended only by a change order within the general scope of the Purchase Order approved in writing by Customer ("Change Order"). No adjustments, including adjustments to compensation due Service Provider, will be made for any deviations from a Purchase Order that have not been requested or otherwise agreed to by The Home Depot and Customer. Fully executed Change Orders become a part of, and are subject to, this SPA. Change Orders may be transmitted by email, facsimile, or any other electronic method of communication implemented by The Home Depot and made available to Service Provider.

3.5     Adjustments to Compensation. Any adjustment to compensation due Service Provider shall be established by one of the following methods: (1) mutual agreement on a lump sum with sufficient information to substantiate the amount; (2) unit prices stated in this SPA or the Purchase Order or, if not stated, then established by mutual written agreement; or (3) as otherwise dictated by The Home Depot in its sole discretion.

3.6     Performance of Services. Service Provider will, at a minimum, provide all Services, fulfill all Purchase Orders, and complete all Tasks in a timely, workmanlike, and professional manner in accordance with this SPA, the applicable Purchase Order, and any service level requirements specified in the SPRG (see Section 3.7 below), the Customer Contract, any applicable manufacturer's warranty or warranties, and in accordance

THE HOME DEPOT
## MASTER SERVICE PROVIDER AGREEMENT

Bryan's Home Improvement Corp | New York
Service Provider's Full Business Name | Service Provider's State of Incorporation

2 Franka Place Apt#9
Service Provider's Address

Spring Valley | NY | 10977
City | State | Zip

THIS MASTER SERVICE PROVIDER AGREEMENT ("SPA") is made and entered by and between Service Provider and Home Depot U.S.A., Inc., on behalf of itself and its Affiliates, including without limitation THD At-Home Services, Inc. and U.S. Remodelers, Inc. (collectively, "The Home Depot"). The effective date of this SPA is the date of execution by Service Provider ("Effective Date"). Service Provider and The Home Depot sometimes are referred to individually as a "Party" or collectively as "Parties."

## 1   Introduction.

1.1      The Home Depot may contract Service Provider to provide labor, services, work, equipment, material and/or goods (collectively, "Services") to The Home Depot and its customers ("Customer(s)"), with whom The Home Depot shall have a separate contractual arrangement ("Customer Contract").

1.2      Purpose and Applicability of SPA. To facilitate the business relationship between the Parties, expedite contract execution and establish standard terms and conditions applicable to all Services covered by this SPA, the Parties hereby enter into this SPA, which shall be applicable to all Services performed by the Service Provider and Service Provider's subcontractors, suppliers, materialmen (if permitted) (collectively "Subcontractors") and any other entity or individual for whom Service Provider is legally liable or responsible, including without limitation, its agents, authorized representatives and employees.

1.3      No Assurance of Business Opportunity for Service Provider During Term. During the Term of this SPA ("Term" is defined in paragraph 2.1 below), it is contemplated that Service Provider will, from time to time, be requested by The Home Depot to perform Services; provided, however, the existence of this SPA alone does not obligate or bind The Home Depot in any way to order any Services from the Service Provider. Service Provider further and specifically acknowledges that The Home Depot makes no assurance whatsoever that Service Provider will receive any or a minimum volume of business or revenue, leads, Assignments, Purchase Orders, geographic territory rights, or any other type of business opportunities whatsoever from The Home Depot or any of its individual stores by executing this SPA. In view of the foregoing, Service Provider acknowledges that any investments or expenditures that Service Provider has made or may make upon executing the SPA are made at Service Provider's sole risk.

1.4      Purchase Orders. The Home Depot's retention of Service Provider with respect to any particular Customer Contract constitutes a "Task." For each Task, The Home Depot will issue a purchase order to the Service Provider (the "Purchase Order," also known as a "Work Order"). A Purchase Order will be deemed accepted upon the earlier of Service Provider's acknowledgment of receipt of the Purchase Order or Service Provider's commencement of Services relating in any way to a Purchase Order. The Purchase Order will include the Task's specific terms, Task information, scope of work, project specific forms, and any contract terms specifically applicable to the Task. This SPA is incorporated into and made part of all Purchase Orders. A Purchase Order may only be modified by execution of a Change Order pursuant to Section 3.4. Purchase Orders may be transmitted to the Service Provider by email, facsimile, or any other electronic method of communication implemented by The Home Depot and made available to Service Provider. A Purchase Order may modify and/or supplement the terms and conditions of the SPA only if such modification or supplementation is approved in writing by a duly authorized officer of The Home Depot. In the event of irreconcilable conflicting provisions between a Purchase Order and the SPA, the SPA shall govern.

1.5      Independent Contractor. Service Provider's relationship to The Home Depot for purposes of this SPA is that of a free and independent contractor that is solely liable for its own taxes. In no event will The Home Depot and/or its affiliated companies be considered an employer or joint employer of Service Provider, its employees, Subcontractors, or any of their respective affiliates or personnel. Service Provider acknowledges that it has sole responsibility to hire, discipline, terminate, supervise, and/or dictate the daily work of its employees and Subcontractors and is solely responsible for the payment of wages, salaries, and benefits to its employees. None of the terms set forth in this SPA will be construed as creating a partnership, joint venture, agency, master-servant, employment, trust, fiduciary relationship, or any other relationship between The Home Depot and Service Provider or its Subcontractors. Service Provider is expressly prohibited from incurring and has no right, directly or indirectly, to incur any debts or other obligations (expressed or

1

## THE HOME DEPOT SERVICE PROVIDER AGREEMENT

### GENERAL TERMS AND CONDITIONS

**1      Introduction.**

1 1      <u>General</u>. These are the general terms and conditions pursuant to which The Home Depot may use Service Provider and its employees, agents and subcontractors ("**Service Provider Personnel**") to provide services, products and/or materials (collectively, "**Services**") to The Home Depot's retail customers ("**Customer(s)**"), with whom The Home Depot has a separate contractual arrangement ("**Customer Contract**").  These General Terms and Conditions are a part of the Service Provider Agreement ("**SPA**") between The Home Depot and Service Provider dated as of the Effective Date located on the Signature Page. The Service Provider and The Home Depot will sometimes be referred to individually as a "**Party**" or collectively as "**Parties**".  These general terms and conditions may only be amended by an amendment to the SPA executed by the Parties, in the form attached as Attachment 3.

1.2      <u>Purchase Orders</u>. The use of Service Provider by The Home Depot with respect to any particular Customer Contract is an "**Assignment**".  The necessary particulars of each Assignment will be communicated to Service Provider in the form of a document referred to as a "**Purchase Order**", which may only be amended by a change order prepared by The Home Depot and signed by Service Provider ("Change Order"). No adjustments, including adjustments to compensation due Service Provider, will be made for any deviations from a Purchase Order that have not been requested or otherwise agreed to by The Home Depot pursuant to a Change Order. Purchase Orders, and any Change Orders constitute an integral part of this SPA and are incorporated by reference.  Purchase Orders and any Change Orders may be electronically transmitted. The prices that Service Provider charges The Home Depot for the Services will be set forth in a separate document signed by the Parties and known as an Exhibit "A", which Exhibit "A" are hereby incorporated and made as part of the SPA.  Unless otherwise provide herein, the prices at which Services are sold to The Home Depot's customer shall be solely determined by The Home Depot.

1.3      <u>Relationship of the Parties</u>. Service Provider's relationship to The Home Depot and its affiliated companies for purposes of this SPA is that of an independent contractor. In no event will The Home Depot and its affiliated companies be considered a joint employer of Service Provider or any of its affiliates or their respective personnel. Service Provider acknowledges that it has sole responsibility to hire, discipline, terminate, supervise and dictate the daily work of its employees, agents, and subcontractors and is solely responsible for the payment of wages, salaries and benefits to its employees. Service Provider or Service Provider Personnel do not have an employee status or any entitlement to participate in any plans, arrangements, or distributions by The Home Depot or its affiliated companies pertaining to, or in connection with, any pension, stock, bonus, or similar benefits for The Home Depot employees.

1.4      <u>Reference to Service Provider</u>. Any reference to Service Provider refers to Service Provider Personnel, the equipment, facilities and resources used by Service Provider, and its agents or any other third parties that Service Provider engages to fulfill its obligations in providing the Services, regardless of whether Service Provider owns, operates or controls said equipment, facilities and/or resources.

1.5      <u>No Implied or Further Agreement</u>. Nothing in this SPA obligates The Home Depot to use the services of Service Provider for any Assignment or to issue Service Provider any Purchase Order or to enter into any further agreement with Service Provider whatsoever.  Without limiting the generality of the foregoing, Service Provider acknowledges that The Home Depot makes no assurance whatsoever that Service Provider will receive a minimum or particular number of leads or Assignments or receive a minimum or particular dollar amount of business under this SPA. In view of the foregoing, the Parties represent and warrant to one another that any investments or expenditures a Party has made, or may make, in anticipation of, or following execution of this SPA, are at such Party's sole and knowing risk.

1.6      <u>Non-Exclusivity</u>. This SPA is non-exclusive and The Home Depot may use other providers to perform the same or similar services as those under this SPA. Similarly, Service Provider may perform like services for others, so long as the performance of such other services does not impair Service Provider's ability to fulfill its obligations under this SPA, cause Service Provider to breach this SPA, or result in an Event of Default as defined in Section 13 of this SPA.

**2      Term.**

2.1      <u>Renewals</u>. The term of this SPA is one (1) year from the Effective Date (the "**Initial Term**"), following which, it will automatically renew for consecutive one-year periods ("**Renewal Term**" and together with the initial term, the "**Term**") unless terminated earlier in accordance with Section 15.

**3      Services; Service Provider Reference Guide.**

3.1      <u>Services</u>. If any services, functions or tasks to be performed by Service Provider are not specifically described or included within the definition of "Services" hereunder, but are required for proper performance,

1

## THE HOME DEPOT SERVICE PROVIDER AGREEMENT

### GENERAL TERMS AND CONDITIONS

they are implied by, and included within, the scope of the Services to the same extent as if specifically described in this SPA.  The Home Depot may order the following types of services from Service Provider under this SPA as agreed by the Parties on the Face Page ("**Program(s)**"):  (i) "**Service Only**" where Service Provider shall provide property related Services to the Customer; (ii) "**Install Only**" where The Home Depot will sell and furnish the merchandise and Services to the Customer and Service Provider will only provide the Installation service; (iii) "**Furnish and Install**" where The Home Depot will sell the merchandise and Services to the Customer and the Service Provider will furnish and install the merchandise at the Customer's service location; (iv) "**Sell, Furnish and Install**" where Service Provider will sell, furnish and install merchandise and provide the Services to a Customer of The Home Depot pursuant to a Customer Contract; and (v) "**Furnish and Deliver**" where The Home Depot will sell the merchandise to the Customer and the Service Provider will furnish and deliver the merchandise to the Customer. Pursuant to a written amendment, the Parties may agree to modify the types of Services provided by Service Provider.

3.2   Provision of Services. Service Provider will, at a minimum, provide all Services, fulfill all Purchase Orders, and complete all Assignments in a timely, workmanlike, and professional manner in accordance with this SPA, any service level requirements specified in the SPRG (see 3.3), any applicable manufacturer's warranty or warranties and all applicable laws, including business and professional licensing requirements, building and zoning codes and facilities and conditions standards. Service Provider will provide Service Provider Personnel who will be present at Customers' service addresses with photo identification and uniforms bearing Service Provider's marks and such other marks as may be designated by The Home Depot in accordance with any further guidelines provided in the SPRG.  Service Provider agrees to provide and will perform the Services described in this SPA in accordance with and subject to the terms and conditions set forth herein.  Service Provider will not offer or provide any services to a Customer, other than those specifically identified in a Purchase Order or written Change Order issued by The Home Depot, while performing Services for the Customer.

3.3   Service Provider Reference Guide ("SPRG"). Service Provider acknowledges and agrees that additional terms and conditions applicable to these Services will be set forth by The Home Depot in its Service Provider Reference Guide ("**SPRG**"), which constitutes an integral part of this SPA, is incorporated herein by reference and will be located on-line at a website established by The Home Depot for that purpose ("**The Home Depot Website**").  The Home Depot reserves the absolute right to modify the SPRG and The Home Depot Website from time to time in its own discretion.  Service Provider will follow all of the applicable terms and conditions included in the SPRG. Certain sections of the SPRG may apply specifically to a particular Program, and Service Provider is responsible for following the guidelines of the SPRG specific to that Program, in addition to following its general guidelines. Notwithstanding any other provision herein to the contrary, any revisions made to the SPRG will be deemed effective immediately upon The Home Depot's posting of such revisions on The Home Depot Website.  Service Provider is responsible for checking The Home Depot's Website to note any changes made.

4     **General Obligations of Service Provider.**
4.1   Facilities and Conditions. Service Provider will act at all times with the safety of The Home Depot's Customers and Service Provider Personnel foremost in mind and will follow all applicable safety guidelines conforming to (i) those required or recommended by federal, state, and local governmental or quasi-governmental authorities with jurisdiction over the activities of Service Provider under this SPA, including, all applicable guidelines and regulations issued by the federal Occupational Safety and Health Administration; and (ii) the requirements of this SPA.  All waste that is generated by the Services or residual chemicals that are otherwise used by Service Provider must be properly managed, stored, transported, and dispersed of in accordance with applicable local, state, and federal laws, rules, and regulations.

4.2   Liens; Security Interests. To the extent permissible under applicable law, Service Provider will not place a lien on, or take any other security interest in, The Home Depot's property or any property of a Customer.

4.3   Tariffs. The Parties agree that no tariffs, either those that may be maintained by Service Provider or by any carrier working on behalf of Service Provider, will apply to any transportation services provided under this SPA, except as may be specifically agreed to or acknowledged by The Home Depot in writing. To the extent of any inconsistency between said tariffs and the terms of the SPA, the applicable terms of this SPA will apply. The terms of the SPA will also apply over the terms of any bills of lading or any other shipping documents that may be issued by Service Provider to The Home Depot in connection with its transportation service.

4.4   Permits. Service Provider must follow all legal requirements and obtain all required building and construction permits and inspections necessary to perform the Services.  Service Provider will not request or require

2

## THE HOME DEPOT SERVICE PROVIDER AGREEMENT

### GENERAL TERMS AND CONDITIONS

Customers to obtain permits unless permissible under applicable law and requested to do so in writing by The Home Depot. Service Provider will maintain auditable records documenting its compliance with the requirements of this Section 4.4.

4.5   Taxes. Service Provider is solely responsible for all taxes related to the Services and fulfillment of its obligations to The Home Depot under this SPA. Service Provider will pay, accrue and remit all sales, use, ad valorem, franchise, income, license, occupation, and any other taxes or imposts of every nature or description whatsoever, presently or hereinafter imposed by applicable law upon the operation of Service Provider's business in relation to its fulfillment of its obligations to The Home Depot. Service Provider will file all reports, make all returns and secure all licenses and permits with respect to such taxes or imposts. [The Home Depot will issue a resale certificate to Service Provider only if Service Provider is authorized to request such a certificate under applicable law.] Additionally, the products or materials purchased under this SPA by Service Provider from The Home Depot for services by Service Provider do not qualify under applicable law as a real property improvement or are otherwise taxable to the property owner under applicable law. The Home Depot will collect all retail sales taxes from Customers and will remit such taxes to, and file all required reports with, the appropriate governmental authorities.

4.6   Property Losses. Service Provider is solely responsible for the care of, and for all losses that may occur with respect to any physical damage to the Customer's service location and/or merchandise, monies, funds, negotiable instruments (for example, checks), valuables or other property of The Home Depot or any Customer while in the custody or control of or while Service Provider or any Service Provider Personnel are present. Any property removed or replaced belonging to the Customer will not be carried away by the Service Provider unless such removal is provided for in the Customer Contract or requested in writing by the Customer.

4.7   Equipment. Service Provider will, at its own expense, provide all transportation capacity and provide and maintain all equipment, supplies, tools, uniforms, up-to-date maps and directional aids, and other resources (collectively, "**Equipment**"), necessary to fulfill its obligations under this SPA. Service Provider will keep Equipment in good repair and safe operating condition, maintain Equipment according to the manufacturers' recommendations, and only use Equipment fit for its intended purpose. Service Provider's vehicular Equipment will be maintained consistent with the requirements of the Federal Motor Carrier Safety Regulations ("**FMCSR**") at all times. Service Provider will comply with any additional vehicular specifications as provided in the SPRG.

4.8   Non-Solicitation. Service Provider will not use Confidential Information (defined in Section 8.1), information about Customers obtained as a result of Service Provider's activities under this SPA, or any other information obtained as a consequence of Service Provider's fulfillment of its obligations under this SPA, for the purpose of soliciting, directly or indirectly, any business from a Customer or prospective Customer. Service Provider will not use such information for the purpose of providing products or services that are the same as, similar to, or competitive with, Services or other products and services that are sold or provided by The Home Depot. Service Provider acknowledges and agrees that the restrictions contained in this Section 4.8 are fair, reasonable, and necessary to protect The Home Depot's legitimate business interests. The non-solicitation restrictions set forth in this Section 4.8 will survive for three (3) years upon termination or expiration of this SPA, provided that protections applicable to The Home Depot's Confidential Information will continue for as long as permitted by applicable law.

4.9   Promotions. The Home Depot may desire and hereby reserves the right to implement storewide or targeted promotions or purchase incentives applicable to Services or certain Programs. Such promotions may apply nationally, regionally, or only with respect to certain The Home Depot stores. If such promotions affect the business of Service Provider, The Home Depot and Service Provider will engage in good faith discussions about the Parties respective responsibilities and any adjustments that may be appropriate for the pricing of services or compensation due Service Provider. Such arrangement regarding the implementation of a promotion shall be agreed to by the Parties and reduced to a properly executed writing.

4.10  Service Warranties. The Home Depot will warrant to the Customer the workmanship of the Services pursuant to a Customer Contract. Service Provider will warrant its workmanship to The Home Depot in accordance with this Section 4.10. If Service Provider breaches its warranty, the Service Provider will indemnify The Home Depot in accordance with Section 10. Service Provider hereby warrants the workmanship of each Installation to The Home Depot for the longer of: (i) one (1) year from the date of the installation completion and signed Customer Approval and installer signed Lien Waiver (as defined below), whichever is later; (ii) the applicable period specified in the Customer Contract or any warranty supplemental to such Customer Contract; or (iii) such period as may be required under applicable law. These warranties

3

## THE HOME DEPOT SERVICE PROVIDER AGREEMENT

### GENERAL TERMS AND CONDITIONS

are in addition to any other warranties provided by Service Provider or required by applicable law or this SPA.

**5       Payment and Chargebacks.**

5.1     Submission for Payment. Payment processing will begin upon the completion of an installation pursuant to a Purchase Order. Unless other terms are established in other sections of the SPA for the specific Program, Service Provider must submit to The Home Depot a signed Customer Approval and a signed lien waiver form (**"Lien Waiver"**) as a condition of payment processing. The payment procedures and adjustments are described in further detail in the SPRG.

5.2     Payment. Within ninety (90) days of The Home Depot's receipt of both the signed Customer Approval and signed Lien Waiver, The Home Depot will process and make payment to the Service Provider of any undisputed charges.

5.3     Cost Adjustments An undisputed error in the payment made to Service Provider will be corrected as follows: (i)        if the cost adjustment results in a credit to the Service Provider, the amount will be included in the next scheduled payment cycle; or (ii) if the cost adjustment results in a debit to the Service Provider, the Service Provider's account will show a balance due and The Home Depot will deduct the amount due from any future payments to the Service Provider.

5.4     Chargeback.  If The Home Depot incurs expenses to satisfy a Customer who is not completely satisfied because of substandard or faulty workmanship of the Service Provider or to repair damages caused by Service Provider and/or if the Service Provider has violated any of the requirements of the SPA that are or may be deemed in the future violations which provide a penalty to be imposed against the Service Provider, such expenses, regardless of the manner incurred, will be deducted as a "chargeback" from payments otherwise due the Service Provider from The Home Depot.  To the extent no further payments are due, The Home Depot will invoice Service Provider for such expenses and Service Provider agrees to pay such invoice within thirty (30) days of the invoice date.  The Home Depot's rights under this Section 5.4 will survive the expiration or termination of this SPA.  Additional information with regard to chargebacks is provided in the SPRG.

**6       Background Investigations.**

6.1     General. Service Provider Personnel must pass background investigations before the provision of any Services.  These investigations will be conducted by a third-party agency or agencies approved or designated by The Home Depot as set forth in the SPRG.  Service Provider will be notified of the results, but will not receive access to or review the report, except to the extent The Home Depot is required under applicable law to allow such access or review or unless the Service Provider is credentialed by the third-party agency.  Later background investigations may be required by The Home Depot.

6.2     Prerequisite to Provision of Services. Until the requirements of this Section 6 are fully satisfied, under no circumstances will Service Provider or its Service Provider Personnel provide any Services, have contact with any Customers, or have access to Confidential Information, including Customer Information.

6.3     Felony. Discovery of a felony criminal conviction (no matter the date of such conviction) of Service Provider or any significant owner, officer or director thereof, or of any Co-Signer with Service Provider, or of any Service Provider Personnel, will be grounds for immediate termination of this SPA and any Purchase Order issued by The Home Depot.

**7       Service Provider Personnel.**

7.1     No Benefits.  Service Provider acknowledges and agrees that it and its Service Provider Personnel will have no right to the payment of wages or salary from The Home Depot or to participate in any employee benefits plans, arrangements, or distributions by The Home Depot or its affiliated companies. Such employee wages, salary, benefits plans, arrangements, or distributions include, without limitation, those pertaining to, or connected with, any pension, stock, bonus or similar benefits for The Home Depot employees.  Service Provider will provide a signed benefits waiver for each of its Service Provider Personnel upon The Home Depot's request.

7.2     Tax and Reporting Requirements. Service Provider is exclusively liable for all tax withholding, deposit, and reporting requirements under federal or state income, social security, FICA, old age benefit, Medicare, unemployment insurance, or workers' compensation acts with respect to services provided by its Service Provider Personnel. Service Provider represents and warrants that it will comply, at its expense, with the Fair Labor Standards Act, all worker's compensation, benefits, employment laws and all other laws applicable to it. The Home Depot has the right to audit such records upon request.

4

# THE HOME DEPOT SERVICE PROVIDER AGREEMENT

## GENERAL TERMS AND CONDITIONS

7.3  Compliance with the Immigration Reform and Control Act. Service Provider is solely responsible for ensuring that all of its Service Provider Personnel are in compliance with the Immigration Reform and Control Act of 1986 ("IRCA") and will perform employment eligibility verifications and maintain I-9 forms for Service Provider Personnel. Service Provider will comply fully with the record-keeping requirements of IRCA, and certify its compliance to The Home Depot upon request. Service Provider will only use workers for whom it has confirmed legal eligibility to perform services as employees in the United States and for whom all required record keeping under IRCA has been performed and maintained.

7.4  No Sponsorship. The Home Depot is not responsible for sponsorship of, and will not sponsor, any workers used in fulfillment of Service Provider's obligations under this SPA.

7.5  Reimbursement. If, for any reason, The Home Depot is required by law or regulation or the action of any governmental authority, to pay any sum of money by way of levy, tax, interest, penalty, or otherwise, to Service Provider Personnel, Service Provider authorizes The Home Depot to deduct such amount from any sums then due or that thereafter become due Service Provider from The Home Depot. To the extent no further payments are due Service Provider, The Home Depot will invoice Service Provider for such reimbursement and Service Provider agrees to pay such invoice within thirty (30) days of the invoice date. This obligation and The Home Depot's rights hereunder will survive the expiration or termination of this SPA.

7.6  Labor Disputes. Service Provider agrees to immediately notify The Home Depot in writing of any threatened, impending, or actual labor dispute involving Service Provider or Service Provider Personnel.

7.7  Compliance with this SPA. Service Provider will ensure that Service Provider Personnel comply with the terms of this SPA, and any breach of any term of this SPA by Service Provider Personnel is a breach by Service Provider for liability, indemnification and other purposes.

8  **Confidentiality; Publicity; Ownership of Works.**

8.1  Confidential Information. Service Provider acknowledges that performance under this SPA will give Service Provider and Service Provider Personnel access to confidential, proprietary, and trade secret information of The Home Depot and Customer information (collectively "**Confidential Information**"). Service Provider agrees that it will maintain all Confidential Information in strict confidence and not disclose or use Confidential Information other than as necessary to fulfill its obligations to The Home Depot. Service Provider will inform its Service Provider Personnel about the confidential and proprietary nature of the Confidential Information to which they may be exposed and will ensure that Service Provider Personnel keep Confidential Information strictly confidential and comply with all terms of this Section 8. "Confidential Information" means information disclosed to, made available to or obtained by Service Provider in connection with this Agreement, and all material and reports prepared for The Home Depot hereunder, including all information (whether or not specifically labeled or identified as confidential), in any form or medium, that is disclosed to or learned by Service Provider in the performance of Services related to this SPA and that relates to the business, products, services, research or development of The Home Depot or its service providers, suppliers, distributors, agents, representatives or Customers. Specifically, but not limiting the generality of the foregoing, Confidential Information further includes the following:

(a)  internal business information (including information relating to strategic and staffing plans and practices, marketing, promotional sales plans, practices and programs, training practices and programs, costs, rate and pricing structures and accounting and business methods);

(b)  identities of, individual requirements of, specific contractual arrangements with, and information about, The Home Depot's service providers, suppliers, distributors and Customers and their confidential, proprietary or personal information;

(c)  compilations of data and analyses, processes, methods, techniques, systems, formulae, research, records, reports, Customer lists, manuals, documentation, models, data and data bases relating thereto;

(d)  computer software and technology (including operating systems, application software, interfaces, utilities, modifications, macros and their overall organization and interaction), program listing, documentation, data and data bases, and any user IDs and passwords The Home Depot provides Service Provider for access to The Home Depot's internal systems; and

(e)  trade secrets, trade dress, ideas, inventions, designs, developments, devices, methods, processes and systems (whether or not patentable or copyrighted and whether or not reduced to practice or fixed in a tangible medium).

5

## THE HOME DEPOT SERVICE PROVIDER AGREEMENT

### GENERAL TERMS AND CONDITIONS

8.2   Required Disclosures. If Service Provider receives a subpoena or other validly issued administrative or judicial process demanding information about this SPA and/or Confidential Information, Service Provider must promptly notify and tender the defense of that demand to The Home Depot. Unless it has been timely limited, quashed or extended, Service Provider will thereafter be entitled to comply with such demand to the extent required by law. If requested, Service Provider will cooperate in the defense of such demand.

8.3   Publicity. Service Provider will not issue any press release or other statement, or otherwise disclose (in whole or in part) the contents or substance of this SPA or the Parties' activities under this SPA without first obtaining the express prior written consent of The Home Depot. Any such consent must be requested at least thirty (30) calendar days before the intended date of the release or communication. Service Provider will immediately inform The Home Depot if it believes that the issuance of any press or other media release is required by operation of applicable law.

8.4   Ownership of Works. Except as otherwise agreed by the Parties in writing, The Home Depot or its assignee own and have all right, title and interest in all ideas, concepts, plans, processes (including, without limitation, sales and marketing processes) creations, trademarks, logos, intellectual property, displays (whether such displays are used on an in-store or in-home basis) or other work product (collectively, the "**Works**") produced by The Home Depot, produced at The Home Depot's request, or produced by Service Provider or any Service Provider Personnel for The Home Depot in furtherance of the Parties' obligations under this SPA. Service Provider will cooperate fully with The Home Depot and execute documentation as The Home Depot may request in order to establish, secure, maintain, or protect The Home Depot's rights with respect to the Works.

9     **Representations and Warranties.**
9.1   Mutual Representations and Warranties. Each Party represents and warrants that, as of the Effective Date:

(a)   It is a corporation duly incorporated (or is any other form of legally recognized entity), validly existing and in good standing under the laws of the jurisdiction in which it is incorporated or otherwise formed, and is duly qualified and in good standing in each other jurisdiction where the failure to be so qualified and in good standing would have an adverse effect on its ability to perform its obligations under this SPA in accordance with the terms and conditions hereof; and

(b)   each Party has all necessary corporate power to enter into this SPA and to perform its obligations hereunder and the execution, delivery, and performance of this SPA by each Party has been duly authorized by all necessary corporate action on the part of each Party.

9.2   Service Provider Representations and Warranties. Service Provider further represents and warrants to The Home Depot that as of the Effective Date and continuing throughout the Term:

(a)   Service Provider is duly licensed, authorized, and qualified to do business in each jurisdiction in which a license, authorization, or qualification is required for the transaction of business in fulfillment of Service Provider's obligations under this SPA;

(b)   there is no outstanding litigation, arbitration, claim, or other dispute to which Service Provider, [or any Co-Signer] is a party that if decided unfavorably to it, would reasonably be expected to have a material adverse effect on the ability of any Party to fulfill its obligations under this SPA;

(c)   neither Service Provider [nor any Co-Signer] of Service Provider is a party to any contract, agreement, mortgage, note, deed, lease or similar understanding with any third party that would have an adverse effect on the ability of Service Provider to fulfill its obligations under this SPA;

(d)   to Service Provider's knowledge, no non-public fact or circumstance exists that would have, or potentially could result in, an adverse effect on Service Provider's or The Home Depot's public image or the public's perception of any of Service Provider's or The Home Depot's brands or marks that may be used under this SPA;

(e)   Service Provider will properly render the Services in accordance with this SPA and any Purchase Order and will execute each in accordance with the practices and commercially reasonable standards used in well-managed operations performing services similar to the Services, with an adequate number of qualified individuals with suitable training, experience and skill to perform the Services;

(f)   Service Provider will maintain insurance coverages in amounts and as required in this SPA and the SPRG;

6

THE HOME DEPOT SERVICE PROVIDER AGREEMENT

GENERAL TERMS AND CONDITIONS

(g)    Service Provider will perform its obligations in a manner that complies with all laws applicable to Service Provider and its business, activities, facilities and the provision of Services hereunder, including laws of any country or jurisdiction from which or through which Service Provider provides the Services or obtains resources or personnel to do so.

**10    Indemnification.**

10.1    <u>Mutual Indemnification</u>. The Home Depot and Service Provider and its affiliates, will indemnify, defend, and hold one another and their respective owners, officers, shareholders, partners, members, parent, affiliates, subsidiaries, associates, directors, employees, subcontractors and agents harmless from and against, any third-party losses, liabilities, claims, causes of action, lawsuits, judgments, civil penalties, damages and expenses suffered, incurred, or sustained by the indemnified Party or any of its owners, officers, shareholders, partners, members, parent, affiliates, subsidiaries, associates, directors, employees, subcontractors and agents to the extent resulting from, arising out of, or relating to, any claim that:

(a)    the indemnifying Party or any owner, officer, shareholder, parent, affiliate, subsidiary, associate, director, employee, subcontractor and agent thereof is non-compliant with any applicable law or regulations, or;

(b)    a Party's intellectual property infringes upon the proprietary or other rights of any third party.

10.2    <u>Service Provider Indemnification</u>. Service Provider will further indemnify defend and hold harmless The Home Depot and its owners, officers, shareholders, affiliates, subsidiaries, associates, directors, employees, subcontractors and agents from and against, any losses, liabilities, claims, causes of action, lawsuits, judgments, civil penalties, damages and expenses suffered, incurred, or sustained by The Home Depot or its owners, officers, shareholders, affiliates, subsidiaries, associates, directors, employees, subcontractors and agents, to the extent resulting from, arising out of, or relating to the following acts or failure to act of Service Provider or Service Provider Personnel:

(a)    any Services and/or work performed and/or products supplied by Service Provider and/or Service Provider Personnel;

(b)    the inaccuracy, untruthfulness or breach of any representation, covenant, warranty, or any other agreement set forth in this SPA;

(c)    actual or alleged personal injury (including death);

(d)    actual or alleged property loss or damage;

(e)    the marketing or sale of any products, materials or services under this SPA to any Customer; or

(f)    compensation or benefits of any kind, including base wages, bonuses, health and welfare benefits (by agreement, plan, statute or otherwise), pension benefits, or severance or termination pay, by or on behalf of Service Provider or any owner, officer, shareholder, partner, member, parent or Service Provider Personnel, claiming an employment or other relationship with Service Provider and/or The Home Depot.

10.3    <u>The Home Depot's Right to Assume Defense</u>. Notwithstanding anything else provided herein, and without limiting Service Provider's obligation to fully indemnify The Home Depot under this SPA, and with respect to any claims for which The Home Depot is entitled to indemnification from Service Provider hereunder, The Home Depot reserves the absolute right to assume the defense of any claim and The Home Depot may thereafter require from Service Provider reimbursement of any and all costs and expenses (including reasonable attorneys' fees).

10.4    <u>Defense of Claims</u>. Subject to Section 10.3 above, the indemnified Party shall cooperate in the defense of any claim for which indemnification is sought under this Section 10. The indemnifying Party agrees to do the following in connection with the conduct of the defense of any claim in which the indemnified Party has been named a party:

(a)    inform the indemnified Party or its agents about all material information pertaining to a claim;

(b)    inform the indemnified Party of the date of any mediation, arbitration, trial, or settlement conference as soon as possible after it receives such information;

(c)    choose defense counsel that is reasonably satisfactory to the indemnified Party;

7

### THE HOME DEPOT SERVICE PROVIDER AGREEMENT

### GENERAL TERMS AND CONDITIONS

    (d)    use all reasonable efforts to promptly provide indemnified Party with copies of all discovery requests as soon as they are available to indemnifying Party;

    (e)    provide the indemnified Party with copies of all defensive pleadings in advance of filing to allow the indemnified Party the opportunity to provide comments; and

    (f)    inform the indemnified Party of the outcome of any mediation, arbitration, motion, trial, or settlement or any other matter from which appeal rights could arise.

10.5    No Settlement Without Consent. The indemnifying Party will not enter into any settlement or compromise of the claim that would result in the admission of any liability, create any financial liability, or that would subject the indemnified Party to injunctive relief or otherwise bind, restrict or commit the Indemnified Party without first obtaining the indemnified Party's prior written consent.

10.6    Participating in the Defense. The Home Depot has the right, but not the obligation, to participate, as it deems necessary, in the handling, adjustment, or defense of any claim. If The Home Depot reasonably determines that defenses are available to it that are not available to Service Provider, and if raising such defenses would create a conflict of interest for the counsel defending the claim, The Home Depot will be entitled to retain separate counsel, at Service Provider's expense, to raise such defenses.

10.7    Assumption of Defense. Should the indemnifying Party fail to assume its obligations, including its obligation to diligently pursue and pay for the defense of the indemnified Party under this Section 10, the indemnifying Party agrees that the indemnified Party will have the right, but not the obligation, to proceed on its own behalf to so defend itself. The indemnified Party may require from the indemnifying Party reimbursement of any and all costs and expenses (including reasonable attorneys' fees) and any amounts paid by the indemnified Party on behalf of the indemnifying Party.

10.8    Indemnification in Addition to Insurance. Service Provider's agreement to indemnify, defend and hold harmless The Home Depot under the terms of this Section 10 is in addition to Service Provider's agreement to procure insurance as required under this SPA. Any losses, damages and expenses incurred by The Home Depot will be covered, to the extent permissible by Service Provider's insurer. Service Provider's insurance coverage does not in any way limit Service Provider's obligation to indemnify, defend and hold harmless The Home Depot.

10.9    Other Indemnification Obligations. The foregoing obligations are in addition to any other indemnification obligations that may be set forth elsewhere in this SPA or in any attachment to this SPA or which may arise by operation of law.

**11**    **Insurance; Risk of Loss.**

11.1    Licensing and Insuring of Employees. Service Provider will ensure that Service Provider Personnel performing work under this SPA are fully licensed as required by law with respect to all activities undertaken in fulfillment of Service Provider's obligations under this SPA and insured consistent with The Home Depot's requirements as provided in the SPRG.

11.2    Insurance Certificates. All insurance certificates must list "Home Depot U.S.A., Inc." as the certificate holder. Additionally, all insurance certificates, except for the Workers' Compensation Certificate of Insurance, must contain the following language exactly as provided: "Home Depot U.S.A., Inc., its parents, affiliates, and subsidiaries are added as additional insureds."

11.3    Risk of Loss. As of the Effective Date and continuing throughout the Term, each Party will be responsible for risk of physical or actual loss of, and damage to, any property, equipment, merchandise or any other items or information in its possession or under its control.

11.4    Insurance Coverage. Service Provider will procure and maintain at all times Commercial General Liability, Auto Liability and Workers' Compensation Insurance with coverage amounts on an occurrence basis containing limits of no less than the amounts specified for the Services on the Insurance Requirements described in the SPRG. This insurance will not include any exceptions and/or exclusions that limit or minimize the coverages for the Services.

11.5    Insurance Proceeds. For the avoidance of doubt, insurance proceeds received or owed to Service Provider for any Services provided under this SPA, will be paid or assigned, as necessary, to The Home Depot to cover any costs or fees incurred by The Home Depot as a result of the circumstances leading to the payment of any such insurance proceeds.

**12**    **Limitations of Liability.**

8

## THE HOME DEPOT SERVICE PROVIDER AGREEMENT

### GENERAL TERMS AND CONDITIONS

12.1 LIABILITY FOR ACTUAL DAMAGES ONLY. EXCEPT IN CONNECTION WITH SERVICE PROVIDER'S BREACH OF CONFIDENTIALITY, FRAUD, GROSS NEGLIGENCE, WILLFUL MISCONDUCT OR INDEMNIFICATION OBLIGATIONS TO THE HOME DEPOT FOR INTELLECTUAL PROPERTY INFRINGEMENT CLAIMS, NO PARTY WILL BE LIABLE TO ANOTHER PARTY FOR, NOR WILL THE MEASURE OF DAMAGES INCLUDE, ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, EXEMPLARY, PUNITIVE, OR SPECIAL DAMAGES ARISING OUT OF OR RELATING TO ITS ACTS OR OMISSIONS UNDER THIS SPA, REGARDLESS OF THE FORM OF ACTION, WHETHER IN CONTRACT, NEGLIGENCE, TORT, STRICT LIABILITY, PRODUCTS LIABILITY OR OTHERWISE, AND EVEN IF FORESEEABLE OR IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. A PARTY WILL ONLY BE LIABLE TO THE OTHER PARTY FOR DAMAGES ACTUALLY INCURRED BY A BREACHING PARTY.

12.2 THE HOME DEPOT'S MAXIMUM LIABILITY. THE HOME DEPOT'S MAXIMUM LIABILITY TO SERVICE PROVIDER UNDER THIS SPA (REGARDLESS OF CAUSE OR FORM OF ACTION, WHETHER IN CONTRACT, TORT, OR OTHERWISE) WILL BE LIMITED TO THE TOTAL UNDISPUTED AMOUNT OWED SERVICE PROVIDER BY THE HOME DEPOT IN PAYMENT FOR SERVICE PROVIDER'S FULFILLMENT OF ITS OBLIGATIONS UNDER THIS SPA.

12.3 CLAIMS ONLY AGAINST THE HOME DEPOT. SERVICE PROVIDER AGREES THAT ITS SOLE RECOURSE FOR CLAIMS ARISING BETWEEN OR AMONG THE PARTIES WILL BE AGAINST THE HOME DEPOT OR THE HOME DEPOT'S SUCCESSORS AND ASSIGNS. IN NO EVENT WILL THE SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS OF THE HOME DEPOT AND ITS AFFILIATES BE PERSONALLY LIABLE OR BE NAMED AS PARTIES IN ANY ACTION BETWEEN OR AMONG THE PARTIES.

12.4 Third-Party Liabilities. Nothing in this Section 12 will be construed to limit a Party's right to recover any damages that such Party is obligated to pay to any third party. Nor will anything in this Section 12 preclude any remedies available to a Party in the case of fraud by the other Party provided such fraud has been established by the finding (even if appealable) of a court of competent jurisdiction.

12.5 Mutual Understanding. Service Provider and The Home Depot agree that the allocation of liability set forth in this Section 12 represents the mutually agreed upon and bargained-for understanding of the Parties and further agree that the compensation exchanged by the Parties under this SPA reflects such allocation.

**13    Events of Default.** The occurrence of any of the following will be deemed an "Event of Default".

13.1 Compliance. The failure of Service Provider to: (i) comply with any term or condition of this SPA, (ii) to make payment or reimbursement of funds owed The Home Depot, (iii) cease conduct that The Home Depot reasonably deems harmful to its general business interests or public images, even if unrelated to Service Provider's obligations under the SPA, or (iv) complete an Assignment, which failure continues in effect or has otherwise not been remedied to The Home Depot's satisfaction within thirty (30) calendar days of The Home Depot's written notice thereof to Service Provider.

13.2 Corrections. The failure to (i) correct rejected, defective or nonconforming workmanship, or (ii) repair or replace defective or nonconforming products or materials sourced, furnish, manufactured or fabricated by Service Provider within a commercially reasonable time, of thirty (30) calendar days or less, unless The Home Depot provides a written extension of time.

13.3 Payment to Others. The failure of Service Provider to timely pay any Service Provider Personnel which failure results, or could result, in the placement of a lien, writ of execution or attachment, or other claim or security interest on or against any property of The Home Depot or any property of any The Home Depot Customer.

13.4 Liens. The failure of Service Provider to satisfy, discharge, or release any lien, writ of execution or attachment, or other claim or security interest against the property of The Home Depot or a Customer filed in connection with the Services within ten (10) business days of the date that Service Provider was first made aware of such security interest.

13.5 Creditors and Bankruptcy. (i) The making by Service Provider of an assignment for the benefit of creditors (ii) the institution of a judicial proceeding for the reorganization, liquidation, or involuntary dissolution of Service Provider or for its adjudication as bankrupt or insolvent, (iii) the appointment of a receiver, trustee, or liquidator of or for the property of Service Provider whereupon the receiver, trustee, or liquidator is not removed within thirty (30) calendar days of The Home Depot's written request, or (iv) the taking advantage

9

THE HOME DEPOT SERVICE PROVIDER AGREEMENT

GENERAL TERMS AND CONDITIONS

by Service Provider of any debtor relief proceedings, whereby the liabilities or obligations of Service Provider are, or are proposed to be, reduced, or payment thereof deferred.

**14    Remedies for Breach or Events of Default.**

14.1    Opportunity to Cure. If Service Provider breaches any obligation under this SPA, or upon an Event of Default, The Home Depot will provide written notice of the breach or Event of Default and an opportunity to cure. Unless a different period is specified in the written notice, Service Provider must cure the breach within thirty (30) calendar days of the date of the written notice. If Service Provider fails to cure within the applicable period, The Home Depot may exercise any or more of the following remedies without any liability to Service Provider:

(a)    reject, in whole or in part, Service Provider's submission for payment with respect to an Assignment under this SPA or, as the case may be, nullify, in whole or in part, a previously approved submission for payment;

(b)    withhold from any sums due or that thereafter become due Service Provider the amount deemed necessary by The Home Depot to protect The Home Depot from actual or reasonably foreseeable direct damages resulting from the breach or Event of Default;

(c)    remove Service Provider from any or all Markets until Service Provider is no longer in breach of this SPA, or the Event of Default is ended;

(d)    retain a third party to cure the breach or end the Event of Default, at Service Provider's sole expense which expense The Home Depot may offset against any sums due or that thereafter become due Service Provider; or

(e)    terminate this SPA immediately upon written notice to Service Provider.

14.2    Cure of Remedies. Service Provider's cure of any breach or Event of Default under this SPA must be done in a manner satisfactory to both The Home Depot and the impacted Customer(s).

**15    Termination.**

15.1    Breach or Default. This Agreement may be terminated for cause (i.e., for breach or for the occurrence of an Event of Default) by The Home Depot immediately upon expiration of the applicable cure period. If Service Provider commits the same or a substantially similar breach of this SPA, or if there is an occurrence of the same or a substantially similar Event of Default within six (6) months following the date that The Home Depot became aware of the previous breach or Event of Default, The Home Depot will have the right to immediately terminate this SPA. This right will not be waived if The Home Depot permits the Service Provider to cure such subsequent breach or Event of Default within a reasonable amount of time.

15.2    Convenience. Unless otherwise agreed to by the Parties in writing and subject to Sections 15.3 and 15.4 below, any Party may terminate this SPA for any reason at any time for convenience by giving not less than ninety (90) calendar days written notice to the other Party.

15.3    Service Provider's Obligations upon Termination. Upon termination or expiration of this SPA, Service Provider must:

(a)    timely complete all Assignments;

(b)    pay to The Home Depot all sums then due within thirty (30) calendar days after termination;

(c)    pay to The Home Depot any sum that becomes due after termination within thirty (30) calendar days after the date it accrues;

(d)    return any and all property, including any Confidential Information, of The Home Depot and/or Customers Information   in Service Provider's possession or control within thirty (30) calendar days after termination;

(e)    stop representing that Service Provider is or at any time was in a business relationship with The Home Depot, except as necessary to fulfill any surviving obligations under this SPA; and

(f)    timely satisfy all obligations under this SPA still in effect.

15.4    The Home Depot's Obligations upon Termination. Upon termination of this SPA for any reason, The Home Depot must:

(a)    pay all undisputed sums due Service Provider;

(b)    pay all undisputed sums that become due after termination;

10

THE HOME DEPOT SERVICE PROVIDER AGREEMENT

GENERAL TERMS AND CONDITIONS

(c)  return to Service Provider any and all property of Service Provider in The Home Depot's possession or control within thirty (30) calendar days after termination; and

(d)  satisfy any obligations remaining under this SPA.

15.5  Retainage. The Home Depot may withhold any payments due Service Provider for ninety (90) calendar days after termination to offset any amounts which are due or may become due from Service Provider to The Home Depot.

16  **Dispute Resolution.**

16.1  Choice of Law. The laws of the State of Georgia  govern and control this SPA, and any disputes arising out of or relating to it.

16.2  Non-Binding Mediation. All disputes by Service Provider shall first be referred to The Home Depot Service Director and/or Installation Merchant and the Parties shall use good faith efforts to resolve such dispute. Before commencing legal or equitable action under Section 15.3 of this SPA, a Party must first request non-binding mediation of any dispute arising out of, or relating to, this SPA.  The Parties will have ten (10) calendar days in which to mutually agree upon a professional mediator. The mediation will, unless otherwise agreed in writing by the Parties, be held in Atlanta, Georgia, and will be conducted over a period of time not to exceed three (3) business days over a ten (10) business day period.  The Parties will share equally the costs of any such mediation.  If the Party that receives the request for mediation is not agreeable to pursuing mediation as a means of resolving the dispute, or if the Parties cannot agree upon a professional mediator, or if mediation fails to result in a resolution of the dispute then any Party may elect to proceed with further legal or equitable action under Section 16.3 of this SPA unless The Home Depot elects binding arbitration under Section 16.4 of this SPA. Notwithstanding the foregoing, either party at any time may seek specific performance or injunctive relief if monetary damages or the ordinary forms of redress at law or as provided under this SPA would be inadequate.

16.3  Legal or Equitable Actions. If The Home Depot does not request binding arbitration under Section 16.4 or if mediation is unsuccessful, legal or equitable actions arising out of, or relating to, this SPA or the breach thereof must be exclusively brought in either the Superior Court of Cobb County, Georgia, or the United States District Court for the Northern District of Georgia, Atlanta Division.

16.4  Binding Arbitration. Regardless of any other provision in this SPA, all claims, disputes, or other matters in question between Service Provider and The Home Depot arising out of, or relating to, this SPA or the breach of it must be decided by binding arbitration if requested by The Home Depot. This arbitration will be conducted in Atlanta, Georgia, in accordance with the **Construction Industry Arbitration Rules of the American Arbitration Association**.  The Home Depot will provide a demand for arbitration in writing to Service Provider with a copy to the Atlanta, Georgia office of the American Arbitration Association. The award rendered by the arbitrator(s) is final, and judgment may be entered upon it in accordance with applicable law in any court of competent jurisdiction. Unless the arbitrator decides otherwise, the Parties will share equally the costs of any such arbitration. To preserve Home Depot's right to require arbitration, Service Provider must provide The Home Depot with not less than ten (10) business days' advance written notice before it commences any legal or equitable action.

16.5  Attorneys' Fees. If The Home Depot prevails in any legal or equitable action brought under Sections 16.3 and/or 16.4, Service Provider must reimburse The Home Depot's reasonable attorneys' fees. The Home Depot is not obligated to pay Service Provider's attorneys' fees except to the extent required by law.

17  **Miscellaneous.**

17.1  Assignment; Change of Ownership or Control. Service Provider may not assign, transfer, pledge, sublicense, or encumber this SPA or any interest under this SPA, without The Home Depot's prior written consent. Any assignment by Service Provider without the prior written consent of The Home Depot will be null and void. The Home Depot may assign or transfer this SPA to a parent, subsidiary, or affiliate of The Home Depot upon ten (10) business days notice to Service Provider. Any permitted assignment will be binding upon, and inure to, the benefit of the Parties and their permitted successors and assigns.

17.2  Expenses. All costs and expenses (including the fees and disbursement of legal counsel) incurred in connection with this SPA, and the performance of the transactions and obligations contemplated hereby, will be borne by the Party incurring such expenses.

17.3  Waiver. No provision of this SPA may be waived unless in writing, signed by the waiving Party. The failure of a Party to exercise any of its rights, remedies, or options under this SPA, or the failure of a Party to insist

11

## THE HOME DEPOT SERVICE PROVIDER AGREEMENT

### GENERAL TERMS AND CONDITIONS

upon another Party's compliance with any provision of this SPA, will not constitute a waiver of any Party's right to demand compliance. No action or course of dealing of the Parties at variance with the terms and conditions of this SPA will constitute any waiver of a Party's right to demand exact compliance with the terms of this SPA. A waiver by The Home Depot with respect to any specific breach of this SPA or Event of Default by Service Provider does not impair any of The Home Depot's rights with respect to any later breach or Event of Default.

17.4   Amendments. This SPA may only be amended, modified, or supplemented if Attachment 3 is executed by all Parties. Any Purchase Orders issued may only be amended in accordance with Section 1.2.

17.5   Penalties. Service Provider acknowledges that The Home Depot may enforce and pay any penalties charged or assessed against Service Provider by any licensing board or any other governmental or quasi-governmental agency in connection with the Services provided by Service Provider. The Home Depot may withhold payments owed or issue a chargeback to Service Provider to collect reimbursement.

17.6   Further Assurances. Each Party will provide such further documents or instruments required by the other Party as may be reasonably necessary, appropriate or desirable to give effect to this SPA and to carry out its provisions.

17.7   Severability. The invalidity or unenforceability of any provision of this SPA does not impair the validity or enforceability of any other provision. The headings contained are for reference purposes only and do not affect in any way the meaning or interpretation of this SPA.

17.8   Books and Records; Audits. Service Provider must maintain its books and records in accordance with commercially reasonable business standards. The Home Depot or its designated agent(s) may during the term and for a period of three (3) years following the termination or expiration of this SPA, audit during normal business hours and upon not less than five (5) business days' advance written notice to Service Provider, all books and records of Service Provider that are of direct relevance to Service Provider's fulfillment of its obligations under this SPA. Service Provider's authorized representative(s) or designated agent(s) may be present during such audit.

17.9   Cumulative Remedies. Except as otherwise expressly limited or provided herein, all rights, privileges, and remedies conferred under this SPA upon the Parties will be cumulative and are in addition to any rights, powers, privileges, and remedies available to the Parties by statute or otherwise at law or in equity.

17.10  Notices. Any notices or other communication required to be in writing under this SPA must be either (1) personally delivered; (2) sent by certified mail, postage prepaid or (3) delivered by overnight courier, to the addresses of the other Party set forth on the Face Page of this SPA. Notices are deemed to be served and given upon receipt.

17.11  Survival. Upon termination of this SPA, all provisions continue in effect as to disputed matters until fully resolved, as well as all provisions that survive termination of this SPA, including, without limitation, Service Provider's various warranty obligations under this SPA, and **Sections 3.2, 4.1, 4.2, 4.4, 4.5, 4.6, 4.8, 5, 7.5, 7.7, 8, 9, 10, 11.5, 12, 14.1(d), 15.3, 15.5, 16, 17.5, 17.8, 17.9 and 17.10.**

17.12  Force Majeure. No Party will be in breach of this SPA if performance of its obligations or attempts to cure any breach or end an Event of Default are delayed or prevented by reason of any act of nature, fire, natural disaster, failure of electrical power systems, or any other act or condition beyond the reasonable control of the Party affected ("**Event of Force Majeure**"), provided that the affected Party makes commercially reasonable efforts to avoid or eliminate the causes of its nonperformance and continues performance immediately after such causes are eliminated. Notwithstanding this Section 17.12, any delay that exceeds sixty (60) calendar days will entitle the Party whose performance is not affected by the relevant Event of Force Majeure to terminate this SPA upon not less than thirty (30) calendar days' advance written notice to the other Party.

17.13  Forms. Service Provider must purchase sufficient quantities of the forms required to fulfill its Services under this SPA and use only original forms and not copies.

17.14  Entire Agreement. This SPA, together with the Face Page, exhibits, annexes, the SPRG and other duly incorporated attachments, constitutes the entire agreement and understanding between the parties. Any previous negotiations, agreements or representations that have been made or relied upon that are not expressly set forth will have no force or effect.

12

The Home Depot Service Provider Agreement – General Terms and Conditions
Revised January 2007

US2000 9472619 6

## THE HOME DEPOT SERVICE PROVIDER AGREEMENT

### GENERAL TERMS AND CONDITIONS

17.15   Counterparts. This SPA may be executed in one or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

17.16   Other Provisions. Except where the context requires otherwise, whenever used, the singular includes the plural, the plural includes the singular, the word "or" means "and/or," and the term "including" or "includes" means "including without limitation," and without limiting the generality of any description preceding that term. When this SPA refers to a number of days, unless otherwise specified as business days, that reference is to calendar days. The headings in this SPA are provided for convenience only and do not affect its meaning. The wording of this SPA shall be deemed wording mutually chosen by the parties and no rule of strict construction shall be applied against either party. Any reference in this SPA to a Section, Annex, Schedule, or Exhibit is to a section, annex, schedule, or exhibit of this SPA.

The Home Depot Service Provider Agreement – General Terms and Conditions
Revised January 2007

US2000 9472619 6