UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL RIVERA,<br><br>                   Plaintiff,<br>-against-<br>HOME DEPOT U.S.A., INC.,<br><br>                   Defendant. | Civil No.: 16cv7552<br><br>**Hon. Katherine B. Forrest**<br><br>**DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT** |
| HOME DEPOT U.S.A., INC.,<br><br>                   Third-Party Plaintiff,<br>-against-<br>BRYAN'S HOME IMPROVEMENT CORP.,<br><br>                   Third-Party Defendant. | |

STEVEN PAYNE, ESQ., an attorney duly licensed to practice before the Courts of the State of New York affirms the following upon information and belief, pursuant to the CPLR and under the penalties of perjury:

1.    I am associated with the law offices of Ginarte Gallardo Gonzalez & Winograd, LLP, attorneys for the Plaintiff DANIEL RIVERA (hereinafter "Mr. Rivera"), as such, I am fully familiar with all of the facts and circumstances of this action from a review of the file maintained by this office.

2.    This affirmation is submitted in in support of Plaintiff's Motion for Partial Summary Judgment pursuant on the issue of liability as to the Defendant, HOME DEPOT U.S.A., INC. (hereinafter "Home Depot") as there are no material issues of fact, that the Defendant is liable as a matter of law under §§ 240(1), and 241(6) of the New York Labor Law.

**Procedural History**

3. Plaintiff commenced this action with the filing of his summons and complaint on September 22, 2016. Defendant Home Depot, Inc. filed its answer on December 23, 2016. Defendant Home Depot, Inc. filed a third party complaint on January 5, 2017 against Bryan's Home Improvement, Inc. Bryan's Home Improvement, Inc. filed its third party answer on March 8, 2017. (The pleadings are attached as Exhibit A). Plaintiff's Response to Home Depot, Inc. request for interrogatories is attached hereto as B.

**Statement of Uncontested Facts**

4. Plaintiff, Daniel Rivera was employed by Bryan Construction. (EBT of Daniel Rivera dated September 27, 2017 attached hereto as Exhibit C at 16: 17-18). He did roofing work. (EBT 16). His boss was Alonzo Lojas. *Id.* Plaintiff's accident occurred on August 22, 2015 at a location in Yonkers. Mr. Rivera and his co-workers were on site to remove the old roofing and place a new one down. (Exhibit C at 18).

5. The day before the accident, Mr. Rivera and his co-workers were stripping the roof. Carlos, his boss, Mr. Lojas's son, placed a ladder on the side of the back enabling Mr. Rivera and his co-workers to strip the roof using a shovel. (Exhibit C at 20-21). Mr. Lojas would drop Mr. River and his co-workers off for the day and then leave to run other errands. Mr. Rivera believed the on-going work was supervised by another man from Home Depot. (Exhibit C at 21). He would speak to Alonzo or his son, Carlos, from Mr. Rivera's company, Bryan Construction. *Id.* at 22.

6. On the day of the accident, Mr. Rivera arrived at the site in Yonkers before 8AM. They began working at 8AM. (Exhibit C at 23). Alonzo instructed Mr. Rivera to use the 42 foot ladder that he placed between the homes to access the area where he was to work. (Exhibit C at

26-28). Alonzo placed the ladder along the metal fence and extended it to the second floor on the left side. (Exhibit C at 29). The bottom part was on the top of stairs going all the way up. (See Photograph marked Defendant's Exhibit D at the deposition of Daniel River taken on September 27, 2017 attached hereto as Exhibit D). The base of the ladder was set in the area designated **X** in the attached photograph. Id. The top of the ladder was placed along the fence on the intermediate level of the house with a flat roof which is marked by an **O** in the photograph. (Exhibit A at 30 and Exhibit D). That area (**O**) was to be used as a staging area to access the roof. It is important to note that the balcony was surrounded by a metal fence. Alonzo had attempted to tie off the top portion of the ladder leaning against the metal fence but it wasn't properly secured. (See Continued EBT Transcript of Daniel Rivera dated September 28, 2017 attached hereto as Exhibit E at 34). The top of the ladder was resting approximately four to five feet over the metal fence of the intermediate staging area. Id.

7. The boss instructed Rivera to commence work at the left side of the home. (Exhibit C at 26-28). Alonzo specifically told Rivera to: ascend the 42' foot ladder ('**Ladder 1**') that he, Alonzo, had placed between the subject home and the adjacent home; and to carry a 12'-16' section of another extension ladder ('**Ladder 2**') up to and place it on the balcony in order to create an access the top-center most portion of the roof. *Id.* Following these directives, Mr. Rivera picked up 'Ladder 2' with his left hand and started climbing 'Ladder 1' towards the balcony. (Exhibit C at 33). As he started to lay 'Ladder 2' over the metal fence surrounding the balcony, "Ladder 1", on which he had been standing suddenly began to "move to the right" which caused him to "fall towards his left side" and over the side railing onto the balcony. (Exhibit C at 26-37, Exhibit E at 28-29). Rivera fell approximately 7 feet as the top of the ladder extended 4-5 feet above the railing. (Exhibit E at 28-29). In the process of falling, Mr. Rivera

reached out with his left hand and grabbed onto 'Ladder 2' which was leaning over the metal side railing and as his body fell into the balcony he felt an electric shock throughout the left side of this body. *Id.*

8. At the time 'Ladder 1' started to move Mr. Rivera's feet were firmly planted on the same rung and he was holding onto this ladder. (Exhibit C at 38). Although Alonzo had tied the top of 'Ladder 1' to the railing, it was not securely fastened and in fact very loose which caused the slippage. (Exhibit E at 33-34). Not only was the ladder inadequately secured at the top, it was not secured at all at its bottom. Id. He was told by Carlos that the electrical shock came from the "Ladder 1" coming into contact with the electrical cable. (Exhibit C at 44). Carlos also stated he saw smoke and heard an explosion. (Exhibit C at 44). Mr. Rivera said that although he had a safety harness, he could not have tied off during the process of moving up the ladder while holding another ladder. (Exhibit E at 32).

### Deposition of Jorge Palacios on behalf of Defendant Home Depot USA, Inc.

9. Jorge Palacios was deposed on behalf of Home Depot USA, Inc. Mr. Palacios was employed by Home Depot as an installation service manager. (See Deposition Transcript of Jorge Palacios attached hereto as Exhibit F at 15). His duties include recruitment of installers and installation revenue. *Id.* Mr. Palacios stated Home Depot performs exterior installations including roofing, gutters, windows, attic insulation, siding and doors. *Id.* at 17. They perform work on both residential and commercial projects. *Id.*

10. Home Depot would generally subcontract the installation of work to other entities. *Id.* at 23. All of the subcontractors retained by Home Depot are licensed contractors with the State of New York. *Id.* Plaintiff's employer, Bryan's Home Improvement was one of the

subcontractors approved by Mr. Palacios in his capacity as an installation service manager. Id. Bryan's Home Improvement was typically hired for roofing, gutters and siding work. *Id.* at 26.

11. Mr. Palacios was the Home Depot installation service manager for residential project located at 58 Cook Avenue, Yonkers, New York. *Id.* at 28. The work at this project was involved removing all roofing layers and installing the ice and water leak barrier, 30 pound felt paper, installing a ridge vent and any other ventilation that the roof required. *Id.* at 30. Their duties also included cleaning up any debris. *Id.* Following the sale, a contract is generated between Home Depot and the owner of the property. *Id.* After the sales agreement was concluded, Mr. Palacios would go out to the job location and begin taking measurements and prepare a hand drawing. *Id.*

12. Home Depot obtained the single permit necessary to begin roofing work on the house. Exhibit D at 35. The roofing materials were delivered this project in Yonkers the same morning work was to commence. *Id.* at 38. When shown the photograph was marked Defendant's Exhibit A, Mr. Palacios recognized it as the home where the accident occurred. *Id.* at 40. Mr. Palacios was familiar with individual employees of Bryan Home Improvement including Alonzo Loja and Fidel Loja. He also remembered a Carlos. *Id.* at 40. Mr. Palacios characterized the property as a three-story home. *Id.* at 43. The roof that was being removed and installed was on the third story of the home. *Id.* Bryan's Home Improvement was removing the old shingles. This would be done by removing the layers of shingle with a roofing shovel. The stripped the roof down to the bare wood removing any loose nails. *Id.* at 43. Once all of the nails are removed then the decking was to be checked for any wood rot. *Id.* at 44. Next, they would prepare for the ridge and prepare an opening for any additional ventilation or for modifications for ventilation. *Id.* at 44. Thereafter, they would start prepping the area with the leak, ice and

water shield. They would install the drip edge, which is the perimeter flashing that goes all around the house. *Id.*

13. Next, Mr. Palacios described that the workers would put in the first course. They prepared the flashing around the walls of where the roof and the walls meet on the dormers. The ice and shield leak water barrier is installed, the felt paper is installed and finally the shingle roof material is brought up to the roof for installation. *Id.* In order to access the roof, Mr. Palacios admitted ladders were required. *Id.* at 45.

14. When Mr. Palacios arrived at the site, he spoke with the customer, owner of the house and with Alonzo from Bryan Home Improvement. *Id.* at 48. **Mr. Palacios stated he advised Alonzo to be careful with the surrounding properties because it would be tight to fit in the work and there were live wires.** *Id.* at 49, 68. Mr. Palacios observed the workers stripping the roof from the right side of the house because there was easier access. In addition, there was an alleyway that you could actually walk toward the back of the house. *Id.* at 51. Mr. Palacios was present at the job site for approximately half an hour to forty five minutes. *Id.* at 52. While he did not observe any improper work, Mr. Palacios stated he did have the ability to stop the work if he observed such a dangerous condition. *Id.* at 52-53. Mr. Palacios stated that the workers were supposed to be working from the right side of the house. *Id.* at 53. If Mr. Palacios had observed a worker without his safety harness, he would have advised him to wear one and tie off. *Id.* at 55.

15. Mr. Palacios first learned of the accident when he received a phone call from the local police department. *Id.* at 63. The police officer informed Mr. Palacios that a worker was injured while carrying a ladder and going up another ladder when he made contact with the live

wire and received a jolt from the live wire. *Id.* at 66. The officer informed Mr. Palacios that he had spoken with Alonzo who provided this description of the accident. *Id.* at 67. Mr. Palacios stated that if he had seen a worker attempting to climb a ladder while carrying another ladder, he would have told him not to do that and get down off the ladder. *Id.* at 69.

16. Mr. Palacios was informed that OSHA would be conducting an investigation regarding the incident and he kept in constant communication to find out what was going to happen with the job and the investigation. *Id.* at 73. OSHA issued a fine to Alonzo and his crew members for failing to be OSHA certified. *Id.* at 74. Mr. Palacios said this was a difficult job because of the poor access on the left side of the home. *Id.* at 95. There was limited space to where to place a ladder which could possibly come into contact with the neighboring home. *Id.* at 96.

17. Mr. Palacios agreed that if the worker here was climbing up a ladder on the left side of the house for the first time, he would not have had the ability to tie off his harness. *Id.* at 102. Mr. Palacios admitted that Home Depot was the general contractor for this project. *Id.* at 103.

18. As will be described in greater detail in the memorandum of law, Plaintiff was not provided with sufficient safety equipment to prevent him from suffering significant injury in violation of Labor Law 240(1) and Labor 241(6).

WHEREFORE, Plaintiff's motion for partial summary judgment should be granted pursuant to Labor Law 240(1) and Labor Law 241(6).

Dated:

New York, New York

January 5, 2018 /s/ Steven R. Payne

---

**GINARTE GALLARDO GONZALEZ WINOGRAD, LLP.**

By: Steven R. Payne, Esq. (SRP 8013)

Attorneys for Plaintiff
**DANIEL RIVERA**
225 Broadway, 13th Floor
New York, New York 10007-3772
(212) 601-9700

**D'AMATO & LYNCH, LLP**
Attorneys for Defendant/Third-Party Plaintiff
**HOME DEPOT U.S.A., INC.**
225 Liberty Street
New York, New York 10281
(212) 269-0927

**CONNORS & CONNORS, P.C.**
Attorneys for Third-Party Defendant
**BRYAN'S HOME IMPROVEMENT CORP.**
766 Castleton Avenue
Staten Island, New York 10310
(718) 442-1700