EXHIBIT E

# THE HOME DEPOT SERVICE PROVIDER AGREEMENT

## GENERAL TERMS AND CONDITIONS

**1     Introduction.**

1.1   General. These are the general terms and conditions pursuant to which The Home Depot may use Service Provider and its employees, agents and subcontractors ("**Service Provider Personnel**") to provide services, products and/or materials (collectively, "**Services**") to The Home Depot's retail customers ("**Customer(s)**"), with whom The Home Depot has a separate contractual arrangement ("**Customer Contract**"). These General Terms and Conditions are a part of the Service Provider Agreement ("**SPA**") between The Home Depot and Service Provider dated as of the Effective Date located on the Signature Page. The Service Provider and The Home Depot will sometimes be referred to individually as a "**Party**" or collectively as "**Parties**". These general terms and conditions may only be amended by an amendment to the SPA executed by the Parties, in the form attached as Attachment 3.

1.2   Purchase Orders. The use of Service Provider by The Home Depot with respect to any particular Customer Contract is an "**Assignment**". The necessary particulars of each Assignment will be communicated to Service Provider in the form of a document referred to as a "**Purchase Order**", which may only be amended by a change order prepared by The Home Depot and signed by Service Provider ("Change Order"). No adjustments, including adjustments to compensation due Service Provider, will be made for any deviations from a Purchase Order that have not been requested or otherwise agreed to by The Home Depot pursuant to a Change Order. Purchase Orders, and any Change Orders constitute an integral part of this SPA and are incorporated by reference. Purchase Orders and any Change Orders may be electronically transmitted. The prices that Service Provider charges The Home Depot for the Services will be set forth in a separate document signed by the Parties and known as an Exhibit "A", which Exhibit "A" are hereby incorporated and made as part of the SPA. Unless otherwise provide herein, the prices at which Services are sold to The Home Depot's customer shall be solely determined by The Home Depot.

1.3   Relationship of the Parties. Service Provider's relationship to The Home Depot and its affiliated companies for purposes of this SPA is that of an independent contractor. In no event will The Home Depot and its affiliated companies be considered a joint employer of Service Provider or any of its affiliates or their respective personnel. Service Provider acknowledges that it has sole responsibility to hire, discipline, terminate, supervise and dictate the daily work of its employees, agents, and subcontractors and is solely responsible for the payment of wages, salaries and benefits to its employees. Service Provider or Service Provider Personnel do not have an employee status or any entitlement to participate in any plans, arrangements, or distributions by The Home Depot or its affiliated companies pertaining to, or in connection with, any pension, stock, bonus, or similar benefits for The Home Depot employees.

1.4   Reference to Service Provider. Any reference to Service Provider refers to Service Provider Personnel, the equipment, facilities and resources used by Service Provider, and its agents or any other third parties that Service Provider engages to fulfill its obligations in providing the Services, regardless of whether Service Provider owns, operates or controls said equipment, facilities and/or resources.

1.5   No Implied or Further Agreement. Nothing in this SPA obligates The Home Depot to use the services of Service Provider for any Assignment or to issue Service Provider any Purchase Order or to enter into any further agreement with Service Provider whatsoever. Without limiting the generality of the foregoing, Service Provider acknowledges that The Home Depot makes no assurance whatsoever that Service Provider will receive a minimum or particular number of leads or Assignments or receive a minimum or particular dollar amount of business under this SPA. In view of the foregoing, the Parties represent and warrant to one another that any investments or expenditures a Party has made, or may make, in anticipation of, or following execution of this SPA, are at such Party's sole and knowing risk.

1.6   Non-Exclusivity. This SPA is non-exclusive and The Home Depot may use other providers to perform the same or similar services as those under this SPA. Similarly, Service Provider may perform like services for others, so long as the performance of such other services does not impair Service Provider's ability to fulfill its obligations under this SPA, cause Service Provider to breach this SPA, or result in an Event of Default as defined in Section 13 of this SPA.

**2     Term.**

2.1   Renewals. The term of this SPA is one (1) year from the Effective Date (the "**Initial Term**"), following which, it will automatically renew for consecutive one-year periods ("**Renewal Term**" and together with the Initial term, the "**Term**") unless terminated earlier in accordance with Section 15.

**3     Services; Service Provider Reference Guide.**

3.1   Services. If any services, functions or tasks to be performed by Service Provider are not specifically described or included within the definition of "Services" hereunder, but are required for proper performance,

1

## THE HOME DEPOT SERVICE PROVIDER AGREEMENT

### GENERAL TERMS AND CONDITIONS

they are implied by, and included within, the scope of the Services to the same extent as if specifically described in this SPA. The Home Depot may order the following types of services from Service Provider under this SPA as agreed by the Parties on the Face Page ("**Program(s)**"): (i) "**Service Only**" where Service Provider shall provide property related Services to the Customer; (ii) "**Install Only**" where The Home Depot will sell and furnish the merchandise and Services to the Customer and Service Provider will only provide the Installation service; (iii) "**Furnish and Install**" where The Home Depot will sell the merchandise and Services to the Customer and the Service Provider will furnish and install the merchandise at the Customer's service location; (iv) "**Sell, Furnish and Install**" where Service Provider will sell, furnish and install merchandise and provide the Services to a Customer of The Home Depot pursuant to a Customer Contract; and (v) "**Furnish and Deliver**" where The Home Depot will sell the merchandise to the Customer and the Service Provider will furnish and deliver the merchandise to the Customer. Pursuant to a written amendment, the Parties may agree to modify the types of Services provided by Service Provider.

3.2　Provision of Services. Service Provider will, at a minimum, provide all Services, fulfill all Purchase Orders, and complete all Assignments in a timely, workmanlike, and professional manner in accordance with this SPA, any service level requirements specified in the SPRG (see 3.3), any applicable manufacturer's warranty or warranties and all applicable laws, including business and professional licensing requirements, building and zoning codes and facilities and conditions standards. Service Provider will provide Service Provider Personnel who will be present at Customers' service addresses with photo identification and uniforms bearing Service Provider's marks and such other marks as may be designated by The Home Depot in accordance with any further guidelines provided in the SPRG. Service Provider agrees to provide and will perform the Services described in this SPA in accordance with and subject to the terms and conditions set forth herein. Service Provider will not offer or provide any services to a Customer, other than those specifically identified in a Purchase Order or written Change Order issued by The Home Depot, while performing Services for the Customer.

3.3　Service Provider Reference Guide ("SPRG"). Service Provider acknowledges and agrees that additional terms and conditions applicable to these Services will be set forth by The Home Depot in its Service Provider Reference Guide ("**SPRG**"), which constitutes an integral part of this SPA, is incorporated herein by reference and will be located on-line at a website established by The Home Depot for that purpose ("**The Home Depot Website**"). The Home Depot reserves the absolute right to modify the SPRG and The Home Depot Website from time to time in its own discretion. Service Provider will follow all of the applicable terms and conditions included in the SPRG. Certain sections of the SPRG may apply specifically to a particular Program, and Service Provider is responsible for following the guidelines of the SPRG specific to that Program, in addition to following its general guidelines. Notwithstanding any other provision herein to the contrary, any revisions made to the SPRG will be deemed effective immediately upon The Home Depot's posting of such revisions on The Home Depot Website. Service Provider is responsible for checking The Home Depot's Website to note any changes made.

**4　General Obligations of Service Provider.**

4.1　Facilities and Conditions. Service Provider will act at all times with the safety of The Home Depot's Customers and Service Provider Personnel foremost in mind and will follow all applicable safety guidelines conforming to (i) those required or recommended by federal, state, and local governmental or quasi-governmental authorities with jurisdiction over the activities of Service Provider under this SPA, including, all applicable guidelines and regulations issued by the federal Occupational Safety and Health Administration; and (ii) the requirements of this SPA. All waste that is generated by the Services or residual chemicals that are otherwise used by Service Provider must be properly managed, stored, transported, and dispersed of in accordance with applicable local, state, and federal laws, rules, and regulations.

4.2　Liens; Security Interests. To the extent permissible under applicable law, Service Provider will not place a lien on, or take any other security interest in, The Home Depot's property or any property of a Customer.

4.3　Tariffs. The Parties agree that no tariffs, either those that may be maintained by Service Provider or by any carrier working on behalf of Service Provider, will apply to any transportation services provided under this SPA, except as may be specifically agreed to or acknowledged by The Home Depot in writing. To the extent of any inconsistency between said tariffs and the terms of the SPA, the applicable terms of this SPA will apply. The terms of the SPA will also apply over the terms of any bills of lading or any other shipping documents that may be issued by Service Provider to The Home Depot in connection with its transportation service.

4.4　Permits. Service Provider must follow all legal requirements and obtain all required building and construction permits and inspections necessary to perform the Services. Service Provider will not request or require

2

# THE HOME DEPOT SERVICE PROVIDER AGREEMENT

## GENERAL TERMS AND CONDITIONS

Customers to obtain permits unless permissible under applicable law and requested to do so in writing by The Home Depot. Service Provider will maintain auditable records documenting its compliance with the requirements of this Section 4.4.

4.5  Taxes. Service Provider is solely responsible for all taxes related to the Services and fulfillment of its obligations to The Home Depot under this SPA. Service Provider will pay, accrue and remit all sales, use, ad valorem, franchise, income, license, occupation, and any other taxes or imposts of every nature or description whatsoever, presently or hereinafter imposed by applicable law upon the operation of Service Provider's business in relation to its fulfillment of its obligations to The Home Depot. Service Provider will file all reports, make all returns and secure all licenses and permits with respect to such taxes or imposts. [The Home Depot will issue a resale certificate to Service Provider only if Service Provider is authorized to request such a certificate under applicable law.] Additionally, the products or materials purchased under this SPA by Service Provider from The Home Depot for services by Service Provider do not qualify under applicable law as a real property improvement or are otherwise taxable to the property owner under applicable law. The Home Depot will collect all retail sales taxes from Customers and will remit such taxes to, and file all required reports with, the appropriate governmental authorities.

4.6  Property Losses. Service Provider is solely responsible for the care of, and for all losses that may occur with respect to any physical damage to the Customer's service location and/or merchandise, monies, funds, negotiable instruments (for example, checks), valuables or other property of The Home Depot or any Customer while in the custody or control of or while Service Provider or any Service Provider Personnel are present. Any property removed or replaced belonging to the Customer will not be carried away by the Service Provider unless such removal is provided for in the Customer Contract or requested in writing by the Customer.

4.7  Equipment. Service Provider will, at its own expense, provide all transportation capacity and provide and maintain all equipment, supplies, tools, uniforms, up-to-date maps and directional aids, and other resources (collectively, "**Equipment**"), necessary to fulfill its obligations under this SPA. Service Provider will keep Equipment in good repair and safe operating condition, maintain Equipment according to the manufacturers' recommendations, and only use Equipment fit for its intended purpose. Service Provider's vehicular Equipment will be maintained consistent with the requirements of the Federal Motor Carrier Safety Regulations ("**FMCSR**") at all times. Service Provider will comply with any additional vehicular specifications as provided in the SPRG.

4.8  Non-Solicitation. Service Provider will not use Confidential Information (defined in Section 8.1), information about Customers obtained as a result of Service Provider's activities under this SPA, or any other information obtained as a consequence of Service Provider's fulfillment of its obligations under this SPA, for the purpose of soliciting, directly or indirectly, any business from a Customer or prospective Customer. Service Provider will not use such information for the purpose of providing products or services that are the same as, similar to, or competitive with, Services or other products and services that are sold or provided by The Home Depot. Service Provider acknowledges and agrees that the restrictions contained in this Section 4.8 are fair, reasonable, and necessary to protect The Home Depot's legitimate business interests. The non-solicitation restrictions set forth in this Section 4.8 will survive for three (3) years upon termination or expiration of this SPA, provided that protections applicable to The Home Depot's Confidential Information will continue for as long as permitted by applicable law.

4.9  Promotions. The Home Depot may desire and hereby reserves the right to implement storewide or targeted promotions or purchase incentives applicable to Services or certain Programs. Such promotions may apply nationally, regionally, or only with respect to certain The Home Depot stores. If such promotions affect the business of Service Provider, The Home Depot and Service Provider will engage in good faith discussions about the Parties respective responsibilities and any adjustments that may be appropriate for the pricing of services or compensation due Service Provider. Such arrangement regarding the implementation of a promotion shall be agreed to by the Parties and reduced to a properly executed writing.

4.10  Service Warranties.  The Home Depot will warrant to the Customer the workmanship of the Services pursuant to a Customer Contract.  Service Provider will warrant its workmanship to The Home Depot in accordance with this Section 4.10.  If Service Provider breaches its warranty, the Service Provider will indemnify The Home Depot in accordance with Section 10.  Service Provider hereby warrants the workmanship of each installation to The Home Depot for the longer of: (i) one (1) year from the date of the installation completion and signed Customer Approval and installer signed Lien Waiver (as defined below), whichever is later; (ii) the applicable period specified in the Customer Contract or any warranty supplemental to such Customer Contract; or (iii) such period as may be required under applicable law.  These warranties

3

# THE HOME DEPOT SERVICE PROVIDER AGREEMENT

## GENERAL TERMS AND CONDITIONS

are in addition to any other warranties provided by Service Provider or required by applicable law or this SPA.

**5    Payment and Chargebacks.**

5.1   Submission for Payment. Payment processing will begin upon the completion of an installation pursuant to a Purchase Order. Unless other terms are established in other sections of the SPA for the specific Program, Service Provider must submit to The Home Depot a signed Customer Approval and a signed lien waiver form ("**Lien Waiver**") as a condition of payment processing. The payment procedures and adjustments are described in further detail in the SPRG.

5.2   Payment. Within ninety (90) days of The Home Depot's receipt of both the signed Customer Approval and signed Lien Waiver, The Home Depot will process and make payment to the Service Provider of any undisputed charges.

5.3   Cost Adjustments An undisputed error in the payment made to Service Provider will be corrected as follows: (i) if the cost adjustment results in a credit to the Service Provider, the amount will be included in the next scheduled payment cycle; or (ii) if the cost adjustment results in a debit to the Service Provider, the Service Provider's account will show a balance due and The Home Depot will deduct the amount due from any future payments to the Service Provider.

5.4   Chargeback. If The Home Depot incurs expenses to satisfy a Customer who is not completely satisfied because of substandard or faulty workmanship of the Service Provider or to repair damages caused by Service Provider and/or if the Service Provider has violated any of the requirements of the SPA that are or may be deemed in the future violations which provide a penalty to be imposed against the Service Provider, such expenses, regardless of the manner incurred, will be deducted as a "chargeback" from payments otherwise due the Service Provider from The Home Depot. To the extent no further payments are due, The Home Depot will invoice Service Provider for such expenses and Service Provider agrees to pay such invoice within thirty (30) days of the invoice date. The Home Depot's rights under this Section 5.4 will survive the expiration or termination of this SPA. Additional information with regard to chargebacks is provided in the SPRG.

**6    Background Investigations.**

6.1   General. Service Provider Personnel must pass background investigations before the provision of any Services. These investigations will be conducted by a third-party agency or agencies approved or designated by The Home Depot as set forth in the SPRG. Service Provider will be notified of the results, but will not receive access to or review the report, except to the extent The Home Depot is required under applicable law to allow such access or review or unless the Service Provider is credentialed by the third-party agency. Later background investigations may be required by The Home Depot.

6.2   Prerequisite to Provision of Services. Until the requirements of this Section 6 are fully satisfied, under no circumstances will Service Provider or its Service Provider Personnel provide any Services, have contact with any Customers, or have access to Confidential Information, including Customer information.

6.3   Felony. Discovery of a felony criminal conviction (no matter the date of such conviction) of Service Provider or any significant owner, officer or director thereof, or of any Co-Signer with Service Provider, or of any Service Provider Personnel, will be grounds for immediate termination of this SPA and any Purchase Order issued by The Home Depot.

**7    Service Provider Personnel.**

7.1   No Benefits. Service Provider acknowledges and agrees that it and its Service Provider Personnel will have no right to the payment of wages or salary from The Home Depot or to participate in any employee benefits plans, arrangements, or distributions by The Home Depot or its affiliated companies. Such employee wages, salary, benefits plans, arrangements, or distributions include, without limitation, those pertaining to, or connected with, any pension, stock, bonus or similar benefits for The Home Depot employees. Service Provider will provide a signed benefits waiver for each of its Service Provider Personnel upon The Home Depot's request.

7.2   Tax and Reporting Requirements. Service Provider is exclusively liable for all tax withholding, deposit, and reporting requirements under federal or state income, social security, FICA, old age benefit, Medicare, unemployment insurance, or workers' compensation acts with respect to services provided by its Service Provider Personnel. Service Provider represents and warrants that it will comply, at its expense, with the Fair Labor Standards Act, all worker's compensation, benefits, employment laws and all other laws applicable to it. The Home Depot has the right to audit such records upon request.

4

**THE HOME DEPOT SERVICE PROVIDER AGREEMENT**

**GENERAL TERMS AND CONDITIONS**

7.3 Compliance with the Immigration Reform and Control Act. Service Provider is solely responsible for ensuring that all of its Service Provider Personnel are in compliance with the Immigration Reform and Control Act of 1986 ("IRCA") and will perform employment eligibility verifications and maintain I-9 forms for Service Provider Personnel. Service Provider will comply fully with the record-keeping requirements of IRCA, and certify its compliance to The Home Depot upon request. Service Provider will only use workers for whom it has confirmed legal eligibility to perform services as employees in the United States and for whom all required record keeping under IRCA has been performed and maintained.

7.4 No Sponsorship. The Home Depot is not responsible for sponsorship of, and will not sponsor, any workers used in fulfillment of Service Provider's obligations under this SPA.

7.5 Reimbursement. If, for any reason, The Home Depot is required by law or regulation or the action of any governmental authority, to pay any sum of money by way of levy, tax, interest, penalty, or otherwise, to Service Provider Personnel, Service Provider authorizes The Home Depot to deduct such amount from any sums then due or that thereafter become due Service Provider from The Home Depot. To the extent no further payments are due Service Provider, The Home Depot will invoice Service Provider for such reimbursement and Service Provider agrees to pay such invoice within thirty (30) days of the invoice date. This obligation and The Home Depot's rights hereunder will survive the expiration or termination of this SPA.

7.6 Labor Disputes. Service Provider agrees to immediately notify The Home Depot in writing of any threatened, impending, or actual labor dispute involving Service Provider or Service Provider Personnel.

7.7 Compliance with this SPA. Service Provider will ensure that Service Provider Personnel comply with the terms of this SPA, and any breach of any term of this SPA by Service Provider Personnel is a breach by Service Provider for liability, indemnification and other purposes.

**8 Confidentiality; Publicity; Ownership of Works.**

8.1 Confidential Information. Service Provider acknowledges that performance under this SPA will give Service Provider and Service Provider Personnel access to confidential, proprietary, and trade secret information of The Home Depot and Customer information (collectively "**Confidential Information**"). Service Provider agrees that it will maintain all Confidential Information in strict confidence and not disclose or use Confidential Information other than as necessary to fulfill its obligations to The Home Depot. Service Provider will inform its Service Provider Personnel about the confidential and proprietary nature of the Confidential Information to which they may be exposed and will ensure that Service Provider Personnel keep Confidential Information strictly confidential and comply with all terms of this Section 8. "Confidential Information" means information disclosed to, made available to or obtained by Service Provider in connection with this Agreement, and all material and reports prepared for The Home Depot hereunder, including all information (whether or not specifically labeled or identified as confidential), in any form or medium, that is disclosed to or learned by Service Provider in the performance of Services related to this SPA and that relates to the business, products, services, research or development of The Home Depot or its service providers, suppliers, distributors, agents, representatives or Customers. Specifically, but not limiting the generality of the foregoing, Confidential Information further includes the following:

(a) internal business information (including information relating to strategic and staffing plans and practices, marketing, promotional sales plans, practices and programs, training practices and programs, costs, rate and pricing structures and accounting and business methods);

(b) identities of, individual requirements of, specific contractual arrangements with, and information about, The Home Depot's service providers, suppliers, distributors and Customers and their confidential, proprietary or personal information;

(c) compilations of data and analyses, processes, methods, techniques, systems, formulae, research, records, reports, Customer lists, manuals, documentation, models, data and data bases relating thereto;

(d) computer software and technology (including operating systems, application software, interfaces, utilities, modifications, macros and their overall organization and interaction), program listing, documentation, data and data bases, and any user IDs and passwords The Home Depot provides Service Provider for access to The Home Depot's internal systems; and

(e) trade secrets, trade dress, ideas, inventions, designs, developments, devices, methods, processes and systems (whether or not patentable or copyrighted and whether or not reduced to practice or fixed in a tangible medium).

## THE HOME DEPOT SERVICE PROVIDER AGREEMENT

### GENERAL TERMS AND CONDITIONS

8.2 <u>Required Disclosures</u>. If Service Provider receives a subpoena or other validly issued administrative or judicial process demanding information about this SPA and/or Confidential Information, Service Provider must promptly notify and tender the defense of that demand to The Home Depot. Unless it has been timely limited, quashed or extended, Service Provider will thereafter be entitled to comply with such demand to the extent required by law. If requested, Service Provider will cooperate in the defense of such demand.

8.3 <u>Publicity</u>. Service Provider will not issue any press release or other statement, or otherwise disclose (in whole or in part) the contents or substance of this SPA or the Parties' activities under this SPA without first obtaining the express prior written consent of The Home Depot. Any such consent must be requested at least thirty (30) calendar days before the intended date of the release or communication. Service Provider will immediately inform The Home Depot if it believes that the issuance of any press or other media release is required by operation of applicable law.

8.4 <u>Ownership of Works</u>. Except as otherwise agreed by the Parties in writing, The Home Depot or its assignee own and have all right, title and interest in all ideas, concepts, plans, processes (including, without limitation, sales and marketing processes) creations, trademarks, logos, intellectual property, displays (whether such displays are used on an in-store or in-home basis) or other work product (collectively, the "**Works**") produced by The Home Depot, produced at The Home Depot's request, or produced by Service Provider or any Service Provider Personnel for The Home Depot in furtherance of the Parties' obligations under this SPA. Service Provider will cooperate fully with The Home Depot and execute documentation as The Home Depot may request in order to establish, secure, maintain, or protect The Home Depot's rights with respect to the Works.

**9   Representations and Warranties.**

9.1   <u>Mutual Representations and Warranties</u>. Each Party represents and warrants that, as of the Effective Date:

(a) It is a corporation duly incorporated (or is any other form of legally recognized entity), validly existing and in good standing under the laws of the jurisdiction in which it is incorporated or otherwise formed, and is duly qualified and in good standing in each other jurisdiction where the failure to be so qualified and in good standing would have an adverse effect on its ability to perform its obligations under this SPA in accordance with the terms and conditions hereof; and

(b) each Party has all necessary corporate power to enter into this SPA and to perform its obligations hereunder and the execution, delivery, and performance of this SPA by each Party has been duly authorized by all necessary corporate action on the part of each Party.

9.2   <u>Service Provider Representations and Warranties</u>. Service Provider further represents and warrants to The Home Depot that as of the Effective Date and continuing throughout the Term:

(a) Service Provider is duly licensed, authorized, and qualified to do business in each jurisdiction in which a license, authorization, or qualification is required for the transaction of business in fulfillment of Service Provider's obligations under this SPA;

(b) there is no outstanding litigation, arbitration, claim, or other dispute to which Service Provider, [or any Co-Signer] is a party that if decided unfavorably to it, would reasonably be expected to have a material adverse effect on the ability of any Party to fulfill its obligations under this SPA;

(c) neither Service Provider [nor any Co-Signer] of Service Provider is a party to any contract, agreement, mortgage, note, deed, lease or similar understanding with any third party that would have an adverse effect on the ability of Service Provider to fulfill its obligations under this SPA;

(d) to Service Provider's knowledge, no non-public fact or circumstance exists that would have, or potentially could result in, an adverse effect on Service Provider's or The Home Depot's public image or the public's perception of any of Service Provider's or The Home Depot's brands or marks that may be used under this SPA;

(e) Service Provider will properly render the Services in accordance with this SPA and any Purchase Order and will execute each in accordance with the practices and commercially reasonable standards used in well-managed operations performing services similar to the Services, with an adequate number of qualified individuals with suitable training, experience and skill to perform the Services;

(f) Service Provider will maintain insurance coverages in amounts and as required in this SPA and the SPRG;

# THE HOME DEPOT SERVICE PROVIDER AGREEMENT

## GENERAL TERMS AND CONDITIONS

(g) Service Provider will perform its obligations in a manner that complies with all laws applicable to Service Provider and its business, activities, facilities and the provision of Services hereunder, including laws of any country or jurisdiction from which or through which Service Provider provides the Services or obtains resources or personnel to do so.

**10  Indemnification.**

10.1 Mutual Indemnification. The Home Depot and Service Provider and its affiliates, will indemnify, defend, and hold one another and their respective owners, officers, shareholders, partners, members, parent, affiliates, subsidiaries, associates, directors, employees, subcontractors and agents harmless from and against, any third-party losses, liabilities, claims, causes of action, lawsuits, judgments, civil penalties, damages and expenses suffered, incurred, or sustained by the indemnified Party or any of its owners, officers, shareholders, partners, members, parent, affiliates, subsidiaries, associates, directors, employees, subcontractors and agents to the extent resulting from, arising out of, or relating to, any claim that:

(a) the indemnifying Party or any owner, officer, shareholder, parent, affiliate, subsidiary, associate, director, employee, subcontractor and agent thereof is non-compliant with any applicable law or regulations, or;

(b) a Party's intellectual property infringes upon the proprietary or other rights of any third party.

10.2 Service Provider Indemnification. Service Provider will further indemnify defend and hold harmless The Home Depot and its owners, officers, shareholders, affiliates, subsidiaries, associates, directors, employees, subcontractors and agents from and against, any losses, liabilities, claims, causes of action, lawsuits, judgments, civil penalties, damages and expenses suffered, incurred, or sustained by The Home Depot or its owners, officers, shareholders, affiliates, subsidiaries, associates, directors, employees, subcontractors and agents, to the extent resulting from, arising out of, or relating to the following acts or failure to act of Service Provider or Service Provider Personnel:

(a) any Services and/or work performed and/or products supplied by Service Provider and/or Service Provider Personnel;

(b) the inaccuracy, untruthfulness or breach of any representation, covenant, warranty, or any other agreement set forth in this SPA;

(c) actual or alleged personal injury (including death);

(d) actual or alleged property loss or damage;

(e) the marketing or sale of any products, materials or services under this SPA to any Customer; or

(f) compensation or benefits of any kind, including base wages, bonuses, health and welfare benefits (by agreement, plan, statute or otherwise), pension benefits, or severance or termination pay, by or on behalf of Service Provider or any owner, officer, shareholder, partner, member, parent or Service Provider Personnel, claiming an employment or other relationship with Service Provider and/or The Home Depot.

10.3 The Home Depot's Right to Assume Defense. Notwithstanding anything else provided herein, and without limiting Service Provider's obligation to fully indemnify The Home Depot under this SPA, and with respect to any claims for which The Home Depot is entitled to indemnification from Service Provider hereunder, The Home Depot reserves the absolute right to assume the defense of any claim and The Home Depot may thereafter require from Service Provider reimbursement of any and all costs and expenses (including reasonable attorneys' fees).

10.4 Defense of Claims. Subject to Section 10.3 above, the indemnified Party shall cooperate in the defense of any claim for which indemnification is sought under this Section 10. The indemnifying Party agrees to do the following in connection with the conduct of the defense of any claim in which the indemnified Party has been named a party:

(a) inform the indemnified Party or its agents about all material information pertaining to a claim;

(b) inform the indemnified Party of the date of any mediation, arbitration, trial, or settlement conference as soon as possible after it receives such information;

(c) choose defense counsel that is reasonably satisfactory to the indemnified Party;

7

**THE HOME DEPOT SERVICE PROVIDER AGREEMENT**

**GENERAL TERMS AND CONDITIONS**

    (d)    use all reasonable efforts to promptly provide indemnified Party with copies of all discovery requests as soon as they are available to indemnifying Party;

    (e)    provide the indemnified Party with copies of all defensive pleadings in advance of filing to allow the indemnified Party the opportunity to provide comments; and

    (f)    inform the indemnified Party of the outcome of any mediation, arbitration, motion, trial, or settlement or any other matter from which appeal rights could arise.

10.5    No Settlement Without Consent. The indemnifying Party will not enter into any settlement or compromise of the claim that would result in the admission of any liability, create any financial liability, or that would subject the indemnified Party to injunctive relief or otherwise bind, restrict or commit the Indemnified Party without first obtaining the indemnified Party's prior written consent.

10.6    Participating in the Defense. The Home Depot has the right, but not the obligation, to participate, as it deems necessary, in the handling, adjustment, or defense of any claim. If The Home Depot reasonably determines that defenses are available to it that are not available to Service Provider, and if raising such defenses would create a conflict of interest for the counsel defending the claim, The Home Depot will be entitled to retain separate counsel, at Service Provider's expense, to raise such defenses.

10.7    Assumption of Defense. Should the indemnifying Party fail to assume its obligations, including its obligation to diligently pursue and pay for the defense of the indemnified Party under this Section 10, the indemnifying Party agrees that the indemnified Party will have the right, but not the obligation, to proceed on its own behalf to so defend itself. The indemnified Party may require from the indemnifying Party reimbursement of any and all costs and expenses (including reasonable attorneys' fees) and any amounts paid by the indemnified Party on behalf of the indemnifying Party.

10.8    Indemnification in Addition to Insurance. Service Provider's agreement to indemnify, defend and hold harmless The Home Depot under the terms of this Section 10 is in addition to Service Provider's agreement to procure insurance as required under this SPA. Any losses, damages and expenses incurred by The Home Depot will be covered, to the extent permissible by Service Provider's insurer. Service Provider's insurance coverage does not in any way limit Service Provider's obligation to indemnify, defend and hold harmless The Home Depot.

10.9    Other Indemnification Obligations. The foregoing obligations are in addition to any other indemnification obligations that may be set forth elsewhere in this SPA or in any attachment to this SPA or which may arise by operation of law.

**11**    **Insurance; Risk of Loss.**

11.1    Licensing and Insuring of Employees. Service Provider will ensure that Service Provider Personnel performing work under this SPA are fully licensed as required by law with respect to all activities undertaken in fulfillment of Service Provider's obligations under this SPA and insured consistent with The Home Depot's requirements as provided in the SPRG.

11.2    Insurance Certificates. All insurance certificates must list "Home Depot U.S.A., Inc." as the certificate holder. Additionally, all insurance certificates, except for the Workers' Compensation Certificate of Insurance, must contain the following language exactly as provided: "Home Depot U.S.A., Inc., its parents, affiliates, and subsidiaries are added as additional insureds."

11.3    Risk of Loss. As of the Effective Date and continuing throughout the Term, each Party will be responsible for risk of physical or actual loss of, and damage to, any property, equipment, merchandise or any other items or information in its possession or under its control.

11.4    Insurance Coverage. Service Provider will procure and maintain at all times Commercial General Liability, Auto Liability and Workers' Compensation Insurance with coverage amounts on an occurrence basis containing limits of no less than the amounts specified for the Services on the Insurance Requirements described in the SPRG. This insurance will not include any exceptions and/or exclusions that limit or minimize the coverages for the Services.

11.5    Insurance Proceeds. For the avoidance of doubt, insurance proceeds received or owed to Service Provider for any Services provided under this SPA, will be paid or assigned, as necessary, to The Home Depot to cover any costs or fees incurred by The Home Depot as a result of the circumstances leading to the payment of any such insurance proceeds.

**12**    **Limitations of Liability.**

## THE HOME DEPOT SERVICE PROVIDER AGREEMENT

### GENERAL TERMS AND CONDITIONS

12.1 LIABILITY FOR ACTUAL DAMAGES ONLY. EXCEPT IN CONNECTION WITH SERVICE PROVIDER'S BREACH OF CONFIDENTIALITY, FRAUD, GROSS NEGLIGENCE, WILLFUL MISCONDUCT OR INDEMNIFICATION OBLIGATIONS TO THE HOME DEPOT FOR INTELLECTUAL PROPERTY INFRINGEMENT CLAIMS, NO PARTY WILL BE LIABLE TO ANOTHER PARTY FOR, NOR WILL THE MEASURE OF DAMAGES INCLUDE, ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, EXEMPLARY, PUNITIVE, OR SPECIAL DAMAGES ARISING OUT OF OR RELATING TO ITS ACTS OR OMISSIONS UNDER THIS SPA, REGARDLESS OF THE FORM OF ACTION, WHETHER IN CONTRACT, NEGLIGENCE, TORT, STRICT LIABILITY, PRODUCTS LIABILITY OR OTHERWISE, AND EVEN IF FORESEEABLE OR IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. A PARTY WILL ONLY BE LIABLE TO THE OTHER PARTY FOR DAMAGES ACTUALLY INCURRED BY A BREACHING PARTY.

12.2 THE HOME DEPOT'S MAXIMUM LIABILITY. THE HOME DEPOT'S MAXIMUM LIABILITY TO SERVICE PROVIDER UNDER THIS SPA (REGARDLESS OF CAUSE OR FORM OF ACTION, WHETHER IN CONTRACT, TORT, OR OTHERWISE) WILL BE LIMITED TO THE TOTAL UNDISPUTED AMOUNT OWED SERVICE PROVIDER BY THE HOME DEPOT IN PAYMENT FOR SERVICE PROVIDER'S FULFILLMENT OF ITS OBLIGATIONS UNDER THIS SPA.

12.3 CLAIMS ONLY AGAINST THE HOME DEPOT. SERVICE PROVIDER AGREES THAT ITS SOLE RECOURSE FOR CLAIMS ARISING BETWEEN OR AMONG THE PARTIES WILL BE AGAINST THE HOME DEPOT OR THE HOME DEPOT'S SUCCESSORS AND ASSIGNS. IN NO EVENT WILL THE SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS OF THE HOME DEPOT AND ITS AFFILIATES BE PERSONALLY LIABLE OR BE NAMED AS PARTIES IN ANY ACTION BETWEEN OR AMONG THE PARTIES.

12.4 Third-Party Liabilities. Nothing in this Section 12 will be construed to limit a Party's right to recover any damages that such Party is obligated to pay to any third party. Nor will anything in this Section 12 preclude any remedies available to a Party in the case of fraud by the other Party provided such fraud has been established by the finding (even if appealable) of a court of competent jurisdiction.

12.5 Mutual Understanding. Service Provider and The Home Depot agree that the allocation of liability set forth in this Section 12 represents the mutually agreed upon and bargained-for understanding of the Parties and further agree that the compensation exchanged by the Parties under this SPA reflects such allocation.

**13** **Events of Default.** The occurrence of any of the following will be deemed an "Event of Default".

13.1 Compliance. The failure of Service Provider to: (i) comply with any term or condition of this SPA, (ii) to make payment or reimbursement of funds owed The Home Depot, (iii) cease conduct that The Home Depot reasonably deems harmful to its general business interests or public images, even if unrelated to Service Provider's obligations under the SPA, or (iv) complete an Assignment, which failure continues in effect or has otherwise not been remedied to The Home Depot's satisfaction within thirty (30) calendar days of The Home Depot's written notice thereof to Service Provider.

13.2 Corrections. The failure to (i) correct rejected, defective or nonconforming workmanship, or (ii) repair or replace defective or nonconforming products or materials sourced, furnish, manufactured or fabricated by Service Provider within a commercially reasonable time, of thirty (30) calendar days or less, unless The Home Depot provides a written extension of time.

13.3 Payment to Others. The failure of Service Provider to timely pay any Service Provider Personnel which failure results, or could result, in the placement of a lien, writ of execution or attachment, or other claim or security interest on or against any property of The Home Depot or any property of any The Home Depot Customer.

13.4 Liens. The failure of Service Provider to satisfy, discharge, or release any lien, writ of execution or attachment, or other claim or security interest against the property of The Home Depot or a Customer filed in connection with the Services within ten (10) business days of the date that Service Provider was first made aware of such security interest.

13.5 Creditors and Bankruptcy. (i) The making by Service Provider of an assignment for the benefit of creditors (ii) the institution of a judicial proceeding for the reorganization, liquidation, or involuntary dissolution of Service Provider or for its adjudication as bankrupt or insolvent, (iii) the appointment of a receiver, trustee, or liquidator of or for the property of Service Provider whereupon the receiver, trustee, or liquidator is not removed within thirty (30) calendar days of The Home Depot's written request, or (iv) the taking advantage

**THE HOME DEPOT SERVICE PROVIDER AGREEMENT**

**GENERAL TERMS AND CONDITIONS**

by Service Provider of any debtor relief proceedings, whereby the liabilities or obligations of Service Provider are, or are proposed to be, reduced, or payment thereof deferred.

**14**     **Remedies for Breach or Events of Default.**

14.1    Opportunity to Cure. If Service Provider breaches any obligation under this SPA, or upon an Event of Default, The Home Depot will provide written notice of the breach or Event of Default and an opportunity to cure. Unless a different period is specified in the written notice, Service Provider must cure the breach within thirty (30) calendar days of the date of the written notice. If Service Provider fails to cure within the applicable period, The Home Depot may exercise any or more of the following remedies without any liability to Service Provider:

    (a)    reject, in whole or in part, Service Provider's submission for payment with respect to an Assignment under this SPA or, as the case may be, nullify, in whole or in part, a previously approved submission for payment;

    (b)    withhold from any sums due or that thereafter become due Service Provider the amount deemed necessary by The Home Depot to protect The Home Depot from actual or reasonably foreseeable direct damages resulting from the breach or Event of Default;

    (c)    remove Service Provider from any or all Markets until Service Provider is no longer in breach of this SPA, or the Event of Default is ended;

    (d)    retain a third party to cure the breach or end the Event of Default, at Service Provider's sole expense which expense The Home Depot may offset against any sums due or that thereafter become due Service Provider; or

    (e)    terminate this SPA immediately upon written notice to Service Provider.

14.2    Cure of Remedies. Service Provider's cure of any breach or Event of Default under this SPA must be done in a manner satisfactory to both The Home Depot and the impacted Customer(s).

**15**     **Termination.**

15.1    Breach or Default. This Agreement may be terminated for cause (i.e., for breach or for the occurrence of an Event of Default) by The Home Depot immediately upon expiration of the applicable cure period. If Service Provider commits the same or a substantially similar breach of this SPA, or if there is an occurrence of the same or a substantially similar Event of Default within six (6) months following the date that The Home Depot became aware of the previous breach or Event of Default, The Home Depot will have the right to immediately terminate this SPA. This right will not be waived if The Home Depot permits the Service Provider to cure such subsequent breach or Event of Default within a reasonable amount of time.

15.2    Convenience. Unless otherwise agreed to by the Parties in writing and subject to Sections 15.3 and 15.4 below, any Party may terminate this SPA for any reason at any time for convenience by giving not less than ninety (90) calendar days written notice to the other Party.

15.3    Service Provider's Obligations upon Termination. Upon termination or expiration of this SPA, Service Provider must:

    (a)    timely complete all Assignments;

    (b)    pay to The Home Depot all sums then due within thirty (30) calendar days after termination;

    (c)    pay to The Home Depot any sum that becomes due after termination within thirty (30) calendar days after the date it accrues;

    (d)    return any and all property, including any Confidential Information, of The Home Depot and/or Customers Information in Service Provider's possession or control within thirty (30) calendar days after termination;

    (e)    stop representing that Service Provider is or at any time was in a business relationship with The Home Depot, except as necessary to fulfill any surviving obligations under this SPA; and

    (f)    timely satisfy all obligations under this SPA still in effect.

15.4    The Home Depot's Obligations upon Termination. Upon termination of this SPA for any reason, The Home Depot must:

    (a)    pay all undisputed sums due Service Provider;

    (b)    pay all undisputed sums that become due after termination;

## THE HOME DEPOT SERVICE PROVIDER AGREEMENT

### GENERAL TERMS AND CONDITIONS

    (c) return to Service Provider any and all property of Service Provider in The Home Depot's possession or control within thirty (30) calendar days after termination; and

    (d) satisfy any obligations remaining under this SPA.

15.5   Retainage. The Home Depot may withhold any payments due Service Provider for ninety (90) calendar days after termination to offset any amounts which are due or may become due from Service Provider to The Home Depot.

**16**   **Dispute Resolution.**

16.1   Choice of Law. The laws of the State of Georgia govern and control this SPA, and any disputes arising out of or relating to it.

16.2   Non-Binding Mediation. All disputes by Service Provider shall first be referred to The Home Depot Service Director and/or Installation Merchant and the Parties shall use good faith efforts to resolve such dispute. Before commencing legal or equitable action under Section 15.3 of this SPA, a Party must first request non-binding mediation of any dispute arising out of, or relating to, this SPA. The Parties will have ten (10) calendar days in which to mutually agree upon a professional mediator. The mediation will, unless otherwise agreed in writing by the Parties, be held in Atlanta, Georgia, and will be conducted over a period of time not to exceed three (3) business days over a ten (10) business day period. The Parties will share equally the costs of any such mediation. If the Party that receives the request for mediation is not agreeable to pursuing mediation as a means of resolving the dispute, or if the Parties cannot agree upon a professional mediator, or if mediation fails to result in a resolution of the dispute then any Party may elect to proceed with further legal or equitable action under Section 16.3 of this SPA unless The Home Depot elects binding arbitration under Section 16.4 of this SPA. Notwithstanding the foregoing, either party at any time may seek specific performance or injunctive relief if monetary damages or the ordinary forms of redress at law or as provided under this SPA would be inadequate.

16.3   Legal or Equitable Actions. If The Home Depot does not request binding arbitration under Section 16.4 or if mediation is unsuccessful, legal or equitable actions arising out of, or relating to, this SPA or the breach thereof must be exclusively brought in either the Superior Court of Cobb County, Georgia, or the United States District Court for the Northern District of Georgia, Atlanta Division.

16.4   Binding Arbitration. Regardless of any other provision in this SPA, all claims, disputes, or other matters in question between Service Provider and The Home Depot arising out of, or relating to, this SPA or the breach of it must be decided by binding arbitration if requested by The Home Depot. This arbitration will be conducted in Atlanta, Georgia, in accordance with the **Construction Industry Arbitration Rules of the American Arbitration Association**. The Home Depot will provide a demand for arbitration in writing to Service Provider with a copy to the Atlanta, Georgia office of the American Arbitration Association. The award rendered by the arbitrator(s) is final, and judgment may be entered upon it in accordance with applicable law in any court of competent jurisdiction. Unless the arbitrator decides otherwise, the Parties will share equally the costs of any such arbitration. To preserve Home Depot's right to require arbitration, Service Provider must provide The Home Depot with not less than ten (10) business days' advance written notice before it commences any legal or equitable action.

16.5   Attorneys' Fees. If The Home Depot prevails in any legal or equitable action brought under Sections 16.3 and/or 16.4, Service Provider must reimburse The Home Depot's reasonable attorneys' fees. The Home Depot is not obligated to pay Service Provider's attorneys' fees except to the extent required by law.

**17**   **Miscellaneous.**

17.1   Assignment; Change of Ownership or Control. Service Provider may not assign, transfer, pledge, sublicense, or encumber this SPA or any interest under this SPA, without The Home Depot's prior written consent. Any assignment by Service Provider without the prior written consent of The Home Depot will be null and void. The Home Depot may assign or transfer this SPA to a parent, subsidiary, or affiliate of The Home Depot upon ten (10) business days notice to Service Provider. Any permitted assignment will be binding upon, and inure to, the benefit of the Parties and their permitted successors and assigns.

17.2   Expenses. All costs and expenses (including the fees and disbursement of legal counsel) incurred in connection with this SPA, and the performance of the transactions and obligations contemplated hereby, will be borne by the Party incurring such expenses.

17.3   Waiver. No provision of this SPA may be waived unless in writing, signed by the waiving Party. The failure of a Party to exercise any of its rights, remedies, or options under this SPA, or the failure of a Party to insist

**THE HOME DEPOT SERVICE PROVIDER AGREEMENT**

**GENERAL TERMS AND CONDITIONS**

upon another Party's compliance with any provision of this SPA, will not constitute a waiver of any Party's right to demand compliance. No action or course of dealing of the Parties at variance with the terms and conditions of this SPA will constitute any waiver of a Party's right to demand exact compliance with the terms of this SPA. A waiver by The Home Depot with respect to any specific breach of this SPA or Event of Default by Service Provider does not impair any of The Home Depot's rights with respect to any later breach or Event of Default.

17.4   Amendments. This SPA may only be amended, modified, or supplemented if Attachment 3 is executed by all Parties. Any Purchase Orders issued may only be amended in accordance with Section 1.2.

17.5   Penalties. Service Provider acknowledges that The Home Depot may enforce and pay any penalties charged or assessed against Service Provider by any licensing board or any other governmental or quasi-governmental agency in connection with the Services provided by Service Provider. The Home Depot may withhold payments owed or issue a chargeback to Service Provider to collect reimbursement.

17.6   Further Assurances. Each Party will provide such further documents or instruments required by the other Party as may be reasonably necessary, appropriate or desirable to give effect to this SPA and to carry out its provisions.

17.7   Severability. The invalidity or unenforceability of any provision of this SPA does not impair the validity or enforceability of any other provision. The headings contained are for reference purposes only and do not affect in any way the meaning or interpretation of this SPA.

17.8   Books and Records; Audits. Service Provider must maintain its books and records in accordance with commercially reasonable business standards. The Home Depot or its designated agent(s) may during the term and for a period of three (3) years following the termination or expiration of this SPA, audit during normal business hours and upon not less than five (5) business days' advance written notice to Service Provider, all books and records of Service Provider that are of direct relevance to Service Provider's fulfillment of its obligations under this SPA. Service Provider's authorized representative(s) or designated agent(s) may be present during such audit.

17.9   Cumulative Remedies. Except as otherwise expressly limited or provided herein, all rights, privileges, and remedies conferred under this SPA upon the Parties will be cumulative and are in addition to any rights, powers, privileges, and remedies available to the Parties by statute or otherwise at law or in equity.

17.10  Notices. Any notices or other communication required to be in writing under this SPA must be either (1) personally delivered; (2) sent by certified mail, postage prepaid or (3) delivered by overnight courier, to the addresses of the other Party set forth on the Face Page of this SPA. Notices are deemed to be served and given upon receipt.

17.11  Survival. Upon termination of this SPA, all provisions continue in effect as to disputed matters until fully resolved, as well as all provisions that survive termination of this SPA, including, without limitation, Service Provider's various warranty obligations under this SPA, and **Sections 3.2, 4.1, 4.2, 4.4, 4.5, 4.6, 4.8, 5, 7.5, 7.7, 8, 9, 10, 11.5, 12, 14.1(d), 15.3, 15.5, 16, 17.5, 17.8, 17.9** and **17.10**.

17.12  Force Majeure. No Party will be in breach of this SPA if performance of its obligations or attempts to cure any breach or end an Event of Default are delayed or prevented by reason of any act of nature, fire, natural disaster, failure of electrical power systems, or any other act or condition beyond the reasonable control of the Party affected ("**Event of Force Majeure**"), provided that the affected Party makes commercially reasonable efforts to avoid or eliminate the causes of its nonperformance and continues performance immediately after such causes are eliminated. Notwithstanding this Section 17.12, any delay that exceeds sixty (60) calendar days will entitle the Party whose performance is not affected by the relevant Event of Force Majeure to terminate this SPA upon not less than thirty (30) calendar days' advance written notice to the other Party.

17.13  Forms. Service Provider must purchase sufficient quantities of the forms required to fulfill its Services under this SPA and use only original forms and not copies.

17.14  Entire Agreement. This SPA, together with the Face Page, exhibits, annexes, the SPRG and other duly incorporated attachments, constitutes the entire agreement and understanding between the parties. Any previous negotiations, agreements or representations that have been made or relied upon that are not expressly set forth will have no force or effect.

## THE HOME DEPOT SERVICE PROVIDER AGREEMENT

### GENERAL TERMS AND CONDITIONS

17.15 Counterparts. This SPA may be executed in one or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

17.16 Other Provisions. Except where the context requires otherwise, whenever used, the singular includes the plural, the plural includes the singular, the word "or" means "and/or," and the term "including" or "includes" means "including without limitation," and without limiting the generality of any description preceding that term. When this SPA refers to a number of days, unless otherwise specified as business days, that reference is to calendar days. The headings in this SPA are provided for convenience only and do not affect its meaning. The wording of this SPA shall be deemed wording mutually chosen by the parties and no rule of strict construction shall be applied against either party. Any reference in this SPA to a Section, Annex, Schedule, or Exhibit is to a section, annex, schedule, or exhibit of this SPA.

## THE HOME DEPOT
## MASTER SERVICE PROVIDER AGREEMENT

**IN WITNESS WHEREOF**, the Parties have executed this SPA by their duly authorized representatives and hereby acknowledge and agree that:

   a. This SPA consists of these terms and conditions, Exhibit A, and the Service Provider Reference Guide ("SPRG"), all of which are incorporated herein;
   b. Each Party has fully read, understands, and agrees to all terms contained in this SPA;
   c. Service Provider has fully read, understands, and will comply with The Home Depot's Mold, Asbestos and Lead Paint policies as contained in the SPRG; and
   d. The person executing this SPA on behalf of each Party is fully authorized to sign for and bind their respective Party to this SPA.

**Service Provider**

Company Name: Bryan's Home Improvement Corp.

By: Owner
Service Provider Authorized Representative

Printed Name: Jesus A Loja

Title: President

Date: 08/21/2015
The Effective Date

**Service Provider Co-Signer (If Applicable)[1]**

By: _____

Printed Name: _____

Date: _____

**Home Depot U.S.A., Inc.**

By: _____

Printed Name: _____

Title: _____

Date: _____

---

[1] If Service Provider is a privately or closely held corporation, sole proprietorship, general or limited partnership, limited liability corporation, professional corporation, cooperative, or similar entity, or otherwise, The Home Depot may, at its sole discretion, require any natural person who is a principal or authorized representative of such entity, and whose signature appears on this signature page as "Service Provider Co-Signer," to be deemed a principal of Service Provider under this SPA. Any person signing as Service Provider Co-Signer shall act as a guarantor with respect to Service Provider's obligations under the SPA. The Home Depot shall be afforded the same rights and remedies and enjoy the same limitations of liability with respect to any Service Provider Co-Signer as with respect to the Service Provider under this SPA.