USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 3, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DANIEL RIVERA,

                     Plaintiff,

-v-

HOME DEPOT U.S.A. INC.,
       Defendant and Third-Party Plaintiff,

-v-

BRYAN'S HOME IMPROVEMENT CORP.,
           Third-Party Defendant.
------------------------------------------------------------------X

16-cv-7552 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

Currently pending before the Court is plaintiff's motion for summary judgment on the issue of economic damages. (ECF No. 104.) For the reasons stated below, that motion is GRANTED in part and DENIED in part.

I. BACKGROUND

    A. The Incident

For purposes of the pending motion, the Court assumes the parties' familiarity with the facts underlying this action.[1] In short, plaintiff Daniel Rivera ("Rivera" or "plaintiff") was gravely injured on August 22, 2015 when he was electrocuted after falling from a ladder at a construction site in Yonkers, New York. Home Depot U.S.A. Inc. ("Home Depot") was the general contractor at the construction site, and Bryan's Home Improvement Corp. ("BHIC") was the subcontractor and plaintiff's direct employer.

---

[1] The Court refers the reader to its previous Opinion & Order at ECF No. 70 for further explanation.

B.  Litigation History

The Court also assumes the parties' familiarity with the history of this litigation and the Court's various rulings thus far. As relevant to the pending motion, those rulings include the following:

- On February 27, 2018, the Court denied BHIC's motion for summary judgment on the issue of "grave injury," concluding that BHIC had failed to demonstrate that Rivera did not suffer a "grave injury" as a matter of law. (ECF No. 69.)

- On February 28, 2018, the Court granted plaintiff's partial motion for summary judgment, concluding that Home Depot had violated N.Y. Lab. Law §§ 240(1) and 241(6). (ECF No. 70.)

- During an in-person conference held March 2, 2018, and for the reasons set forth on the record, the Court granted Home Depot's oral motion on the issue of "grave injury," concluding that Rivera had suffered a "grave injury" pursuant to N.Y. Workers' Comp. Law § 11. (ECF No. 74.)

- During an in-person conference held March 6, 2018, and for the reasons set forth on the record, the Court granted Home Depot's motion for contractual and common-law indemnification. (ECF No. 79.) In doing so, the Court noted that "the only remaining issue in this action is the quantum of damages that plaintiff is entitled to recover."

- On March 8, 2018, the Court denied BHIC's motion for reconsideration of its March 6, 2018 decision regarding common-law indemnification.[2] (ECF No. 82.)

As a result of these rulings, it has been established that BHIC is liable for the provable economic and non-economic damages resulting from plaintiff's injury. On March 16, 2018, the parties attended a settlement conference before Magistrate Judge Ona T. Wang, but were unable to reach a resolution on the issue of damages. (ECF No. 97.) Subsequently, on March 20, 2018, this Court set a trial date of April 9, 2018. (ECF No. 99.)

### C. Claimed Economic Damages

On March 23, 2018, in accordance with a briefing schedule established by the Court, plaintiff moved for summary judgment on the issue of economic damages. (ECF No. 104.) BHIC opposed that motion on March 30, 2018. (ECF No. 111.)

Plaintiff relies principally on two expert reports in support of his motion for summary judgment: (1) Dr. Harold Bialsky's "Life Care Plan/Vocational Assessment" dated November 8, 2017 (the "Bialsky Report") (ECF No. 104-3 at pp. 17-51); and (2) Dr. Ronald E. Missun's "Medical Care Cost Summary" dated November 15, 2017 (the "Missun Report") (ECF No. 104-5 at pp. 6-20.) It is undisputed that both experts were properly disclosed and both reports were exchanged within the designated discovery window.

---

[2] The Court also vacated a portion of its February 28, 2018 decision holding that Home Depot had violated 12 NYCRR § 23-1.13(b)(3) in order "to avoid unnecessary confusion." (ECF No. 82 at 3-4.) The Court's decision to vacate that narrow portion of its previous decision did not affect the ultimate conclusion that Home Depot violated N.Y. Lab. Law § 241(6).

3

Dr. Bialsky, relying on (1) a review of certain medical records, reports, procedures, and evaluations, (2) an in-person interview, (3) recommendations made by one of Rivera's treating physicians (Dr. Jose Colon), and (4) his own experience and expertise, created a comprehensive Life Care Plan "designed to meet the needs of Daniel Rivera through his Life Expectancy" of 79 years of age.[3] (See generally Bialsky Report.) In sum, Dr. Bialsky concluded that Rivera's future medical and related costs (the "Life Care Costs") would fall between $5,941,518.93 and $7,078,306.21.[4] (Id. at 20.) Those costs[5] are broken down as follows:

- Home care (home health aide) – $3,066,000 to $3,942,000;

- Routine medical costs (e.g., pain management needs) – $2,210,400;

- Prescription medications – $60,212.29 to $72,577.01;

- Physical therapy – $338,400.00 to $451,200.00;

- Wheelchair and related items (including a wheelchair accessible van) – $240,483.12 to $372,255.20; and

- Mobility aids, home furnishings, and aids for independent living – $26,023.52 to $29,874.00.

---

[3] The life expectancy used by Dr. Bialsky was derived from the 2014 version of the United States Life Tables contained in Vol. 66, No. 4 of the National Vital Statistics Reports.

[4] The actual listed recommendation in Dr. Bialsky's report is $5,941,528.61 to $7,078,296.53. However, that recommendation appears to contain a basic arithmetic error. Specifically, Dr. Bialsky appears to have inadvertently included the high-end estimated charge for the "Hand Held Shower" in the low-end aggregate recommendation, and the low-end estimated charge for same in the high-end recommendation. The Court relies on the itemized cost estimates provided by Dr. Bialsky, not the miscalculated aggregate recommendation.

[5] In many cases (e.g., for the home health aide and other goods/services), Dr. Bialsky provided a low-end and high-end estimate based on different providers/manufacturers. Further, in some cases (e.g., for one medication and physical therapy), Dr. Bialsky provided low-end and high-end estimates based on different frequencies.

Dr. Bialsky also provided an estimate of costs for potential future surgical interventions (the "Surgical Costs") totaling $713,776. (Id. at 22-30.) The Surgical Costs are contained in an entirely separate section of the Bialsky Report from the aforementioned Life Care Plan, and are broken down as follows:

- Cervical fusion surgery – $269,596.00
- Lumbar fusion surgery – $318,639.00; and
- Left knee replacement surgery – $125,541.00.

Finally, Dr. Bialsky concluded that "within a reasonable degree of vocational probability, Mr. Rivera has sustained a total loss of earnings from the time of the August 22, 2015 incident, and over the remainder of his work life expectancy." (Id. at 35.) Dr. Bialsky did not provide an estimate of damages for the loss of Rivera's expected earnings. Adding together the Life Care Costs and the Surgical Costs, Dr. Bialsky's report provides an economic damage range of $5,941,518.93 to $7,792,082.21.

Using Dr. Bialsky's figures[6], Dr. Missun calculated the present value of Rivera's future medical and related needs as either $6,593,495.00 (excluding Surgical Costs) or $7,307,271 (including Surgical Costs). (See Missun Report at 8-20.) As such, the excess present value of the Surgical Costs is $713,776.00.

---

[6] As previously noted, Dr. Bialsky provided a low-end and high-end estimate for certain expected costs (thereby producing a range). In such cases, Dr. Missun used the average of the two estimates in calculating present value. Accordingly, Dr. Missun's figures are not technically a "range," but rather two distinct projections with the only difference being inclusion of Surgical Costs. As discussed infra, BHIC has not challenged Dr. Missun's methodology or sought to preclude the Missun Report.

5

II. LEGAL PRINCIPLES

A. Summary Judgment Standard

Summary judgment may be granted when a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is considered "material" when its resolution "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Further, a dispute is considered "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In reviewing a motion for summary judgment, the Court construes all evidence in the light most favorable to the nonmoving party, and draws all inferences and resolves all ambiguities in its favor. Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010). The Court's role is to determine whether there are any triable issues of material fact, not to weigh the evidence or resolve any factual disputes. Anderson, 477 U.S. at 248-49.

That said, the nonmoving party must actually offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." Id. at 256; see also Scott v. Harris, 550 U.S. 372, 380 (2007) (holding that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (quoting

6

Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).) It is insufficient for the nonmoving party to "merely assert[] that the jury might, and legally could, disbelieve" certain evidence and/or testimony introduced by the moving party. Id. at 256-57 (holding that although the moving party bears the burden, the nonmoving party "is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict."); see also Fed. R. Civ. P. 56(e).

B. Damages

Under New York law, it is well established that economic damages (such as future medical expenses) must be established with "reasonable certainty." See, e.g., Huff v. Rodriguez, 45 A.D.3d 1430, 1433 (4th Dep't 2007); Pouso v. City of New York, 22 A.D.3d 395, 397 (1st Dep't 2005); Tassone v. Mid-Valley Oil Co., Inc., 5 A.D.3d 931, 932 (3d Dep't 2004). This standard "does not require mathematical accuracy or absolute certainty or exactness, but only that the loss or damage be capable of ascertainment with reasonable certainty." Reichman v. Warehouse One. Inc., 173 A.D.2d 250, 252 (1st Dep't 1991); see also E.W. Bruno Co. v. Friedberg, 28 A.D.2d 91, 94 (1st Dep't 1967).

Pursuant to this standard, "an award for future medical expenses may not be based upon mere speculation." Faas v. State, 249 A.D.2d 731, 732 (3d Dep't 1998); see also Fiederlein v. N.Y. City Health & Hosp. Corp., 56 N.Y.2d 573, 574 (N.Y. 1982) ("Mere conjecture, surmise or speculation is not enough to sustain a claim for damages.") With regards to damages for future surgeries, New York courts have

7

shown a clear disinclination to award damages when the actual need for surgery is unknown or indefinite. See, e.g., Hernandez v. New York City Transit Auth., 52 A.D.3d 367, 369 (1st Dep't 2008) (holding that jury's award of $30,000 for ankle operation within five years was speculative when plaintiff's witness did not say plaintiff needed such surgery in that timeframe); Stylianou v. Calabrese, 297 A.D.2d 798, 799 (2d Dep't 2002) (setting aside award of damages for future surgery where "plaintiff's physician failed to state a basis" for his opinion that plaintiff would require such surgery); Faas, 249 A.D.2d at 732 (affirming lower court's decision not to award damages for future shoulder surgery when claimant's orthopedic surgeon "failed to offer a definite opinion with regard to the need for surgery").

III. DISCUSSION

Rivera argues, in sum, that because BHIC has failed to introduce <u>any</u> affirmative evidence to refute, contradict, or undermine the Bialsky or Missun reports, he is entitled to summary judgment as to all claimed economic damages (e.g., the Life Care Costs <u>and</u> Surgical Costs). (See Pl.'s Mem. of Law, ECF No. 104-1 at 7 ("Plaintiff has provided this Court with a concrete, admissible and quantifiable roadmap as to the specific economic damages suffered sufficient to establish a prima facie case of economic damages of $7,307,271.00.").) Put another way, Rivera argues that there is no genuine dispute of material fact as to any of the damages reflected in the Bialsky or Missun reports.

8

BHIC, in a less than two-page opposition (lacking any citations to the record), has advanced two primary arguments: (1) the Bialsky Report is not supported by sufficient medical evidence; and (2) in any event, the quantum of economic damages must be decided by a jury. (See generally BHIC Mem. of Law, ECF No. 111.) But for the following reasons, BHIC's argument is unavailing.

First, BHIC has not moved to exclude the Bialsky or Missun reports under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).[7] Thus, despite BHIC's repeated protestation that the Bialsky Report is not supported by sufficient medical evidence, there is no basis for this Court to exclude the Bialsky Report (or the Missun Report) for purposes of the pending motion for summary judgment. It is not immediately clear to the Court why BHIC chose not to challenge the Bialsky or Missun reports (instead focusing significant attention on excluding evidence of quantitative electroencephalography[8]), but that is the reality of the situation. Both reports are effectively uncontested for purposes of the present motion.

Similarly, BHIC's motion to strike the affidavits of Dr. Bialsky, Dr. Jose Colon, Dr. Paul Ratzker, or Dr. Missun is entirely unhelpful to its case. (See ECF Nos. 108, 111-1.) The Court need not and does not rely on any of those affidavits—which were signed after the expert discovery period closed and submitted in

---

[7] BHIC makes passing note of its apparent belief that Bialsky's opinions regarding future medical needs are "outside his areas of expertise." (BHIC Mem. of Law at 1.) But BHIC has chosen not to actually challenge the Bialsky Report or its contents on summary judgment. The Court will not construe the conclusory half-sentence contained in BHIC's opposition memorandum as a legitimate Daubert motion.

[8] BHIC has challenged the findings of Dr. Richard J. McAlister and Dr. Omowunmi Osinubi. (ECF No. 107-5.) Neither of those findings are referenced in the Bialsky Report, nor do they appear to have been considered by Dr. Bialsky in fashioning the relevant Life Care Plan. (See Bialsky Report at 3-4.)

9

connection with plaintiff's motion for summary judgment—to conclude that the Bialsky and Missun reports are admissible and uncontested. And it makes no difference that the Bialsky Report cites recommendations made by Dr. Colon, who was never disclosed as an expert. (See ECF No. 111-1 at 2.) Dr. Colon was one of Rivera's treating physicians, and the Court has considered him as a percipient witness in this case, his most recent affidavit (which the Court has ignored in ruling on this motion) notwithstanding.

Second, and most importantly, BHIC has introduced absolutely <u>no affirmative evidence</u> to contradict any of plaintiff's expert recommendations or calculations. <u>See</u> <u>Anderson</u>, 477 U.S. at 256 (holding that on summary judgment, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor.") Furthermore, though BHIC argues that "[t]he jury should be permitted to hear the testimony of the plaintiff and plaintiff's experts and weigh their demeanor and credibility and evaluate the evidence," BHIC has failed to proffer even <u>one</u> potential trial argument (or cross-examination strategy) that tends to contradict plaintiff's claimed damages.[9] It is not the Court's job to guess at what BHIC <u>might</u> argue at trial, or to fashion potential lines of cross-examination out of whole cloth (and speculate as to their effectiveness) just to help BHIC defeat summary judgment. And even if the Court did so, that would not

---

[9] In his affidavit dated March 30, 2018, Michael P. De Carlo argues in a conclusory fashion that "[t]here is no medical evidence in the record to support" plaintiff's claimed medical and related needs. But that, of course, is incorrect. The Bialsky Report, which specifically references thirty-six separate medical records, concluded that Rivera was likely to incur the cited medical costs over the course of his life. BHIC has done absolutely nothing to contradict <u>any</u> of the recommendations made in the Bialsky Report (or any other report introduced by plaintiff).

10

change the fact that on summary judgment, a nonmoving party may not "merely assert[] that the jury might, and legally could, disbelieve" certain evidence and/or testimony introduced by the moving party. Anderson, 477 U.S. at 256-57.

If BHIC has specific reasons why any of plaintiff's claimed future expenses are inapplicable or unreasonable, it should have presented those arguments to the Court on summary judgment. But it has not, and the Court is left with a situation in which BHIC has: (1) failed to produce any expert or fact evidence tending to contradict plaintiff's claimed damages; and (2) failed to provide even a preview as to any colorable argument that might be raised at trial or on cross-examination. There is simply no basis for the Court to find a "genuine dispute as to any material fact" sufficient to defeat summary judgment as to plaintiff's asserted Life Care Costs. Accordingly, plaintiff's motion for summary judgment as to the Life Care Costs (in the amount of $6,593,495.00) must be GRANTED.

Plaintiff's asserted Surgical Costs, however, require special consideration. As previously noted, an award of future medical expenses cannot be based on conjecture, surmise, or speculation. See Fiederlein, 56 N.Y.2d at 574. Even though BHIC has done nothing to contradict plaintiff's need for cervical fusion, lumbar fusion, or left knee replacement, plaintiff has also not done enough to demonstrate his affirmative need for such surgeries. Here, the Surgical Costs calculated by Dr. Bialsky are contained outside his designated Life Care Plan, and nowhere in his report does Dr. Bialsky actually state Rivera is likely to need such surgeries (the Life Care Plan, in contrast, was specifically "designed to meet the needs of Daniel

11

Rivera through his Life Expectancy"). Further, Rivera has not directed the Court to any other expert report stating that such surgeries are medically necessary or likely to occur. Accordingly, Rivera's motion for summary judgment as to the Surgical Costs (in the excess amount of $713,776.00) must be DENIED.

The way that this case has been litigated by BHIC is, quite frankly, mystifying. Many, if not all, of the Court's adverse rulings thus far could have been avoided had BHIC actually engaged in expert discovery, properly moved to exclude plaintiff's damages experts, or made a more serious effort to oppose plaintiff's various dispositive motions (particularly this one). But despite the large amount of liability it now faces, BHIC has made the strategic decision to do none of those things.

IV. CONCLUSION

For the reasons stated above, the Court GRANTS plaintiff's motion for summary judgment at ECF No. 104 in the amount of **$6,593,495.00**. The Court DENIES plaintiff's motion for summary judgment as to the excess Surgical Costs (in the amount of $713,776.00).

As a consequence of this Opinion & Order, the only remaining issues in this case are: (1) whether plaintiff is entitled to recover economic damages for the potential surgical interventions; and (2) the quantum of "pain and suffering" damages that plaintiff is entitled to recover. On March 30, 2018, the parties submitted a Joint Pretrial Order ("JPTO") requesting a total of "[s]ix to seven (6-7)

12

days" for trial.  (See ECF No. 113.)  That exceeds the amount of time the Court has available for a trial commencing as currently scheduled on April 9, 2018.

Given that the remaining issues in this case are relatively narrow, and given that in any event they must be tried before a jury, the Court believes this action can and should proceed expeditiously before Magistrate Judge Ona T. Wang. Accordingly, the parties are directed to inform the Court whether they consent to this Court referring trial on all remaining issues to Magistrate Judge Wang at or before the final pretrial conference ("FPTC") currently scheduled for **Wednesday, March 4, 2018 at 1:00 p.m.**  The Court would also refer decision on the pending motions in limine at ECF Nos. 106 and 107.

If the parties do not agree to proceed before Magistrate Judge Wang, they are directed to appear for the currently scheduled FPTC and should be prepared to discuss revised estimates of time for witness testimony on the remaining issues.

The Clerk of Court is directed to close the motions at ECF Nos. 104 and 108.

SO ORDERED.

Dated:    New York, New York
            April 3, 2018

_____
      KATHERINE B. FORREST
      United States District Judge