THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

right to provide all Service Provider Information to The Home Depot, has obtained any and all necessary consents from third parties, and that such information does not violate the rights of any third party. The Home Depot reserves the absolute right and discretion to utilize or discard any Service Provider Information.

9   **Representations and Warranties.**

9.1   Warranty. The Home Depot will warrant to the Customer the workmanship of the Services pursuant to a Customer Contract. Service Provider will warrant its workmanship to The Home Depot in accordance with this Section 9. Service Provider warrants to The Home Depot that Services will be completed in a timely, good and workmanlike manner by an adequate number of qualified employees with suitable training, experience, and skill, and all materials supplied in connection with the Services will be of good quality and new unless otherwise required or permitted by a Purchase Order, that the Services will be free from defects not inherent in the quality required or permitted, and that the Services will conform to the requirements of the Purchase Order and this SPA. Services not conforming to these requirements, including substitutions not properly approved and authorized, shall be considered defective ("Defect") and a breach of Service Provider's warranty obligations.

9.2   Correction Period. In addition to Service Provider's obligations under Section 9.1, if any of Service Provider's Services are found to contain a Defect, meaning Services not in accordance with the requirements of a Purchase Order, this SPA, standards of good workmanship, inferior materials, equipment or goods or unsatisfactory work, services or materials as determined by The Home Depot in its sole and absolute discretion, Service Provider shall correct such Services promptly after receipt of written notice from The Home Depot. Notice under this Section may be provided by The Home Depot to Service provider via email or pursuant to Section 18.12. Service Provider's correction period shall extend to the longer of: (a) one (1) year (five (5) years for roofing) from the date of the Purchase Order completion or the signed Customer Approval, whichever is later; (b) the applicable period specified in the Customer Contract or any warranty supplemental to such Customer Contract; or (c) such period as may be required under Applicable Laws (the "Correction Period"). Service Provider shall correct the Defect without cost to The Home Depot or Customer. If Service Provider fails to remedy said Defect within the time period specified by The Home Depot in its sole discretion or if Customer refuses to allow Service Provider to correct the Defect, The Home Depot shall have the right to correct the Defect at Service Provider's expense. In the event that the Defect arises after termination of this SPA, The Home Depot may elect in its sole discretion to remedy the Defect instead of allowing Service Provider to do so, and Service Provider agrees to reimburse The Home Depot for all associated costs and expenses. The Home Depot shall further have the right to withhold payment to Service Provider and set off any costs or expenses incurred by The Home Depot arising from or related to any Defect. To the extent no further payments are due Service Provider, The Home Depot will invoice Service Provider for such expenses, and Service Provider agrees to pay such invoice within thirty (30) days of the invoice date. The Correction Period established by this Section relates only to the specific obligation of Service Provider to correct the Services, and has no relationship to the time within which the obligation to comply with this SPA or a Purchase Order may be sought to be enforced, nor the time within which proceedings may be commenced to establish Service Provider's liability with respect to the Service Provider's obligations other than specifically to correct the Services.

9.3   Mutual Representations and Warranties. Each Party represents and warrants that as of the Effective Date:

(a)   It is a corporation duly incorporated (or is any other form of legally recognized entity), validly existing, and in good standing under the laws of the jurisdiction in which it is incorporated or otherwise formed; and it is duly qualified and in good standing in each other jurisdiction where the failure to be so qualified and in good standing would have an adverse effect on its ability to perform its obligations under this SPA in accordance with the terms and conditions hereof; and

(b)   Each Party has all necessary corporate power to enter into this SPA and to perform its obligations hereunder; and the execution, delivery, and performance of this SPA by each Party has been duly authorized by all necessary corporate action on the part of each Party.

9.4   Service Provider Representations and Warranties. As of the Effective Date, continuing throughout the Term, and after termination during its continuing, surviving obligations pursuant to this SPA, Service Provider further represents and warrants to The Home Depot the following:

(a)   Service Provider is duly licensed, authorized, and qualified to do business in each jurisdiction in which a license, authorization, or qualification is required for the transaction of business in fulfillment of Service Provider's obligations under this SPA;

(b)   Service Provider is not a party to any outstanding litigation, arbitration, claim, or other dispute that, if decided unfavorably to it, would reasonably be expected to have a material adverse effect on Service Provider's ability to fulfill its obligations under this SPA;

9

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

(c) Neither Service Provider, nor any Co-Signor, is a party to any contract, agreement, mortgage, note, deed, lease or similar understanding with any third party that would have an adverse effect on the ability of Service Provider to fulfill its obligations under this SPA;

(d) To Service Provider's knowledge, no non-public fact or circumstance exists that could result in an adverse effect on Service Provider or The Home Depot's public image, the public's perception of Service Provider or The Home Depot, or The Home Depot's brands or marks;

(e) Service Provider is financially solvent, has the ability to perform its obligations hereunder, and will perform its obligations in a manner that complies with Applicable Laws and its business, activities, facilities, and the provision of Services hereunder, including laws of any country or jurisdiction from which or through which Service Provider provides the Services or obtains resources or personnel to do so; and

(f) Service Provider and its Subcontractors shall comply with all Applicable Laws regarding the security and protection of the privacy and personal information of Customers, as more fully provided in the SPRG.

9.5   Service Provider's warranties contained in this Section 9 are in addition to any other warranties provided by Service Provider or required by Applicable Laws or this SPA. Service Provider's warranty obligations shall survive termination or expiration of this SPA.

10  Indemnification.

10.1   TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAWS, SERVICE PROVIDER SHALL DEFEND, INDEMNIFY, AND HOLD THE HOME DEPOT AND THE CUSTOMER, AND ANY OF THEIR RESPECTIVE PAST AND PRESENT OWNERS, OFFICERS, SHAREHOLDERS, AFFILIATES, PARENTS, SUBSIDIARIES, ASSOCIATES, DIRECTORS, EMPLOYEES, SUBCONTRACTORS, AND AGENTS (COLLECTIVELY "INDEMNITEES") HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, ALLEGATIONS, LOSSES, LIABILITIES, CAUSES OF ACTION, LAWSUITS, PROCEEDINGS, JUDGMENTS, FINES, PENALTIES, DAMAGES, COSTS, AND EXPENSES, INCLUDING ATTORNEY, EXPERT, AND CONSULTANT FEES AND LEGAL EXPENSES FOR PERSONAL INJURY (INCLUDING DEATH) AND PROPERTY DAMAGE RELATING TO OR ARISING OUT OF ANY SERVICES PROVIDED BY SERVICE PROVIDER OR ANY OF ITS SUBCONTRACTORS, EMPLOYEES, OFFICERS, AGENTS, OR REPRESENTATIVES (THE "INDEMNITORS"); PROVIDED, HOWEVER, THE INDEMNITORS SHALL HAVE NO OBLIGATION TO INDEMNIFY, DEFEND OR HOLD HARMLESS THE INDEMNITEES IN THE EVENT THAT SUCH CLAIMS, DAMAGES, LOSSES, AND EXPENSES ARE CAUSED BY THE SOLE, ACTIVE NEGLIGENCE OF AN INDEMNITEE.

10.2   BY WAY OF EXAMPLE AND NOT LIMITATION, SERVICE PROVIDER SHALL DEFEND, INDEMNIFY, AND HOLD THE INDEMNITEES HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, ALLEGATIONS, LOSSES, LIABILITIES, CAUSES OF ACTION, LAWSUITS, PROCEEDINGS, JUDGMENTS, CIVIL PENALTIES, FINES, PENALTIES, DAMAGES, COSTS, AND EXPENSES, INCLUDING ATTORNEY, EXPERT, AND CONSULTANT FEES AND LEGAL EXPENSES, TO THE EXTENT ARISING OUT OF OR RELATING TO THE FOLLOWING:

(a) THE INACCURACY, UNTRUTHFULNESS, OR BREACH OF ANY REPRESENTATION, COVENANT, WARRANTY, OR ANY OTHER AGREEMENT SET FORTH IN THIS SPA BY SERVICE PROVIDER, ITS EMPLOYEES, AGENTS, REPRESENTATIVES AND/OR ANY OF ITS SUBCONTRACTORS;

(b) PERSONAL INJURY (INCLUDING WITHOUT LIMITATION, DEATH AND EMOTIONAL DISTRESS OR INJURY) ARISING OUT OF OR RELATING TO ACTS OR OMISSIONS OF SERVICE PROVIDER, ITS EMPLOYEES, AGENTS, REPRESENTATIVES AND/OR ANY OF ITS SUBCONTRACTORS;

(c) PROPERTY LOSS OR DAMAGE ARISING OUT OF OR RELATING TO ACTS OR OMISSIONS OF SERVICE PROVIDER, ITS EMPLOYEES, AGENTS, REPRESENTATIVES AND/OR ANY OF ITS SUBCONTRACTORS;

(d) NONCOMPLIANCE BY SERVICE PROVIDER, OR ANY OWNER, OFFICER, SHAREHOLDER, PARENT, AFFILIATE, SUBSIDIARY, ASSOCIATE, DIRECTOR, EMPLOYEE, SUBCONTRACTOR, AGENT, REPRESENTATIVE, AND/OR EMPLOYEES THEREOF, WITH ANY APPLICABLE LAWS;

(e) ANY HAZARDOUS MATERIAL (AS THAT TERM IS DEFINED BY APPLICABLE LAWS) BROUGHT TO THE CUSTOMER'S PROPERTY OR RELEASED BY THE NEGLIGENCE OF SERVICE PROVIDER, ITS EMPLOYEES, AGENTS, REPRESENTATIVES OR ITS SUBCONTRACTORS;

**THE HOME DEPOT**
**MASTER SERVICE PROVIDER AGREEMENT**

(f) INFRINGEMENT OF THE INTELLECTUAL PROPERTY, PROPRIETARY, OR OTHER RIGHTS OF ANY THIRD PARTY BY SERVICE PROVIDER, ITS EMPLOYEES, AGENTS, REPRESENTATIVES AND/OR ANY OF ITS SUBCONTRACTORS;

(g) THE FAILURE OF SERVICE PROVIDER TO PERFORM INSPECTIONS OR OBTAIN AND MAINTAIN LICENSES OR PERMITS REQUIRED BY APPLICABLE LAWS;

(h) THE SUPPLY OF FALSE OR INACCURATE BACKGROUND INFORMATION OR THE GATHERING AND/OR USE OF BACKGROUND INVESTIGATION INFORMATION;

(i) TAXES ASSERTED OR LEVIED AGAINST THE HOME DEPOT RESULTING FROM SERVICES THAT ARE THE RESPONSIBILITY OF THE SERVICE PROVIDER, ITS EMPLOYEES, AGENTS, REPRESENTATIVES OR ITS SUBCONTRACTORS;

(j) THE FAILURE OF SERVICE PROVIDER TO COMPLY WITH APPLICABLE LAWS RELATING TO IMMIGRATION;

(k) THE UNAUTHORIZED DISCLOSURE OF CONFIDENTIAL INFORMATION BY SERVICE PROVIDER, ITS EMPLOYEES, AGENTS, REPRESENTATIVES AND/OR ANY OF ITS SUBCONTRACTORS;

(l) ANY PROPERTY ENCUMBRANCE RESULTING FROM ANY ALLEGED FAILURE OF SERVICE PROVIDER, ITS EMPLOYEES, AGENTS, REPRESENTATIVES OR ANY OF ITS SUBCONTRACTORS, TO PAY FOR ANY PORTION OF THE SERVICES, WHETHER VALID OR NOT;

(m) ANY MATERIAL BREACH OF THE SPA OR A PURCHASE ORDER; OR

(n) COMPENSATION OR BENEFITS OF ANY KIND, INCLUDING BASE WAGES, BONUSES, HEALTH AND WELFARE BENEFITS (BY AGREEMENT, PLAN, STATUTE OR OTHERWISE), PENSION BENEFITS, OR SEVERANCE OR TERMINATION PAY, BY OR ON BEHALF OF SERVICE PROVIDER OR ANY OWNER, OFFICER, SHAREHOLDER, PARTNER, MEMBER, PARENT, EMPLOYEE OR SUBCONTRACTOR, CLAIMING AN EMPLOYMENT OR OTHER RELATIONSHIP WITH SERVICE PROVIDER, ITS EMPLOYEES, AGENTS, REPRESENTATIVES AND/OR THE HOME DEPOT.

10.3 The Service Provider hereby agrees that a sum of not less than Ten Dollars and No/Cents ($10.00) of the cost of the first Purchase Order agreed to by the Parties (if any Purchase Orders result from this SPA) shall constitute separate consideration for Service Provider's Indemnity obligations. Such amount shall be deemed paid out of the first payment paid by The Home Depot hereunder.

10.4 It is agreed that with respect to any legal limitations resulting from Applicable Laws now or hereafter in effect and affecting the validity and enforceability of the indemnification obligation under Section 10.1 and/or Section 10.2, such legal limitations are made a part of the indemnification obligation to the minimum extent necessary to bring Section 10.1 and/or Section 10.2 into conformity with the requirements of such limitations, and as so modified, the indemnification obligation shall continue in full force and effect.

10.5 The Service Provider's obligations under Sections 10.1 and 10.2 shall not be limited, waived, or excused by the payment of any damages, benefits, expenses, or compensation under any employee death or disability statute, including worker's compensation, employer's liability, employee benefit, or other such act.

10.6 Right to Assume Defense. With respect to any third party claims for which Indemnitees are entitled to Indemnification from Service Provider, Indemnitees reserve the absolute right to assume the defense of any such third party claim, and Indemnitors shall reimburse any and all costs and expenses (including attorney, expert, and consultant fees and legal expenses) incurred thereafter by the Indemnitees. Indemnitees shall have the right to use any funds due Service Provider to pay for the obligations of Service Provider under Section 10.

10.7 Defense of Claims. Service Provider's duty to defend arises immediately upon the presentation of a third party claim to Service Provider. With respect to any third party claim for which Indemnification is sought under this Section 10, Indemnitees shall provide prompt written notice of the third party claim to Service Provider; and Service Provider shall provide control of the defense of such third party claim if demanded by Indemnitees and cooperate with the Indemnitees in the defense of such third party claim. Indemnitees have the right, but not the obligation, to participate as they deem necessary in the handling, adjustment, or defense of any third party claim. Service Provider expressly agrees to do the following in connection with the conduct of the defense of any third party claim:

(a) Inform the Indemnitees in writing about all material information pertaining to a third party claim;

11

## THE HOME DEPOT
## MASTER SERVICE PROVIDER AGREEMENT

    (b)    Inform the Indemnitees in writing of the date of any mediation, arbitration, trial, or settlement conference relating to a third party claim as soon as possible after it receives such information;

    (c)    Choose defense counsel that is reasonably satisfactory to the Indemnitees;

    (d)    Provide Indemnitees with copies of all discovery requests within five (5) days of Service Provider's receipt of same;

    (e)    Provide the Indemnitees with copies of all pleadings, discovery responses, settlement proposals and/or any other material documents relating to the third party claim before finalizing or filing to allow the Indemnitees the opportunity to provide comments; and

    (f)    Inform the Indemnitees of the outcome of any mediation, arbitration, motion, trial, settlement, or any other matter from which appeal rights could arise.

10.8    No Settlement Without Consent. Service Provider will not enter into any settlement or compromise of a claim without first obtaining the Indemnitees' prior written consent.

10.9    Indemnification In Addition to Insurance. The presence or absence and/or applicability or non-applicability of Service Provider's insurance coverage does not in any way limit Service Provider's obligation to indemnify, defend, and hold the Indemnitees harmless pursuant to the terms of this Section 10.

10.10    Conflicts of Interest. If counsel retained by the Service Provider has a conflict of interest or such conflict of interest arises in connection with a third party claim, Indemnitees shall be entitled to retain separate counsel, at Service Provider's expense, to defend Indemnitees. Service Provider shall not seek to disqualify counsel due to an alleged conflict of interest where a single counsel represents multiple Indemnitees in connection with a third party claim, and Service Provider hereby waives any alleged conflict of interest allegations relating to same.

## 11 Insurance.

11.1    Insurance Coverage. Service Provider will procure and maintain at all times (1) commercial general liability, (2) automobile liability, and (3) workers' compensation insurance with coverage amounts on an occurrence basis containing limits of no less than the amounts specified for the Services in the Insurance Requirements Section of the applicable SPRG. This insurance will not include any exceptions and/or exclusions that limit or minimize the coverages for the Services. Products-completed operations endorsements are required. Workers' compensation insurance is required in every state in which Service Provider performs Services. Service Provider shall cause its Subcontractors to provide, pay for, and maintain at all times commercial general liability, automobile liability, and workers compensation insurance with commercially reasonable limits and coverages for their respective scope of Services.

11.2    Additional Insureds, Certificate Holders, and Certificate of Insurance. All insurance furnished by or through Service Provider, except workers' compensation insurance, shall provide defense coverage and additional insured status (through an endorsement to the insured's policy) to Home Depot U.S.A., Inc., THD At-Home Services, Inc., and U.S. Remodelers, Inc., and any other person or entity identified by The Home Depot (the "Additional Insureds") and must contain the following language exactly as provided: "Home Depot U.S.A., Inc., and its parents, affiliates, and subsidiaries are added as additional insureds." Any insurance held by an Additional Insured that applies or may apply to any loss covered by any general liability insurance furnished by or through Service Provider shall be deemed excess or contingent coverage, and not be a basis to reduce any coverage requirements under the SPA to the fullest extent permitted by Service Provider's insurance. Insurance certificates and policy endorsements shall list "Home Depot U.S.A., Inc." as the certificate holder. The certificate of insurance shall indicate the nature and amount of any self-insured retentions or deductibles that may apply to coverage. The Home Depot's receipt of any certificate of insurance, or any failure to confirm or object to any coverage or limits therein, shall not waive, excuse, modify or otherwise accept Service Provider's compliance with the insurance requirements of the SPA.

11.3    Service Provider does not rely upon and The Home Depot does not represent, warrant, or guarantee that the minimum limits or coverages required by the SPA are adequate to protect the Service Provider or its Subcontractors from any or all insurable risks or losses that may occur in connection with the Services.

11.4    Service Provider shall not violate or permit any violations of any conditions or terms of any insurance policy provided by Service Provider.

11.5    Service Provider shall furnish The Home Depot and Customer with copies of all available insurance policies, endorsements, and supplements within ten (10) days of The Home Depot's request therefore.

11.6    Risk of Loss. As of the Effective Date and continuing throughout the Term, each Party to this SPA will be responsible for risk of physical or actual loss of and damage to any property, equipment, merchandise, or any other items or information in its possession or under its control. As between the Service Provider and

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

Customer, the risk of loss shall not pass to Customer until the Services have been delivered and accepted by Customer. Risk of loss shall revert back to Service Provider upon Customer's rejection of defective or non-conforming Services, even if stored at property owned by Customer.

12 Limitations of Liability.

12.1  LIABILITY FOR ACTUAL DAMAGES ONLY. EXCEPT IN CONNECTION WITH SERVICE PROVIDER'S BREACH OF CONFIDENTIALITY, FRAUD, GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR ANY INDEMNIFICATION OBLIGATION OWED HEREIN BY SERVICE PROVIDER, EACH PARTY HEREBY WAIVES ANY RIGHT TO CLAIM AGAINST THE OTHER PARTY FOR INCIDENTAL, INDIRECT, EXEMPLARY, PUNITIVE, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST OPPORTUNITIES, LOST PROFITS FROM THIS TRANSACTION OR ANY OTHER TRANSACTION NOT DIRECTLY RELATED TO SPA, OR LOST SAVINGS, ARISING OUT OF OR RELATING TO ACTS OR OMISSIONS UNDER THIS SPA, REGARDLESS OF THE FORM OF ACTION, AND EVEN IF REASONABLY FORESEEABLE OR IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

12.2  THE HOME DEPOT'S MAXIMUM LIABILITY. THE HOME DEPOT'S MAXIMUM LIABILITY TO SERVICE PROVIDER UNDER THIS SPA (REGARDLESS OF CAUSE OR FORM OF ACTION, WHETHER IN CONTRACT, TORT, OR OTHERWISE) WILL BE LIMITED TO THE TOTAL UNDISPUTED AMOUNT OWED SERVICE PROVIDER BY THE HOME DEPOT IN PAYMENT FOR SERVICE PROVIDER'S FULFILLMENT OF ITS OBLIGATIONS UNDER THIS SPA. THE HOME DEPOT'S LIABILITY UNDER THIS SPA SHALL TERMINATE ONE (1) YEAR FROM THE OCCURRENCE OF THE EVENT GIVING RISE TO A CLAIM, AND SERVICE PROVIDER AGREES TO BRING ANY TYPE OF CLAIM AGAINST THE HOME DEPOT WITHIN THAT ONE (1) YEAR TIME PERIOD. THE SERVICE PROVIDER HEREBY WAIVES ANY RIGHT UNDER ANY STATUTE OF LIMITATIONS TO BRING ANY CLAIM AFTER SUCH ONE (1) YEAR TIME PERIOD.

12.3  CLAIMS AGAINST THE HOME DEPOT ONLY. SERVICE PROVIDER AGREES THAT ITS SOLE RECOURSE FOR CLAIMS ARISING FROM OR RELATING TO THIS SPA AND/OR ANY TASKS OR PURCHASE ORDERS WILL BE AGAINST ONLY THE HOME DEPOT OR THE HOME DEPOT'S SUCCESSORS AND ASSIGNS. IN NO EVENT WILL THE SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, OR CUSTOMERS OF THE HOME DEPOT AND ITS AFFILIATES BE PERSONALLY LIABLE OR BE NAMED AS PARTIES IN ANY ACTION BY SERVICE PROVIDER. SERVICE PROVIDER FURTHER AGREES THAT IT WILL STIPULATE TO A DISMISSAL WITH PREJUDICE OF ANY CLAIMS BROUGHT CONTRARY TO THIS SECTION.

12.4  Third Party Liabilities. Nothing in this Section 12 will be construed to limit a Party's right to recover any damages that such Party is obligated to pay to any third party.

13 Events of Default. The occurrence of any of the following will be deemed an "Event of Default":

13.1  Compliance. The failure of Service Provider to: (i) comply with any material term or condition of this SPA; (ii) make payment or reimbursement of funds owed The Home Depot; (iii) cease conduct that The Home Depot deems harmful to its general business interests or public image, even if unrelated to Service Provider's obligations under the SPA; or (iv) complete a Task or Purchase Order, which failure continues in effect or has otherwise not been remedied to The Home Depot's satisfaction within a reasonable time period specified by The Home Depot in its sole discretion.

13.2  Corrections. The failure of Service Provider to (i) correct rejected, defective, or nonconforming workmanship, or (ii) repair or replace defective or nonconforming products or materials sourced, furnished, manufactured, or fabricated by Service Provider, within the time period specified by The Home Depot in its sole discretion.

13.3  Payment to Others. The failure of Service Provider to pay any of its Subcontractors which failure results in the actual or threatened placement of an Encumbrance on or against any property or account of The Home Depot or any Customer.

13.4  Liens. The failure of Service Provider to satisfy, discharge, or release any Encumbrance filed and/or recorded in connection with the Services performed by Service Provider or its employees, agents, or subcontractors, on or against any property of The Home Depot or any Customer within five (5) business days of the date that Service Provider was first made aware of such.

13.5  Creditors and Bankruptcy. (i) The making by Service Provider of an assignment for the benefit of creditors; (ii) the institution of a judicial proceeding for the reorganization, liquidation, or involuntary dissolution of Service Provider or for its adjudication as bankrupt or insolvent; (iii) the appointment of a receiver, trustee, or liquidator of or for the property of Service Provider whereupon the receiver, trustee, or liquidator is not removed within thirty (30) calendar days of The Home Depot's written request; or (iv) the

13

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

taking advantage by Service Provider of any debtor relief proceedings, whereby the liabilities or obligations of Service Provider are or are proposed to be reduced or payment thereof deferred.

## 14 Remedies for Breach or Events of Default.

14.1   Opportunity to Cure. If Service Provider commits an Event of Default, The Home Depot will provide written notice of such and an opportunity to cure. Notice under Sections 13 and 14 may be provided by The Home Depot via email or pursuant to Section 18.12 below. The time period for cure of an Event of Default under any provision of Section 13 shall be the time period specified by The Home Depot in its sole discretion. In the event that The Home Depot does not specify a time period for cure of a breach or Event of Default, Service Provider must cure the breach or Event of Default within thirty (30) calendar days of the date of receipt of written notice from The Home Depot. In the event that a Customer refuses to allow Service Provider an opportunity to cure Services, including without limitation, (a) rejected, defective, or nonconforming workmanship, or (b) defective or nonconforming products or materials, Service Provider waives any opportunity to cure, and The Home Depot may proceed with remedies under Section 14.2.

14.2   Failure to Cure. If Service Provider fails to cure within the applicable cure time period, The Home Depot may exercise one or more of the following remedies without any liability to Service Provider:

(a)   Reject, in whole or in part, Service Provider's submission for payment with respect to a Task or Purchase Order under this SPA, or nullify in whole or in part a previously approved submission for payment and receive reimbursement of payments relating to Services that were not cured;

(b)   Withhold from any sums due or that thereafter become due Service Provider the amount deemed necessary by The Home Depot to protect The Home Depot from actual or reasonably foreseeable damages resulting from the breach or Event of Default;

(c)   Remove Service Provider from any or all Programs, stores, districts, regions, markets, territories, and/or areas until Service Provider is no longer in breach of this SPA or the Event of Default is cured;

(d)   Retain a third party to cure the breach or end the Event of Default at Service Provider's sole expense, which expense The Home Depot may offset against any sums due or that thereafter become due Service Provider or otherwise recover from Service Provider; or

(e)   Terminate this SPA immediately upon written notice to Service Provider.

14.3   Cure of Remedies. Service Provider's cure of any breach or Event of Default under this SPA must be done in a manner satisfactory to both The Home Depot and the impacted Customer(s).

14.4   Event of Default after Expiration of Term. If an Event of Default occurs after termination or expiration of the Term, The Home Depot is under no obligation to provide an opportunity to cure to Service Provider, and The Home Depot may proceed immediately with one or more of the applicable remedies in Section 14.2 and/or pursue any remedies available at law or equity.

## 15 Termination.

15.1   Breach or Default. This SPA may be terminated for cause (i.e., for breach or for the occurrence of an Event of Default) by The Home Depot immediately upon expiration of the applicable cure time period, if any. If Service Provider commits the same or a substantially similar breach of this SPA, or if there is an occurrence of the same or a substantially similar Event of Default within six (6) months following the date that Service Provider cures a previous breach or Event of Default, The Home Depot will have the right to immediately terminate this SPA.

15.2   For Convenience. The Home Depot may terminate all or a portion of this SPA at any time for its own convenience and without cause upon giving written notice to Service Provider. The Home Depot's provision of notice shall state the time period after which the termination becomes effective, and Service Provider agrees to effect termination in accordance with the terms of such notice. If the notice fails to identify a specific time for termination, then termination shall be effective ninety (90) days from the date of giving notice.

15.3   Service Provider's Obligations upon Termination. Upon receipt of The Home Depot's written notice to terminate for convenience or the expiration of the Term of this SPA, Service Provider must:

(a)   Complete all or any portion of the Services in accordance with the time frame provided in the notice given by The Home Depot or within ninety (90) days of notice in the event that the notice fails to state a time for completion of the specified Services, unless The Home Depot, in its sole discretion, directs the Service Provider to stop all Services and remove from the Customer's property all Service Provider employees, Subcontractors, tools, and equipment;

14

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

(b) Immediately cancel or terminate all applicable Subcontractor agreements at Service Provider's cost, unless The Home Depot, in its sole discretion, provides for additional time to complete Purchase Orders, in which case all such agreements shall be canceled at Service Provider's cost upon completion of the applicable Purchase Orders.

(c) Pay to The Home Depot all sums then due within thirty (30) calendar days after termination or expiration of the SPA;

(d) Pay to The Home Depot any sum that becomes due after termination or expiration of the SPA within thirty (30) calendar days after the date it accrues;

(e) Return to The Home Depot any and all property of The Home Depot, including without limitation any The Home Depot Confidential Information, issued badges, and/or Customer information in Service Provider's possession, control or custody within thirty (30) calendar days after termination or expiration of the SPA;

(f) Stop making any representations of any nature that Service Provider is, or at any time was, in a business relationship with The Home Depot, except as reasonably necessary to fulfill any surviving obligations under this SPA;

(g) Retain business records pertaining to Service Provider's compliance with Applicable Laws for a period of at least six (6) years following the conclusion of this SPA, or the amount of time required by the applicable statutes of limitations and repose for Claims relating to compliance with Applicable Laws that arise following the conclusion this SPA;

(h) Timely satisfy all obligations under this SPA still in effect.

15.4 The Home Depot's Obligations upon Termination. Upon termination or expiration of this SPA for any reason, The Home Depot must:

(a) Pay all undisputed sums due Service Provider that are not otherwise subject to any offset rights provided in this SPA;

(b) Return to Service Provider any and all property of Service Provider in The Home Depot's possession or control within thirty (30) calendar days after termination or expiration of the SPA.

15.5 Retainage. Notwithstanding the obligations set forth herein, The Home Depot may withhold any payments due Service Provider for ninety (90) calendar days after termination to offset any amounts which are due or may become due from Service Provider to The Home Depot.

## 16 Title and Risk of Loss.

Service Provider warrants that title to any materials, services, goods, equipment or other items that comprise any part of the Services (the "Materials") shall pass from Service Provider to Customer free and clear of any lien, claim or encumbrance upon the earlier of (1) The Home Depot's partial or full payment to Service Provider for such Materials; or (2) delivery of the Materials to Customer's location. Notwithstanding the foregoing, risk of loss shall not pass from Service Provider to Customer until such Materials are delivered and accepted by Customer. Shipment shall be F.O.B. Service Provider's delivery location, unless otherwise noted in the Order. Risk of loss shall revert back to Service Provider upon Customer's rejection of defective or non-conforming Materials, even if stored at Customer's designated delivery location.

## 17 Dispute Resolution.

17.1 Non-Binding Mediation. All disputes arising out of or relating to this SPA shall be initially subject to non-binding mediation to be administered by a mediation agency selected by mutual agreement of the parties, unless such condition is waived in writing by The Home Depot. The Parties will have ten (10) calendar days in which to agree mutually upon a professional mediator. If the Party that receives the request for mediation is not agreeable to pursuing mediation as a means of resolving the dispute, or if the Parties cannot agree upon a professional mediator, or if mediation fails to result in a resolution of the dispute, then any Party may elect to proceed with litigation or arbitration as provided in Section 17.2 below. The mediation will, unless otherwise agreed in writing by the Parties, be held in Atlanta, Georgia, and it will be conducted over a period of time not to exceed two (2) business days. The Parties will share equally the costs of any such mediation.

17.2 Litigation or Arbitration. If disputes are not resolved by mediation, they shall be decided by litigation in either the Superior Court of Cobb County, Georgia, or the United States District Court for the Northern District of Georgia, Atlanta Division. Service Provider hereby consents to the exclusive jurisdiction of these courts. In lieu of litigation, either Service Provider or The Home Depot may elect to have the dispute resolved through binding arbitration to be administered by the American Arbitration Association ("AAA") in accordance with the AAA's Rules applicable to the resolution of commercial disputes then in effect. The locale for the arbitration will be Atlanta, Georgia. The arbitrator(s) shall decide each dispute based upon the evidence presented and the Applicable Laws. The arbitrator(s) shall issue a written decision, setting out each specific finding of fact and conclusion of law relevant to their decision on each dispute. The award

15

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

rendered by the arbitrator(s) is final, and judgment may be entered upon it in accordance with Applicable Law in any court of competent jurisdiction. The Parties will share equally the costs of any arbitration.

17.3  If either Service Provider or The Home Depot fails to comply with the other's election of arbitration in lieu of litigation, the non-compliant Party shall be liable to the electing party for all expenses incurred as a result of such failure, including, but not limited to, attorneys' fees incurred preparing and filing responsive pleading(s), responding to discovery, and obtaining an order compelling compliance with the election.

17.4  Third Party Actions. Sections 17.1, 17.2, and 17.3 shall not apply if either Party asserts a claim for contribution or indemnification against the other in relation to a litigation or arbitration brought by a third party, who neither consents to nor has an obligation to consent to either mediate or arbitrate such litigation, or to consolidate such mediation or arbitration with a mediation or arbitration between The Home Depot and Service Provider.

17.5  Attorneys' Fees. If a Party prevails in any legal or equitable action against the other Party, the other Party will pay the prevailing Party's costs and expenses, including reasonable attorneys' fees. The prevailing Party shall be the Party whose last written offer of settlement is closest to the actual judgment reached by the arbitrator or the court after a decision is made on the underlying action.

17.6  WAIVER OF CLASS, COLLECTIVE, AND REPRESENTATIVE ACTIONS. SERVICE PROVIDER AND THE HOME DEPOT HEREBY WAIVE ANY RIGHT FOR ANY DISPUTE ARISING OUT OF, OR RELATING TO THIS SPA OR ITS BREACH, INCLUDING ANY AND ALL STATUTORY CLAIMS AND CLAIMS REGARDING THE RELATIONSHIP BETWEEN SERVICE PROVIDER AND THE HOME DEPOT, TO BE BROUGHT, DECIDED, OR ARBITRATED AS A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION. THE ARBITRATOR IS WITHOUT AUTHORITY OR JURISDICTION TO ARBITRATE ANY SUCH DISPUTE AS A CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION OR TO COMBINE MORE THAN ONE INDIVIDUAL'S CLAIM OR CLAIMS INTO A SINGLE CASE. SERVICE PROVIDER AND THE HOME DEPOT FURTHER WAIVE ANY RIGHT TO PARTICIPATE IN OR RECEIVE MONEY OR ANY OTHER RELIEF FROM ANY CLASS, COLLECTIVE, OR REPRESENTATIVE PROCEEDING PERTAINING TO, ARISING OUT OF, OR RELATING TO THIS SPA.

18  Miscellaneous.

18.1  The Home Depot Affiliates. All rights and obligations granted under this SPA to The Home Depot will extend to The Home Depot's affiliates, which currently exist or are later acquired that (i) control, (ii) are controlled by, or (iii) are under common control with The Home Depot ("Affiliates"). An entity will be deemed to control another entity if it has the power to direct or cause the direction of the management or policies of such entity, whether through the ownership or voting securities, by contract, or otherwise.

18.2  Pro Xtra Program Enrollment. Service Provider acknowledges and agrees that this SPA includes automatic enrollment in The Home Depot's Pro Xtra Program, which provides potential rewards and recognition to Service Provider as a professional customer of The Home Depot. Service Provider agrees to the Pro Xtra Program rules, which The Home Depot may modify from time to time, in its own discretion without prior notice, and are available at www.homedepot.com/proloyalty. The Pro Xtra Program rules govern Service Provider's participation in the Pro Xtra Program and are not incorporated herein and do not affect any of the terms of this SPA. The terms of this SPA likewise do not alter the Pro Xtra Program rules.

18.3  Promotions. The Home Depot may desire and shall have the right to implement storewide or targeted promotions or purchase incentives relating to the Services at it sole and absolute discretion.

18.4  Assignment; Change of Ownership or Control. Service Provider may not assign, subcontract, transfer, pledge, sublicense, or encumber this SPA or any interest under this SPA without The Home Depot's prior written consent, which shall be provided at The Home Depot's sole discretion. Any assignment by Service Provider without the prior written consent of The Home Depot will be null and void. The Home Depot may assign or transfer this SPA to a parent, subsidiary, or affiliate of The Home Depot upon ten (10) business days' notice to Service Provider. Any permitted assignment will be binding upon and inure to the benefit of the Parties and their permitted successors and assigns.

18.5  Waiver. No provision of this SPA may be waived unless in writing, signed by the waiving Party. The failure of a Party to exercise any of its rights, remedies, or options under this SPA, or the failure of a Party to insist upon another Party's compliance with any provision of this SPA, will not constitute a waiver of any Party's right to demand compliance. No action or course of dealing of the Parties at variance with the terms and conditions of this SPA will constitute any waiver of a Party's right to demand exact compliance with the terms of this SPA.

18.6  Amendments. With the exception of modifications to the SPRG, which Service Provider expressly agrees may be updated by The Home Depot pursuant to Section 3.7, This SPA may be amended, modified, or supplemented only if The Home Depot's SPA Amendment form, or an amendment form approved in

16

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

writing by The Home Depot's counsel, is executed by all Parties. Any Tasks or Purchase Orders issued may be amended only in accordance with Section 1.4.

18.7    Penalties. Service Provider acknowledges that The Home Depot may enforce and pay any penalties charged or assessed against Service Provider by any licensing board, or any other governmental or quasi-governmental agency, in connection with the Services provided by Service Provider. Further, The Home Depot has the right to enforce and deduct from any funds due or that become due Service Provider the sum of any penalties imposed for violations of Service Provider's obligations under this SPA, as specified in more detail in the SPRG. The Home Depot may withhold payments owed or issue a chargeback to Service Provider to collect reimbursement.

18.8    Further Assurances. Each Party will provide such further documents or instruments required by the other Party as may be reasonably necessary, appropriate, or desirable to give effect to this SPA and to carry out its provisions.

18.9    Severability. The invalidity or unenforceability of any provision or any portion of any provision of this SPA does not impair the validity or enforceability of any other provision or the remaining portions of any such provision. Section headings are for reference purposes only and do not affect in any way the meaning or interpretation of this SPA.

18.10    Books and Records; Audits. Service Provider must maintain its books and records in accordance with commercially reasonable business standards. The Home Depot or its designated agent(s) may during the Term and for a period of three (3) years following the termination or expiration of this SPA, audit during normal business hours with our without advance notice all books and records of Service Provider that are of direct relevance to Service Provider's fulfillment of its obligations under this SPA. Service Provider's authorized representative(s) or designated agent(s) may be present during such audit.

18.11    Cumulative Remedies. Except as otherwise expressly limited or provided herein, all rights, privileges, and remedies conferred under this SPA upon the Parties will be cumulative and are in addition to any rights, powers, privileges, and remedies available to the Parties by statute or otherwise at law or in equity.

18.12    Notices. Unless specified otherwise herein, any notices or other communication required to be in writing under this SPA must be (1) personally delivered; (2) sent by certified mail, postage prepaid; or (3) delivered by overnight courier, to the other Party unless otherwise provided herein. Notices are deemed to be served and given upon receipt. Notice to Service Provider shall be provided via email pursuant to Sections 13 and 14 above or at the address listed on the first page of this SPA, unless such address is changed in writing through an executed amendment. Notice to The Home Depot shall be provided as follows:

If to Home Depot U.S.A., Inc.:

    Home Depot U.S.A., Inc.
    Attn: Services Operations – Compliance Manager
    2690 Cumberland Parkway, 3rd Floor
    Atlanta, GA 30339

If to THD At-Home Services, Inc.:

    THD At-Home Services, Inc.
    Attn: Services Operations – Compliance Manager
    2690 Cumberland Parkway, 3rd Floor
    Atlanta, GA 30339

If to U.S. Remodelers, Inc.:

    U.S. Remodelers, Inc.
    Attn: Services Operations – Compliance Manager
    2690 Cumberland Parkway, 3rd Floor
    Atlanta, GA 30339

In each instance with a copy to:

    Home Depot U.S.A., Inc.
    Attn: Assistant General Counsel - Services
    2455 Paces Ferry Road NW, C-20
    Atlanta, GA 30339

THE HOME DEPOT
MASTER SERVICE PROVIDER AGREEMENT

18.13  Survival. Upon termination or expiration of this SPA, all provisions continue in effect as to disputed matters until fully resolved, as well as all provisions that by their nature continue and survive termination or expiration of this SPA, including without limitation, Service Provider's indemnity and warranty obligations under this SPA and the following Sections: 1.4, 1.5, 2.2, 3.1, 3.2, 4.1, 4.2, 4.3, 4.4, 4.5, 4.6, 4.7, 4.8, 4.9, 4.10, 4.11, 4.12, 4.16, 5.4, 5.5, 6.1, 7.1, 7.2, 7.3, 7.5, 7.6, 7.7, 8, 9, 10, 11.1, 11.2, 11.4, 11.5, 11.6, 12, 13.1, 13.2, 13.3, 13.4, 14.2, 14.4, 15.3, 15.4, 15.5, 16, 17, 18.5, 18.7, 18.9, 18.12, 18.13, and 18.7.

18.14  Force Majeure. No Party will be in breach of this SPA if performance of its obligations or attempts to cure any breach or end an Event of Default are delayed or prevented by reason of any act of nature, fire, natural disaster, failure of electrical power systems, or any other act or condition beyond the reasonable control of the Party affected ("Event of Force Majeure"), provided that the affected Party makes commercially reasonable efforts to avoid or eliminate the causes of its nonperformance and continues performance immediately after such causes are eliminated. Notwithstanding this Section, any delay that exceeds sixty (60) calendar days will entitle the Party whose performance is not affected by the relevant Event of Force Majeure to terminate this SPA upon not less than thirty (30) calendar days advance written notice to the other Party.

18.15  Entire Agreement. This SPA, which also includes Exhibit A, the SPRG, and any contemporaneously and subsequently executed amendments, constitutes the entire agreement and understanding between the Parties and merges and supersedes any and all prior oral or written discussions, negotiations, agreements, and understandings related hereto. Any previous negotiations, agreements, or representations that have been made or relied upon that are not expressly set forth will have no force or effect. Notwithstanding the foregoing, the parties' most recent Exhibit A/pricing agreement, current store and/or market assignments, and service level agreement shall survive execution of this SPA.

18.16  Counterparts. This SPA may be executed in one or more counterparts and by facsimile, electronic mail, or by electronic means, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

18.17  Choice of Law. This SPA shall be governed and interpreted in accordance with the laws of the State of Georgia, which shall govern any disputes arising out of or relating to the SPA. The Parties acknowledge that this SPA evidences a transaction involving interstate commerce. Thus, notwithstanding the foregoing choice of law provision, the Parties agree that the Federal Arbitration Act will govern the interpretation and enforcement of the arbitration provisions of this SPA and any forum selection clauses relating thereto.

18.18  Other Provisions. Except where the context requires otherwise, whenever used, the singular includes the plural, the plural includes the singular, the word "or" means "and/or," and the term "including" or "includes" means "including without limitation," and without limiting the generality of any description preceding that term. When this SPA refers to a number of days, unless otherwise specified as business days, that reference is to calendar days. The wording of this SPA shall be deemed wording mutually chosen by the parties, and no rule of strict construction shall be applied against either Party.

(Signatures on following page)

# THE HOME DEPOT
## MASTER SERVICE PROVIDER AGREEMENT

IN WITNESS WHEREOF, the Parties have executed this SPA by their duly authorized representatives and hereby acknowledge and agree that:

a. This SPA consists of these terms and conditions, Exhibit A, and the Service Provider Reference Guide ("SPRG"), all of which are incorporated herein;
b. Each Party has fully read, understands, and agrees to all terms contained in this SPA;
c. Service Provider has fully read, understands, and will comply with The Home Depot's Mold, Asbestos and Lead Paint policies as contained in the SPRG; and
d. The person executing this SPA on behalf of each Party is fully authorized to sign for and bind their respective Party to this SPA.

**Service Provider**

Company Name: Bryan's Home Improvement Corp.

By: Owner
Service Provider Authorized Representative

Printed Name: Jesus A Loja

Title: President

Date: 08/21/2015
The Effective Date

**Service Provider Co-Signer (If Applicable)[1]**

By: _____

Printed Name: _____

Date: _____

**Home Depot U.S.A., Inc.**

By: _____

Printed Name: _____

Title: _____

Date: _____

---

[1] If Service Provider is a privately or closely held corporation, sole proprietorship, general or limited partnership, limited liability corporation, professional corporation, cooperative, or similar entity, or otherwise, The Home Depot may, at its sole discretion, require any natural person who is a principal or authorized representative of such entity, and whose signature appears on this signature page as "Service Provider Co-Signer," to be deemed a principal of Service Provider under this SPA. Any person signing as Service Provider Co-Signer shall act as a guarantor with respect to Service Provider's obligations under the SPA. The Home Depot shall be afforded the same rights and remedies and enjoy the same limitations of liability with respect to any Service Provider Co-Signer as with respect to the Service Provider under this SPA.

19