```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
DANIEL RIVERA,

            Plaintiff,

            v.                         16 Civ. 7552 (JGK)(OTW)

HOME DEPOT U.S.A., INC.,

            Defendant.
------------------------------x
HOME DEPOT U.S.A., INC.,

            Third-Party Plaintiff,

            v.

BRYAN'S HOME IMPROVEMENT
CORP.,

            Third-Party Defendant.     Status Conference

                                       (Via Teleconference)
------------------------------x
                                       November 10, 2020
                                       11:20 a.m.
Before:

                    HON. ONA T. WANG,

                                       Magistrate Judge

                       APPEARANCES

BONDURANT, MIXSON & ELMORE
     Attorneys for Defendant/Third-Party Plaintiff
BY:  RONAN P. DOHERTY, ESQ.
     JEFFREY W. CHEN, ESQ.

HERZFELD & RUBIN, P.C.
     Attorneys for Third-Party Defendant
BY:  HOWARD S. EDINBURGH, ESQ.
```

1            (Case called)
2            THE DEPUTY CLERK: Please state your names for the
3    court reporter.
4            MR. DOHERTY: For Home Depot, USA, Ronan Doherty --
5    that's R-O-N-A-N, D-O-H-E-R-T-Y -- and Jeffrey Chen, C-H-E-N.
6            MR. EDINBURGH: Yes. For third-party defendant
7    Bryan's Home Improvement, this is Howard Edinburgh -- and my
8    last name is spelled like the city in Scotland,
9    E-D-I-N-B-U-R-G-H -- of Herzfeld & Rubin.
10           THE COURT: All right. Good morning, everyone. I
11   apologize that my previous conference went a little over. One
12   of the attorneys was late to the proceeding, which, had we
13   started that last one on time, this one would have started on
14   time also. But I do appreciate that you did all call in on
15   time.
16           We are here for a status conference in this case. We
17   are proceeding by telephone due to the COVID-19 pandemic. This
18   is a public line and should be treated like my virtual
19   courtroom. I expect the same decorum on the line that I expect
20   in my courtroom. I also expect that members of the press or
21   public may be on the line on a listen only basis.
22           We do have a court reporter for this conference, and
23   at the end of the conference, I think I'm going to ask that the
24   parties order a copy of the transcript and share the cost. It
25   does not need to be a daily transcript or on any super

1    short-term basis.

2         Recording or rebroadcasting by anyone else on this
3    line is strictly prohibited.

4         And for the purposes of having a clear transcript,
5    please stay on mute when you're not talking.  I will do the
6    same.  Say your name when you start speaking, and please don't
7    interrupt each other.  I will try to do that as well, although
8    I do reserve the right to interrupt from time to time.

9         But I had a few questions, I guess, and it's been a
10   while since I've seen you all.  So the briefing that I see is
11   on common law indemnity only, and I was wondering where
12   contractual indemnity fits in, if at all.  And I'd like to hear
13   from Home Depot first.  And particularly, I mean, when I was
14   reading the papers, I was not clear whether Home Depot's
15   position was that contractual indemnification also governs the
16   rest of this action and you're really only fighting about
17   common law indemnification or what.  It's been a while, so
18   please refresh my recollection.

19        MR. DOHERTY:  Sure.  Okay, your Honor.  This is Ronan
20   Doherty on behalf of Home Depot.  And I will tell you that as I
21   reread these briefs, you know, to get ready for today's
22   conference, I can appreciate your confusion, and so hopefully
23   we'll be able to work through that today.

24        The briefs before the Court are about Home Depot's
25   request for fees, and we have asked for two different sets of

1   fees.  The Phase I fees are those required to defend Home Depot
2   against Mr. Rivera's claim, and for those fees, the only basis
3   on which Home Depot has requested those fees is on common law
4   indemnity.  And so there is no claim whatsoever under the
5   contract for the Phase I fees.
6         And then the second phase of fees are for pursuing
7   Home Depot's claims against Bryan's for its duty to defend and
8   its duty to indemnify Home Depot.  Those are contract claims
9   under the service provider agreement.  That's what the Phase II
10  claims are about.  And so those are only under the contract.
11        And so there are -- as presented to you in these
12  briefs, there are two separate claims for fees under those two
13  different grounds, but maybe, if I can, I think it would be
14  helpful to let the Court know why this matters, because an
15  awful lot has happened since Home Depot filed its motion for
16  fees, I think in October of last year.  What we have since
17  discovered through postjudgment discovery is that Bryan's, the
18  third-party defendant, is essentially judgment proof.
19        So Home Depot lost a judgment to Mr. Rivera in the
20  neighborhood of $9 million.  Home Depot has satisfied that
21  judgment.  Home Depot has a corresponding judgment in the exact
22  same amount against Bryan's, but postjudgment discovery
23  suggests that Bryan's does not have the assets to cover that
24  judgment.  The only available source of recovery at this point,
25  based on the available information, is an insurance policy

1   provided by the New York State Insurance Fund.  And the
2   policy -- the fund's position is that the policy only covers
3   common law indemnity and it excludes contractual indemnity.  So
4   as a practical matter, based on what we know today, the only
5   claim that really matters on fees, the only one that is
6   practically important is the Phase I claim for common law
7   indemnity, and that's what Home Depot continues to press and
8   continues to want to have awarded here.
9           The other thing that has happened beyond -- in our
10  discovery about Bryan's available assets is that Bryan's,
11  throughout the course of the papers that we filed in front of
12  your Honor, said that it would not demand that the fund pay the
13  judgment because the owner of Bryan's believed that Mr. Rivera
14  was faking.  So now that ship has obviously sailed.  Mr. Rivera
15  had his day in court and won, and Home Depot has satisfied his
16  judgment.  In the course of the subsequent proceedings, Home
17  Depot and Bryan's entered into an agreement where Bryan's
18  assigned its claim for coverage to Home Depot, and Home Depot
19  has now filed a claim against the New York State Insurance Fund
20  in the New York Court of Common Claims seeking coverage.  And
21  so what remains of this case is the fee dispute, and under
22  certain circumstances it could come back here if Bryan's
23  basically breaches its assignment or the assignment is
24  defeated, but what's practically going on here is that common
25  law indemnity is critical because that's the most likely source

of recovery and that's why the parties, I think, you know, have spent so much time on this in their briefing, and why it may occur to the Court, well, why are we bothering if there's contractual indemnity, why can't we just say that, and what Home Depot needs the Court to understand is that it actually does make a very big difference because without common law indemnity, the chances that Home Depot will recover those fees are very low.

Now Judge Forrest entered summary judgment in Home Depot's favor on common law and contractual indemnity. That's the ruling that was appealed to the Second Circuit, and the Second Circuit affirmed the contract claim but did not reach the common law indemnity theory. And so as a result, the parties have been in dispute about what the effect of that ruling is. We have cited -- you'll see in our reply briefs -- the cases that show that as between the parties, Judge Forrest's summary judgment ruling, having been undisturbed, remains law of the case here and so all that's required for Home Depot to recover its Phase I fees under common law indemnity is for the application of the law of the case rule. I don't think that there's much of a dispute about amounts or the amount of the fees on that, but if I'm wrong, I'm sure Bryan's will let us know.

But I think that's Home Depot's answer to your question. I hope that it is an answer. But if it's not,

please let me know and I will do my best to answer the Court's question.

THE COURT: Okay. Thank you, Mr. Doherty. That was really clear.

Now is the point where we veer into the area where the litigants end up wondering why the judge is asking whacky questions, and this is purely for my own understanding. So the New York State Insurance Fund has already stated that the only indemnifications that it will -- follow may be the wrong word -- is common law and not contractual indemnity; is that right?

MR. EDINBURGH: May I respond, your Honor?

THE COURT: No, no. This is a question for Mr. Doherty.

MR. EDINBURGH: Okay. Okay.

MR. DOHERTY: So -- and I don't think that there's much disagreement on this, your Honor, but yes, the New York State Insurance Fund has said that there is no coverage for contractual indemnity for Bryan's. I believe -- and this is outside the record of what's happened in your court, your Honor, but New York State Insurance Fund has denied any liability under the policy, which is why we have litigation in the New York Court of Claims.

THE COURT: Okay. And then so Section 10 of the FPA doesn't apply or is it that -- because I remember Bryan's had

its own insurance, but I guess that insurance has been exhausted so you're now seeking the balance of it? Or did something else happen? I'm just trying to understand how we get to where we are today.

MR. DOHERTY: Right. So we have a series of messes is that get us to where we are today, your Honor. And Bryan's agreed to have CGL, corporate general liability insurance, as part of its agreement with Home Depot, and it obtained it, but the coverage that it obtained there specifically excludes liability for injuries to employees. And so there's no coverage there for this case. The workers' comp employer's liability policy that they obtained from the fund does include common law indemnity, you know, subject to the New York Workers -- the WCL Section 11 on a showing of grave injury, and so if there's liability on that theory -- and as I said before, we think Judge Forrest has already determined that -- then I believe -- and Mr. Edinburgh can answer his view of this, but then I think that there's coverage and not much dispute about it and it would be covered. And so that is why a ruling on the contractual liability, even if Home Depot could recover all of the fees at issue on this motion under the contract -- and that's obviously disputed by Bryan's, but even if they could, that would in practice make very little difference to the parties because the only coverage that's available that we know about, the only assets that are available that we know about,

1   are this coverage for common law indemnity under the fund
2   policy.
3            THE COURT:  Okay.  Thank you.  That was a great
4   explanation.
5            So then I guess my next question is:  If Bryan's has
6   assigned its claims under the workers' comp liability, why is
7   Mr. Edinburgh here fighting all of this?  Why are you not just
8   going forward in the court of claims?
9            MR. EDINBURGH:  May I respond?
10           THE COURT:  Yes.  Now you can speak, Mr. Edinburgh.
11  Thanks.
12           MR. EDINBURGH:  Thank you, your Honor.
13           Can I go back to what was previously said before I
14  answer this specific question or do you want me to just answer
15  this specific question?
16           THE COURT:  Sure.  Go ahead.  Now we're in the realm
17  of just satisfying the judge's curiosity so I understand the
18  big picture of where we are.
19           MR. EDINBURGH:  Okay.  I'd like to give you the larger
20  context because there have been material and substantial events
21  that did occur, as counsel for Home Depot mentioned, subsequent
22  to the submission of the motion.  And although I don't think
23  they necessarily affect the outcome of what is before your
24  Honor in terms of the actual controversy, it does give you a
25  holistic view of this litigation post judgment.

I think Home Depot really always knew they had a mom-and-pop subcontractor, which it had no assets of its own. The commercial general liability policy, which would otherwise have covered contractual liability, as indicated, had an employee exclusion clause.  Plus in any event, it was only a million dollars per occurrence policy.  So that the $9 million judgment, in essence, it would have covered at most a million, but it didn't even cover that because it disclaimed under that exclusion, which is universally enforced, unfortunately, in New York courts.  So that left no coverage for contractual indemnity for the underlying action, the Rivera action.

The state fund has employer's liability coverage, which is an element of the coverage that's part of the workers' comp coverage, but it's a separate employer's liability coverage for third-party actions against the employer.  And that's the coverage under which Bryan's was defended in the underlying Rivera action.  That coverage, by operation of law, by statute, is prohibited from covering contractual indemnity. It's not a question of the language of the policy.  The New York State Insurance Fund is a state agency.  That's why they're in the court of claims now.  And it only covers employer's liability.  So the contractual aspect of this is something that was never covered and cannot be covered as a matter of New York law.  That's what it is.

So because of the Second Circuit's decision, and the

1   way the Second Circuit framed its decision -- and again, this

2   is a dispute that's going to be resolved in the court of

3   claims.  It's really unnecessary for the attorney fee issue,

4   but I think it's worthy of discussion because it looms over

5   this whole proceeding like a dark cloud almost.  The court had

6   before it two ways to affirm what happened below, or reverse.

7   And both the contractual and common law claims and the lower

8   court's or Judge Forrest's rulings and everything else was

9   briefed to the full extent by both parties.  And the court

10  acknowledged that, but yet it decided only to affirm the

11  judgment on contractual.  It specifically said that even though

12  common law was before it, it was not addressing that because

13  there was no need to address it because it already affirmed the

14  judgment.  Now the effect of that is highly contentious.

15          THE COURT:  Right.  Okay.  Mr. Edinburgh, I'm going to

16  interrupt you right now.  Like I said, I reserve the right to

17  interrupt.

18          My question was:  If Bryan's has assigned the claim --

19  I understand your arguments about the implications of the

20  Second Circuit on common law indemnity.  I understand that.

21  That's in your brief.  That's been briefed.  What I want to

22  know is, since Bryan's assigned its claim to Home Depot --

23          MR. EDINBURGH:  Right.

24          THE COURT:  -- like what is the dispute now?  If

25  Bryan's assigned its claim to Home Depot, why are we arguing

Kba1rivc

1      here?
2              MR. EDINBURGH:  Because in essence, the judgment
3      against Bryan's is still subject to some modification to add in
4      the attorney's fees cost, which is an open issue.  And that is
5      a dispute not against the state insurance fund; that's a
6      dispute against Bryan's.  Ultimately, whatever the Court awards
7      or doesn't award --
8              THE COURT:  Right.  But that's contractual indemnity,
9      right?  So I'm trying to understand where or why there's an
10     argument about --
11             MR. EDINBURGH:  Because Bryan's --
12             THE COURT:  Wait, wait, wait.  I'm the only one
13     allowed to interrupt right now.
14             MR. EDINBURGH:  Sorry.  I apologize.
15             THE COURT:  I have to get my question out; otherwise
16     you can't answer it, then you're not answering my question,
17     right?  You're saying something else.
18             Okay.  I understand why there is the argument about
19     contractual indemnity because the judgment might need to be
20     modified, although, I mean, that one seems to be more clearly
21     law of the case with the Second Circuit decision, but then in
22     terms of the part that involves the New York State Insurance
23     Fund and common law indemnity, why is Bryan's arguing about
24     that if Bryan's has already assigned that claim to Home Depot?
25             MR. EDINBURGH:  Yes.  Because the claim that's

assigned is a claim between -- is a claim -- and both attorneys here are the attorneys that drafted that assignment. The assignment is whatever the ultimate judgment happens to be. That judgment will not be enforced against Bryan's. What it is was any rights that Bryan's has to be indemnified by the State Insurance Fund for that judgment is being assigned. And that allowed Home Depot to go into the court of claims. But the State Insurance Fund still has an obligation to defend Bryan's in this court, against claims against it. They don't have a duty to indemnify it because that will depend on ultimately what happens in the court of claims, but they still have a duty to defend Bryan's. And that duty means to defend it against claims that it owes additional money in terms of attorney's fees. That is a controversy that is between Home Depot and Bryan's. It is not between Home Depot and the fund. It will become an issue between Home Depot and the fund once -- whatever your Honor ultimately does, when we do have oral argument, and the Court decides, then that judgment that will be amended and that will become ultimately part of the proceeding in the court of claims. So this is not an advisory opinion. This is a controversy, and Bryan's has a right to counsel to oppose the application for attorney's fees. So even though there's an assignment of Bryan's right to be indemnified, if any, from the fund, depending upon other events, the duty to defend, it still exists, and so the fund,

1  you know, has assigned lawyers, my firm, and Bryan's has every
2  right in the world now to continue to oppose the motion for the
3  reasons stated, or the reasons I'd like to articulate as to
4  what's going on.  That's why this motion is still, you know, a
5  controversy between the parties is that we haven't forsaken
6  that right, and Bryan's isn't a strawman or not the party in
7  interest.  It is the party in interest because right now,
8  they're asking for attorney's fees against Bryan's, and that is
9  not an assignable claim.  What's assignable is to be
10 indemnified for what ultimately is the amount of that claim,
11 when it matures into a judgment.
12          I hope that answers your Honor's question.
13          THE COURT:  Actually, it does.  Thank you very much.
14          I'm just going to take a five-minute break, okay?  You
15 can stay on the line.  You can mute if you want.
16          MR. DOHERTY:  Your Honor?  Your Honor?
17          THE COURT:  Yes, Mr. Doherty.
18          MR. DOHERTY:  Could I just maybe chime in on that last
19 point very quickly?
20          THE COURT:  Sure.
21          MR. DOHERTY:  I understand the premise of the Court's
22 question to be, why is Bryan's fighting the common law
23 indemnity fee claim when, in all practical purposes, that is an
24 obligation that the fund would have to bear, and that's exactly
25 right.  And the fact is that, you know, as Mr. Edinburgh has

1  pointed out, the fund has controlled the defense of Bryan's
2  throughout the proceedings in this case, and the fund is the
3  one that will face the liability in the court of claims, and so
4  I think the practical answer to the question, in addition to
5  whatever theoretical duty to defend that may exist, is that the
6  fund would prefer not to pay it, and that this is as much about
7  the fund's liability as it is about Bryan's.
8           THE COURT:  Okay.  Thank you.  That's essentially what
9  I took from what Mr. Edinburgh said too.
10          MR. DOHERTY:  Okay.
11          THE COURT:  Okay.  I'm going to take a quick
12 five-minute break.  I'm not issuing any rulings.  I just need
13 to make some notes to myself, so I figured I would give you all
14 a break too.  Five minutes, at least.  You know, just keep your
15 line open but keep it on mute.  You can do whatever you want to
16 do, okay?  Five minutes.
17          MR. EDINBURGH:  Thank you, your Honor.
18          MR. DOHERTY:  Thank you.
19          THE COURT:  Thank you.
20          (Recess)
21          THE COURT:  All right.  Thanks.  I just needed to make
22 some notes myself.  Obviously I'm not ruling on anything since
23 I have to issue an R&R anyway.
24          I was wondering, did anybody else have any other
25 issues or questions or anything they wanted to raise?  Like I

said, I'm not hearing oral argument.  This really was just to help answer my questions.

            MR. EDINBURGH:  I would like to speak, if I could, your Honor.  This is Howard Edinburgh.

            THE COURT:  Okay.  Go ahead.

            MR. EDINBURGH:  Just to clarify, will there be oral argument or you'll be deciding on submission after today?

            THE COURT:  There will not be oral argument.

            MR. EDINBURGH:  Okay.  Fair enough.

            THE COURT:  I think your briefs were quite clear what the issues were.  I just wanted to make sure I wasn't missing something.  I mean, one of the things was understanding how common law indemnity fits in, given the language, in light of Judge Forrest's rulings on contractual and common law indemnity, and now I understand the distinction in the arguments on contractual indemnity for the indemnification action and then also why Home Depot is seeking coverage under common law indemnity only for the personal injury action.  I just wanted to make sure I wasn't missing anything, and counsel on both sides, thank you for explaining it.

            MR. EDINBURGH:  Well, and I appreciate that, your Honor, and I thank you, and I hope this doesn't sound like an argument, but given what Mr. Doherty said in his opening remarks in responding to your Honor's questions, my only concern -- or not my only concern, but one of my concerns is

1    that for purposes of deciding the motion, however your Honor
2    decides in evaluating these issues, we have stated that it's
3    our position that, you know, common law indemnity, Home Depot
4    could be considered as having had common law indemnity, but
5    nevertheless -- for purposes of this motion only.  But that
6    being the case, under New York law, they're not entitled to
7    attorney's fees for seeking that indemnity, only for defending
8    the underlying action.  And that's really, you know, the core
9    issue, as I see it, from my perspective, you know, of New York
10   law on that point.  So all these other issues about the meaning
11   of the Second Circuit decision and how it affects now a
12   postjudgment issue, not a prejudgment issue, and how it affects
13   everything else, really, although it's intriguing and it's
14   going to be the subject in the state court system of a decision
15   and maybe even appeals, is really not an issue for what we're
16   doing here today.  It may explain a lot of why people are
17   taking positions they're taking in the background, but legally,
18   it's really a question of the scope of what you're entitled to
19   under New York State law in terms of attorney's fees and common
20   law indemnity claims.  And I think we've briefed that, the
21   other side has briefed that.  So, you know, I think our
22   discussion today is illuminating for what's going on in the
23   real world of litigation with the coverage issues, but for the
24   attorney fee issues, you know -- it's juicy and it's really the
25   inside baseball kind of issue, but it's not really the issue

Kba1rivc

1  that needs to be resolved before your Honor in this motion.
2  That's really my comment more than a question.  But I thank you
3  for listening and hearing me out on this.
4          THE COURT:  All right.  Thank you.
5          Is there anything else from either side?
6          MR. DOHERTY:  Just one last very quick response to
7  that for Home Depot, your Honor.
8          I think rather than the inside baseball, this is the
9  ballgame.  The Phase I claim for fees under common law
10 indemnity is the practical dispute that's left between the
11 parties.  And we appreciate your Honor's time today.
12         THE COURT:  All right.  Thank you very much.  I also
13 appreciate your time and your patience for my going over with
14 my prior conference.
15         All right.  Again, I'm going to request that the
16 parties order the transcript.  You don't have to order it on
17 any expedited basis, but I will need the transcript before I
18 get the report and recommendation out.  So order the
19 transcript, share the cost.  Okay?
20         MR. DOHERTY:  Thanks so much.
21         MR. EDINBURGH:  Thank you, your Honor.
22         THE COURT:  All right.  Thank you very much.  We are
23 adjourned.
24         o0o
25